# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:14–cv–00857–TSC

AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC. et al v. PUBLIC.RESOURCE.ORG, INC.
Assigned to: Judge Tanya S. Chutkan
 Case:  1:13–cv–01215–TSC
Cause: 17:101 Copyright Infringement

Date Filed: 05/23/2014
Jury Demand: Defendant
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

| | | |
|---|---|---|
| **AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.** | represented by | **Jonathan Hudis** |

**AMERICAN EDUCATIONAL
RESEARCH ASSOCIATION, INC.**

represented by **Jonathan Hudis**
QUARLES & BRADY LLP
Intellectual Property Practice Group
1701 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20006
(202) 372–9528
Fax: (202) 372–9599
Email: jon.hudis@quarles.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan P. Labukas**
QUARLES & BRADY, LLP
1701 K Pennsylvania Avenue, NW
Washington, DC 20006
(202) 372–9514
Fax: (202) 372–9594
Email: jonathan.labukas@quarles.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nikia L. Gray**
QUARLES & BRADY, LLP
1701 K Pennsylvania Avenue, NW
Washington, DC 20006
(202) 372–9600
Fax: (202) 372–9599
Email: nikia.gray@quarles.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen Cooney–Porter**
OBLON, MCCLELLAND, MAIER &
NEUSTADT, LLP
1940 Duke Street
Alexandria, VA 22314

(703) 413–3000
Email: kcooney–porter@oblon.com
*TERMINATED: 01/21/2016*

**Plaintiff**

**AMERICAN PSYCHOLOGICAL**          represented by  **Jonathan Hudis**
**ASSOCIATION, INC.**                                (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jonathan P. Labukas**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Nikia L. Gray**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Kathleen Cooney–Porter**
                                                    (See above for address)
                                                    *TERMINATED: 01/21/2016*

**Plaintiff**

**NATIONAL COUNCIL ON**              represented by  **Jonathan Hudis**
**MEASUREMENT IN EDUCATION,**                        (See above for address)
**INC.**                                             *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jonathan P. Labukas**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Nikia L. Gray**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Kathleen Cooney–Porter**
                                                    (See above for address)
                                                    *TERMINATED: 01/21/2016*

V.

**Defendant**

**PUBLIC.RESOURCE.ORG, INC.**        represented by

**Andrew Phillip Bridges**
FENWICK & WEST, LLP
555 California Street
Suite 1200
San Francisco, CA 94104
(415) 875–2389
Email: abridges@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mitchell L. Stoltz**
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436–9333
Fax: (415) 436–9993
Email: mitch@eff.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sebastian E. Kaplan**
FENWICK & WEST LLP
555 California Street
12th Floor
San Francisco, CA 94104
(415) 875–2300
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Corynne McSherry**
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436–9333
Fax: (415) 436–9993
Email: corynne@eff.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Elliot Halperin**
1530 P Street, NW
Washington, DC 20005
(202) 905–3434
Email: davidhalperindc@gmail.com
*ATTORNEY TO BE NOTICED*

**Matthew B. Becker**
FENWICK & WEST LLP
801 California Street

Mountain View, CA 94041
(650) 335–7930
Email: mbecker@fenwick.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS**

represented by **Bruce D. Brown**
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW
Suite 1250
Washington, DC 20005
(202) 795–9301
Fax: (202) 795–9310
Email: bbrown@rcfp.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAW SCHOLARS**

represented by **Catherine R. Gellis**
P.O. Box 2477
Sausalito, CA 94966
(202) 642–2849
Email: cathy@cgcounsel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PUBLIC KNOWLEDGE**

represented by **Charles Duan**
PUBLIC KNOWLEDGE
1818 N Street, NW
Suite 410
Washington, DC 20036
(202) 861–0020 x 119
Email: cduan@publicknowledge.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**SINA BAHRAM**

represented by **Jeffrey T. Pearlman**
MILLS LEGAL CLINIC AT
STANFORD LAW SCHOOL
559 Nathan Abbott Way.
Stanford, CA 94305
(650) 497–9443
Fax: (650) 723–4426
Email: jef@law.stanford.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**AMERICAN SOCIETY FOR**                 represented by  **J. Kevin Fee**
**TESTING AND MATERIALS**                                MORGAN, LEWIS & BOCKUS LLP
100 BARR HARBOR DRIVE                                    1111 Pennsylvania Avenue, N.W.
WEST CONSHOHOCKEN, PA 19428                              Washington, DC 20004
                                                         (202) 739–5353
                                                         Fax: (202) 239–3001
                                                         Email: jkfee@morganlewis.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Intervenor**

**NATIONAL FIRE PROTECTION**              represented by  **Anjan Choudhury**
**ASSOCIATION, INC.**                                     MUNGER, TOLLES & OLSON LLP
                                                         355 South Grand Avenue
                                                         Suite 3500
                                                         Los Angeles, CA 90071
                                                         (212) 683–9107
                                                         Fax: (213) 683–5107
                                                         Email: anjan.choudhury@mto.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Intervenor**

**AMERICAN SOCIETY OF**                   represented by  **Joseph R. Wetzel**
**HEATING, REFRIGERATING, AND**                           KING & SPALDING, LLP
**AIR–CONDITIONING ENGINEERS,**                           101 2nd Street
**INC.**                                                  Suite 2300
                                                         San Francisco, CA 94105
                                                         (415) 318–1200
                                                         Fax: (415) 318–1300
                                                         Email: jwetzel@kslaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**PUBLIC.RESOURCE.ORG, INC.**             represented by  **Andrew Phillip Bridges**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mitchell L. Stoltz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Corynne McSherry**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Elliot Halperin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew B. Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AMERICAN EDUCATIONAL
RESEARCH ASSOCIATION, INC.**

represented by **Jonathan Hudis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan P. Labukas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nikia L. Gray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen Cooney–Porter**
(See above for address)
*TERMINATED: 01/21/2016*

**Counter Defendant**

**AMERICAN PSYCHOLOGICAL
ASSOCIATION, INC.**

represented by **Jonathan Hudis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan P. Labukas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nikia L. Gray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen Cooney–Porter**
(See above for address)
*TERMINATED: 01/21/2016*

**Counter Defendant**

**NATIONAL COUNCIL ON
MEASUREMENT IN EDUCATION,
INC.**

represented by **Jonathan Hudis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan P. Labukas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nikia L. Gray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen Cooney–Porter**
(See above for address)
*TERMINATED: 01/21/2016*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/23/2014 | 1 | | COMPLAINT *filed* against PUBLIC.RESOURCE.ORG, INC. ( Filing fee $ 400 receipt number 0090–3725541) filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Corporate Disclosure Stmt, # 4 Civil Cover Sheet, # 5 Summons, # 6 Report to Register of Copyrights)(Hudis, Jonathan) (Entered: 05/23/2014) |
| 05/23/2014 | | | Case Assigned to Judge Gladys Kessler. (kb) (Entered: 05/27/2014) |
| 05/27/2014 | 2 | | SUMMONS (1) Issued Electronically as to PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Consent Form, # 2 Notice of Consent)(kb) (Entered: 05/27/2014) |
| 05/28/2014 | 3 | | Case randomly reassigned to Judge Christopher R. Cooper. Judge Gladys Kessler no longer assigned to the case. (gt, ) (Entered: 05/28/2014) |
| 06/09/2014 | 4 | | NOTICE of Appearance by Kathleen Cooney–Porter on behalf of AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Cooney–Porter, Kathleen) (Entered: 06/09/2014) |
| 06/10/2014 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PUBLIC.RESOURCE.ORG, INC. served on 6/2/2014, answer due 6/23/2014 |

| | | (Hudis, Jonathan) (Entered: 06/10/2014) |
|---|---|---|
| 07/01/2014 | | MINUTE ORDER: Upon review of the record, it appears that the time for defendant Public.Resource.Org, Inc. to answer or otherwise respond to plaintiffs' complaint has expired. Plaintiffs are therefore ORDERED to show cause by July 15, 2014, as to why they have failed to move for default judgment and why the case should not be dismissed for want of prosecution. Signed by Judge Christopher R. Cooper on 7/1/2014. (lccrc2, ) (Entered: 07/01/2014) |
| 07/07/2014 | 6 | NOTICE of Appearance by David Elliot Halperin on behalf of PUBLIC.RESOURCE.ORG, INC. (Halperin, David) (Entered: 07/07/2014) |
| 07/07/2014 | 7 | NOTICE of Appearance by Mitchell L. Stoltz on behalf of PUBLIC.RESOURCE.ORG, INC. (Stoltz, Mitchell) (Entered: 07/07/2014) |
| 07/07/2014 | 8 | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by PUBLIC.RESOURCE.ORG, INC. (Stoltz, Mitchell) (Entered: 07/07/2014) |
| 07/07/2014 | 9 | Unopposed MOTION for Extension of Time to File Answer *to Complaint* by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Text of Proposed Order)(Stoltz, Mitchell) (Entered: 07/07/2014) |
| 07/08/2014 | | MINUTE ORDER granting 9 Unopposed Motion for Extension of Time. Defendant shall file its response to the Complaint on or before July 14, 2014. The parties are reminded that the Court will only grant extensions of time upon the filing of a motion. Signed by Judge Christopher R. Cooper on 7/8/2014. (lccrc2, ) (Entered: 07/08/2014) |
| 07/08/2014 | 10 | NOTICE of Appearance by Andrew Phillip Bridges on behalf of PUBLIC.RESOURCE.ORG, INC. (Bridges, Andrew) (Entered: 07/08/2014) |
| 07/09/2014 | 11 | RESPONSE TO ORDER TO SHOW CAUSE by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. *as noted in Court's Minute Order of July 1, 2014*. (Hudis, Jonathan) (Entered: 07/09/2014) |
| 07/14/2014 | 12 | ANSWER to Complaint with Jury Demand , COUNTERCLAIM *FOR DECLARATORY RELIEF* against All Plaintiffs by PUBLIC.RESOURCE.ORG, INC..(Bridges, Andrew) (Entered: 07/14/2014) |
| 07/23/2014 | 13 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant's Counterclaim* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Text of Proposed Order)(Hudis, Jonathan) (Entered: 07/23/2014) |
| 07/23/2014 | | MINUTE ORDER granting 13 Plaintiffs' Unopposed Motion for Extension of Time. Plaintiffs shall file their answer or other response to Defendant's Counterclaim on or before August 25, 2014. Signed by Judge Christopher R. Cooper on 7/23/2014. (lccrc2, ) (Entered: 07/23/2014) |
| 08/21/2014 | 14 | |

| | | |
|---|---|---|
| | | *Plaintiffs'* ANSWER to 12 Answer to Complaint, COUNTERCLAIM *filed by Defendant for Declaratory Relief* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. Related document: 12 Answer to Complaint, COUNTERCLAIM filed by PUBLIC.RESOURCE.ORG, INC..(Hudis, Jonathan) (Entered: 08/21/2014) |
| 08/21/2014 | 15 | MOTION to Strike 12 Answer to Complaint, COUNTERCLAIM *re Defendant's Jury Demand* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Text of Proposed Order Striking Defendant's Jury Demand)(Hudis, Jonathan) (Entered: 08/21/2014) |
| 09/08/2014 | 16 | Memorandum in opposition to re 15 MOTION to Strike 12 Answer to Complaint, COUNTERCLAIM *re Defendant's Jury Demand* filed by PUBLIC.RESOURCE.ORG, INC.. (Attachments: # 1 Text of Proposed Order)(Stoltz, Mitchell) (Entered: 09/08/2014) |
| 09/18/2014 | 17 | REPLY to opposition to motion re 15 MOTION to Strike 12 Answer to Complaint, COUNTERCLAIM *re Defendant's Jury Demand* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Hudis, Jonathan) (Entered: 09/18/2014) |
| 09/18/2014 | 18 | ORDER FOR INITIAL SCHEDULING CONFERENCE: The above–captioned case has been assigned to this Judge for resolution. It is hereby ORDERED that the Initial Scheduling Conference be set for Thursday, October 16, 2014 at 2:00 PM in Courtroom 27A. In accordance with Rule 16.3(a) of the Local Civil Rules and Federal Rule of Civil Procedure 26(f)(1), counsel (including any nonprisoner pro se party) shall confer at least 21 days prior to the date of the Initial Scheduling Conference to discuss the matters outlined in Local CivilRule 16.3(c). Pursuant to Local Civil rule 16.3(d) and Federal Rule of Civil Procedure 26(f)(2), counsel shall submit to the Court no later than 14 days following their meeting i.e., no fewer than 7 days prior to the date of the Initial Scheduling Conference a joint Report that, among otherthings: (1) outlines a detailed discovery plan as described in Federal Rule of Civil Procedure 26(f)(3); (2) addresses all topics listed in Local Civil rule 16.3(c); and (3) sets forth a proposed scheduling order. See LCvR 16.3(d). Counsel are also directed to include in their Report a brief statement of the case and the statutory basis for all causes of action and defenses. Parties are to communicate with the Court by motion, opposition, reply, or notice, not byletter. All inquiries concerning the status or scheduling of any pending matter shall be directed to the Courtroom Deputy Clerk, Ms. Terri Robinson, (202) 354–3179, rather than to chambers. If Ms. Robinson is unavailable, such inquiries shall be directed to the staff person in the Clerks Office who has been designated as her substitute. Chambers personnel will not handle questions relating to the status or scheduling of pending matters, nor will chambers provide legal advice of any kind. In an emergency, however, chambers can be contacted at (202) 354–3480.(SEE ORDER FOR FULL DETAILS). Signed by Judge Christopher R. Cooper on 9/18/2014. (tcr) (Entered: 09/18/2014) |

| | | |
|---|---|---|
| 10/06/2014 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Corynne McSherry, :Firm– Electronic Frontier Foundation, :Address– 815 Eddy Street, San Francisco, CA 94109. Phone No. – (415) 436–9333. Fax No. – (415) 436–9993 Filing fee $ 100, receipt number 0090–3862145. Fee Status: Fee Paid. by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Affidavit of Corynne McSherry, # 2 Text of Proposed Order)(Stoltz, Mitchell) (Entered: 10/06/2014) |
| 10/06/2014 | | MINUTE ORDER granting 19 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Christopher R. Cooper on 10/6/2014. (lccrc2, ) (Entered: 10/06/2014) |
| 10/09/2014 | 20 | MEET AND CONFER STATEMENT. (Hudis, Jonathan) (Entered: 10/09/2014) |
| 10/09/2014 | 21 | NOTICE *of filing of Proposed Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Hudis, Jonathan) (Entered: 10/09/2014) |
| 10/16/2014 | | Minute Entry for proceedings held before Judge Christopher R. Cooper: Initial Scheduling Conference held and concluded on 10/16/2014. Court to issue Scheduling Order accordingly. (Court Reporter Barbara DeVico) (tcr) (Entered: 10/16/2014) |
| 10/16/2014 | 22 | SCHEDULING ORDER: Upon consideration of the parties' Joint Meet and Confer Statement 20 , it is hereby ORDERED that the parties shall abide by the schedule in the attached Order. The deadline for the close of all discovery is July 13, 2015. A Post Discovery Status Conference is set for July 15, 2015 at 2:00 PM in Courtroom 27A before Judge Christopher R. Cooper. Signed by Judge Christopher R. Cooper on 10/16/2014. (lccrc2, ) (Entered: 10/16/2014) |
| 10/17/2014 | 23 | Case reassigned to Judge Tanya S. Chutkan as related to CA 13–1215. Judge Christopher R. Cooper no longer assigned to the case. (ztnr, ) (Entered: 10/20/2014) |
| 10/29/2014 | 24 | ORDER: Entering the joint 21 Protective Order submitted by the parties. Signed by Judge Tanya S. Chutkan on 10/29/2014. (lctsc2) (Entered: 10/29/2014) |
| 11/21/2014 | | MINUTE ORDER: Setting Hearing on 15 MOTION to Strike Defendant's Jury Demand. Motion Hearing set for 12/4/2014 11:30 AM in Courtroom 2 before Judge Tanya S. Chutkan. Signed by Judge Tanya S. Chutkan on 11/21/2014. (lctsc2) (Entered: 11/21/2014) |
| 12/04/2014 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 12/4/2014 re 15 MOTION to Strike Defendant's Jury Demand filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC. and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. Oral argument heard, and motion taken under advisement.(Court Reporter: Janice Dickman.) (tj) (Entered: 12/04/2014) |

| 12/11/2014 | 25 | MOTION to Compel *filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Declaration of Jonathan Hudis, # 2 Exhibit A to Hudis Decl, # 3 Exhibit B to Hudis Decl, # 4 Exhibit C to Hudis Decl, # 5 Exhibit D to Hudis Decl, # 6 Exhibit E to Hudis Decl, # 7 Exhibit F to Hudis Decl, # 8 Exhibit G to Hudis Decl, # 9 Exhibit H to Hudis Decl, # 10 Exhibit I to Hudis Decl, # 11 Exhibit J to Hudis Decl, # 12 Exhibit K to Hudis Decl, # 13 Exhibit L to Hudis Decl, # 14 Exhibit M to Hudis Decl, # 15 Exhibit N to Hudis Decl, # 16 Exhibit O to Hudis Decl, # 17 Exhibit P to Hudis Decl, # 18 Exhibit Q to Hudis Decl, # 19 Exhibit R to Hudis Decl, # 20 Text of Proposed Order)(Hudis, Jonathan) (Entered: 12/11/2014) |
|---|---|---|
| 12/12/2014 | | MINUTE ORDER: Denying without prejudice 25 Plaintiffs' Motion to Compel for failing to comply with paragraph 3 of the Court's Scheduling Order 22 requiring a notice to the Court and a joint telephone call to chambers over discovery disputes. Signed by Judge Tanya S. Chutkan on 12/12/14. (DJS) (Entered: 12/12/2014) |
| 12/12/2014 | | MINUTE ORDER OF REFERRAL: The Court has determined that this action should be referred to Magistrate Judge Deborah A. Robinson for all issues related to DISCOVERY. The Court finds that because a similar case with the same defendant has already been referred to Judge Robinson for discovery purposes, the interests of judicial efficiency and economy will be served by Judge Robinson handling both matters. The parties are reminded, pursuant to LCvR 73.1, that this action may be referred for all purposes, including trial, upon the filing of an executed notice of consent by all parties. Consent of the District Court Judge is not necessary. Accordingly, it is hereby ORDERED that this action is referred to Magistrate Judge Deborah A. Robinson for discovery only, beginning immediately; and it is FURTHER ORDERED that any future filings related to discovery in this action shall have the initials of Judge Tanya Chutkan and Magistrate Judge Deborah A. Robinson following the case number in the caption. Signed by Judge Tanya S. Chutkan on 12/12/14. (DJS) (Entered: 12/12/2014) |
| 12/12/2014 | 26 | CASE REFERRED to Magistrate Judge Deborah A. Robinson for Discovery. (md, ) (Entered: 12/15/2014) |
| 12/15/2014 | 27 | Amended MOTION to Compel discovery, privilege log, and further initial disclosures *filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Declaration of Jonathan Hudis, # 2 Exhibit A to Hudis Declaration, # 3 Exhibit B to Hudis Declaration, # 4 Exhibit C to Hudis Declaration, # 5 Exhibit D to Hudis Declaration, # 6 Exhibit E to Hudis Declaration, # 7 Exhibit F to Hudis Declaration, # 8 Exhibit G to Hudis Declaration, # 9 Exhibit H to Hudis Declaration, # 10 Exhibit I to Hudis Declaration, # 11 Exhibit J to Hudis Declaration, # 12 Exhibit K to Hudis Declaration, # 13 Exhibit L to Hudis Declaration, # 14 Exhibit M to Hudis Declaration, # 15 Exhibit N to Hudis Declaration, # 16 Exhibit O to Hudis Declaration, # 17 Exhibit P to Hudis Declaration, # 18 Exhibit Q to Hudis Declaration, # 19 Exhibit R to Hudis Declaration, # 20 Text of Proposed Order)(Hudis, Jonathan) Modified on 12/16/2014 (td, ). (Entered: 12/15/2014) |

| 12/16/2014 | | Set/Reset Hearings: Motion Hearing on Plaintiffs' Amended Motion to Compel Discovery, Privilege Log, and Further Initial Disclosures (Document No. 27) is scheduled for 11:00 AM on Thursday, 1/15/2015 in Courtroom 4 before Magistrate Judge Deborah A. Robinson. (SRH) (Entered: 12/16/2014) |
|---|---|---|
| 12/24/2014 | 28 | Consent MOTION for Extension of Time to *Oppose Plaintiffs' Motion to Compel* by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Text of Proposed Order)(Bridges, Andrew) (Entered: 12/24/2014) |
| 12/31/2014 | | MINUTE ORDER: It is hereby ORDERED that Defendant/Counterclaimant's Consent Motion for Extension of Time to Oppose Plaintiffs/Counterdefendants' Amended Motion to Compel Discovery, Privilege Log, and Further Initial Disclosures (Document No. 28) is GRANTED. It is FURTHER ORDERED that Defendant–counterclaimant shall file its opposition to Plaintiffs' Amended Motion to Compel Discovery, Privilege Log, and Further Initial Disclosures (Document No. 27) by no later than 6 p.m. on January 5, 2015. Signed by Magistrate Judge Deborah A. Robinson on December 31, 2014. (SRH) (Entered: 12/31/2014) |
| 01/05/2015 | 29 | Memorandum in opposition to re 27 Amended MOTION to Compel *filed* filed by PUBLIC.RESOURCE.ORG, INC.. (Attachments: # 1 Declaration of Andrew P. Bridges in Support of Defendant–Counterclaimant Public.Resource.Org, Inc.'s Opposition to Plaintiffs–Counterdefendants' Amended Motion to Compel, # 2 Exhibit 1 to Declaration of Andrew P. Bridges, # 3 Exhibit 2 to Declaration of Andrew P. Bridges, # 4 Exhibit 3 to Declaration of Andrew P. Bridges, # 5 Exhibit 4 to Declaration of Andrew P. Bridges, # 6 Exhibit 5 to Declaration of Andrew P. Bridges, # 7 Exhibit 6 to Declaration of Andrew P. Bridges, # 8 Exhibit 7 to Declaration of Andrew P. Bridges)(Bridges, Andrew) (Entered: 01/05/2015) |
| 01/12/2015 | 30 | REPLY to opposition to motion re 27 Amended MOTION to Compel *filed on December 15, 2014,* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # 1 Declaration in Reply of Jonathan Hudis, # 2 Exhibit S to Hudis Reply Decl, # 3 Exhibit T to Hudis Reply Decl, # 4 Exhibit U to Hudis Reply Decl, # 5 Exhibit V to Hudis Reply Decl, # 6 Exhibit W to Hudis Reply Decl, # 7 Exhibit X to Hudis Reply Decl, # 8 Exhibit Y to Hudis Reply Decl, # 9 Exhibit Z to Hudis Reply Decl, # 10 Exhibit AA to Hudis Reply Decl, # 11 Exhibit BB to Hudis Reply Decl, # 12 Exhibit CC to Hudis Reply Decl, # 13 Exhibit DD to Hudis Reply Decl, # 14 Exhibit EE to Hudis Reply Decl, # 15 Text of Proposed Order –Revised)(Hudis, Jonathan) (Entered: 01/12/2015) |
| 01/12/2015 | 31 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Matthew B. Becker, :Firm– Fenwick & West LLP, :Address– 801 California Street, Mountain View, CA 94041. Phone No. – (650) 335–7930. Fax No. – (650) 938–5200 *Motion to Admit Matthew B. Becker Pro Hac Vice* Filing fee $ 100, receipt number 0090–3960268. Fee Status: Fee Paid. by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Bridges, Andrew) (Entered: 01/12/2015) |
| 01/15/2015 | | Set/Reset Hearings: Motion Hearing on Plaintiffs' Amended Motion to Compel Discovery, Privilege Log, and Further Initial Disclosures (Document No. 27) is |

| | | | |
|---|---|---|---|
| | | | rescheduled to 1/22/2015 09:30 AM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. (zcmm, ) (Entered: 01/15/2015) |
| 01/16/2015 | 32 | | NOTICE of Change of Address by Jonathan Hudis (Hudis, Jonathan) (Entered: 01/16/2015) |
| 01/22/2015 | | | MINUTE ORDER: It is hereby ORDERED that Defendant's 31 Motion for Leave to Appear Pro Hac Vice is GRANTED. Matthew B. Becker is hereby admitted pro hac vice to appear and participate as co−counsel in the above−referenced action. Signed by Magistrate Judge Deborah A. Robinson on 1/22/15. (zcmm, ) (Entered: 01/22/2015) |
| 01/22/2015 | | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Motion Hearing held on 1/22/2015 re 27 Amended MOTION to Compel filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. Defendant shall file any motion to consolidate this and the related case (no. 13−cv−01215) for discovery purposes by no later than 1/29/2015. The court will take the pending motion 27 Plaintiffs' Amended Motion to Compel under advisement. (Court Reporter Bowles Reporting Service)(FTR Time Frame: 9:47:06 − 10:33:23 − 10:42:48 − 11:38:18, Crtrm 4) (zcmm, ) (Entered: 01/22/2015) |
| 01/29/2015 | 33 | | WITHDRAWN PURSUANT TO ENTRY NO.: 41 . . . . . MOTION to Consolidate Cases *Defendant−Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery* by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Text of Proposed Order [Proposed] Order Granting Defendant's Motion to Consolidate for Purposes of Discovery (Dkt. No. 33))(Bridges, Andrew) Modified on 3/2/2015 (td, ). (Entered: 01/29/2015) |
| 01/29/2015 | 34 | | AFFIDAVIT re 33 MOTION to Consolidate Cases *Defendant−Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery Declaration of Matthew B. Becker in Support of Defendant−Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery (Dkt. 33)* by PUBLIC.RESOURCE.ORG, INC.. (Attachments: # 1 Exhibit 1)(Bridges, Andrew) (Entered: 01/29/2015) |
| 02/02/2015 | 35 | | MEMORANDUM AND OPINION. Signed by Judge Tanya S. Chutkan on 2/2/2015. (lctsc2) (Entered: 02/02/2015) |
| 02/02/2015 | 36 | | ORDER granting 15 Motion to Strike. The jury demand in Defendant's 12 counterclaim and Answer is stricken. Signed by Judge Tanya S. Chutkan on 2/2/2015. (lctsc2) (Entered: 02/02/2015) |
| 02/08/2015 | 37 | | TRANSCRIPT OF PROCEEDINGS before Magistrate Judge Deborah A. Robinson held on 1/22/2015; Page Numbers: 1−73. Court Reporter/Transcriber Bowles Reporting Service, Telephone number 860−464−1083, Court Reporter Email Address : brs−ct@sbcglobal.net.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased |

from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/1/2015. Redacted Transcript Deadline set for 3/11/2015. Release of Transcript Restriction set for 5/9/2015.(znmw, ) (Entered: 02/09/2015)

| 02/10/2015 | 38 | Consent MOTION to Intervene by AMERICAN SOCIETY FOR TESTING AND MATERIALS, NATIONAL FIRE PROTECTION ASSOCIATION, INC., AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR–CONDITIONING ENGINEERS, INC. (Attachments: # 1 Text of Proposed Order)(Fee, J.) (Entered: 02/10/2015) |
|---|---|---|
| 02/11/2015 | | MINUTE ORDER: Granting consent 38 Motion to Intervene for the limited purpose of opposing Defendant's 33 Motion to Consolidate for the purposes of Discovery. Oppositions to the Motion to Consolidate are due by February 17, 2015; reply due by February 27, 2015. Signed by Judge Tanya S. Chutkan on 2/11/2015. (lctsc2) (Entered: 02/11/2015) |
| 02/12/2015 | | Set/Reset Deadlines: Opposition due by 2/17/2005. Reply due by 2/27/2015. (sm) (Entered: 02/12/2015) |
| 02/17/2015 | 39 | Memorandum in opposition to re 33 MOTION to Consolidate Cases *Defendant–Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery* filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS, AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR–CONDITIONING ENGINEERS, INC., NATIONAL FIRE PROTECTION ASSOCIATION, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Fee, J.) (Entered: 02/17/2015) |
| 02/18/2015 | 40 | Memorandum in opposition to re 33 MOTION to Consolidate Cases *Defendant–Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # 1 Declaration of Jonathan Hudis, # 2 Exhibit A to Hudis Declaration, # 3 Exhibit B to Hudis Declaration, # 4 Exhibit C to Hudis Declaration, # 5 Exhibit D to Hudis Declaration, # 6 Exhibit E to Hudis Declaration, # 7 Text of Proposed Order)(Hudis, Jonathan) (Entered: 02/18/2015) |
| 02/26/2015 | 41 | WITHDRAWAL of Motion by PUBLIC.RESOURCE.ORG, INC. re 33 MOTION to Consolidate Cases *Defendant–Counterclaim Public.Resource.Org, Inc.'s Motion to Consolidate for the Purposes of Discovery* filed by PUBLIC.RESOURCE.ORG, INC. . (Bridges, Andrew) (Entered: 02/26/2015) |

| 03/04/2015 | 42 | Consent MOTION for Extension of Time to Complete Discovery *filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Text of Proposed Order)(Hudis, Jonathan) (Entered: 03/04/2015) |
|---|---|---|
| 03/09/2015 | | Set/Reset Hearings: Status Conference, including consideration of 42 scheduled for 3/19/2015 at 02:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. All counsel shall meet and confer in advance of said hearing in an effort to reach a consensus regarding the expeditious completion of discovery. (lcdar2) (Entered: 03/09/2015) |
| 03/17/2015 | 43 | MEET AND CONFER STATEMENT. (Hudis, Jonathan) (Entered: 03/17/2015) |
| 03/19/2015 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Status Conference held on 3/19/2015. (Court Reporter Lisa Moreira) (zcmm, ) (Entered: 03/19/2015) |
| 03/23/2015 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Status Conference conducted on 3/19/2015; pending motions Document No. 27 and Document No. 42 taken under advisement. (FTR Time Frame: 2.5) (lcdar1, ) (Entered: 03/23/2015) |
| 03/26/2015 | 44 | TRANSCRIPT OF PROCEEDINGS before Magistrate Judge Deborah A. Robinson held on March 19, 2015; Page Numbers: 1–60. Date of Issuance:March 26, 2015. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number 202–354–3187, Court Reporter Email Address : Lisa_Moreira@dcd.uscourts.gov.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/16/2015. Redacted Transcript Deadline set for 4/26/2015. Release of Transcript Restriction set for 6/24/2015.(Moreira, Lisa) (Entered: 03/26/2015) |
| 04/09/2015 | 45 | MOTION for Hearing re 27 Amended MOTION to Compel *filed*, 42 Consent MOTION for Extension of Time to Complete Discovery *filed without opposition from Defendant* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Hudis, Jonathan) (Entered: 04/09/2015) |

| 04/15/2015 | 46 | STIPULATION re 27 Amended MOTION to Compel *filed*, 42 Consent MOTION for Extension of Time to Complete Discovery *filed*, 45 MOTION for Hearing re 27 Amended MOTION to Compel *filed*, 42 Consent MOTION for Extension of Time to Complete Discovery *filed without opposition from Defendant -- submitted by Public.Resource.Org, Inc. and* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Hudis, Jonathan) (Entered: 04/15/2015) |
|---|---|---|
| 04/21/2015 | | MINUTE ORDER: Motion for Hearing 45 is hereby GRANTED; a Status Hearing is scheduled for 10:00 AM on Wednesday May 6, 2015, counsel shall appear in courtroom 4. Signed by Magistrate Judge Deborah A. Robinson on 4/21/2015. (lcdar1, ) (Entered: 04/21/2015) |
| 04/21/2015 | | MINUTE ENTRY: Status Hearing re 45 set for 5/6/2015 10:00 AM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Counsel shall appear. Signed by Magistrate Judge Deborah A. Robinson on 4/21/2015. (lcdar1, ) (Entered: 04/21/2015) |
| 05/05/2015 | | MINUTE ORDER: Motion for Extension of Time to Complete Discovery 42 is hereby GRANTED. Signed by Magistrate Judge Deborah A. Robinson on 5/5/2015.(lcdar1, ) (Entered: 05/05/2015) |
| 05/05/2015 | | Status Hearing: Status Hearing re 45 set for 5/6/2015 at 10:00 AM has been CONTINUED to 5/13/2015 at 2:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Counsel shall appear. The Court apologizes for any inconvenience this may cause the parties. Signed by Magistrate Judge Deborah A. Robinson on 4/21/2015. (lcdar1, ) (Entered: 04/21/2015) (Entered: 05/05/2015) |
| 05/08/2015 | | Set/Reset Hearings: As a result of a scheduling conflict, it is necessary for the court to again continue the status conference. Status Conference now scheduled for 05/13/2015 is hereby CONTINUED on 5/21/2015 at 2:00 PM on 5/21/2015 in Courtroom 4 before Magistrate Judge Deborah A. Robinson. The court again apologizes to counsel and parties for any inconvenience. (lcdar1, ) (Entered: 05/08/2015) |
| 05/18/2015 | 47 | MOTION for Extension of Time to Complete Discovery *filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Text of Proposed Order)(Hudis, Jonathan) (Entered: 05/18/2015) |
| 05/19/2015 | 48 | NOTICE *Consent Request for Telephonic Status Conference [Dkt. No. 45]* by PUBLIC.RESOURCE.ORG, INC. re Set/Reset Hearings, (Becker, Matthew) (Entered: 05/19/2015) |
| 05/20/2015 | 49 | ORDER granting in part and denying in part Motion to Compel Document No. 27 . Signed by Magistrate Judge Deborah A. Robinson on 05/20/2015.(lcdar1, ) (Entered: 05/20/2015) |
| 05/20/2015 | | Set/Reset Hearings: Status Conference is hereby set for 6/11/2015 at 02:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. (lcdar1, ) (Entered: 05/20/2015) |

| | | |
|---|---|---|
| 05/21/2015 | | MINUTE ORDER: Consent Request for Telephonic Status Conference 48 is hereby DENIED as moot. Signed by Magistrate Judge Deborah A. Robinson on 5/21/2015.(lcdar1, ) (Entered: 05/21/2015) |
| 06/03/2015 | 50 | NOTICE of Change of Address by Jonathan Hudis (Hudis, Jonathan) (Entered: 06/03/2015) |
| 06/04/2015 | 51 | Memorandum in opposition to re 47 MOTION for Extension of Time to Complete Discovery *filed Public Resource's Opposition to Plaintiffs' Motion to Extend Time for Fact Discovery* filed by PUBLIC.RESOURCE.ORG, INC.. (Bridges, Andrew) (Entered: 06/04/2015) |
| 06/08/2015 | 52 | Consent MOTION for Order *Request for Telephonic Status Conference* by PUBLIC.RESOURCE.ORG, INC. (Becker, Matthew) (Entered: 06/08/2015) |
| 06/08/2015 | | MINUTE ORDER granting 52 Consent Motion for Telephonic Status Conference. Signed by Magistrate Judge Deborah A. Robinson on June 8, 2015. (lcdar2) (Entered: 06/08/2015) |
| 06/11/2015 | | Minute Entry for Telephone Status Conference held before Magistrate Judge Deborah A. Robinson on 6/11/15 : For the reasons stated on the record, Plaintiffs' Motion to Extend Time for Fact Discovery 47 is denied. The parties shall comply with the dates previously set, which serve to modify the Scheduling Order of 10/16/14. Court Reporter: USDC Court Reporters – Ctrm. 4; FTR Time Frame: 3:01:56 – 3:27:13. Plaintiffs' Counsel: Jonathan Hudis, Kathleen Cooney–Porter and Kate Cappaert; Defendant's Counsel: Matthew Becker, David Halperin and Mitchell Stoltz. (kk) (Entered: 06/12/2015) |
| 06/11/2015 | 53 | ORDER ON CONSENT MOTION TO EXTEND TIME FOR DISCOVERY AND CASE SCHEDULE: Fact Discovery closes on 5/18/15; Opening Expert Disclosures due 6/15/15; Rebuttal Expert Disclosures due 7/15/15; Replies to Rebuttal Disclosures due 7/29/15; Final Replies to Expert Disclosures due 8/12/15; Discovery closes on 9/11/15; Post–Discovery Conference set for 9/15/15 at 2:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson; signed by Magistrate Judge Deborah A. Robinson on 6/11/15, nunc pro tunc to 5/5/15. (kk) (Entered: 06/12/2015) |
| 07/06/2015 | 54 | TRANSCRIPT OF TELEPHONE STATUS CONFERENCE before Magistrate Judge Deborah A. Robinson held on 6–11–2015; Page Numbers: 1–19. Date of Issuance:7–6–2015. Transcriber Annette M. Montalvo, Telephone number 202–354–3111, Transcriber/Court Reporter Email Address : annette.montalvo@gmail.com.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers |

| | | | |
|---|---|---|---|
| | | | specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | | Redaction Request due 7/27/2015. Redacted Transcript Deadline set for 8/6/2015. Release of Transcript Restriction set for 10/4/2015.(Montalvo, Annette) Modified on 7/8/2015 (zrdj). (Entered: 07/06/2015) |
| 07/09/2015 | | | MINUTE ORDER: The status conference previously set for 7/15/15 is hereby vacated. All deadlines set forth in Judge Robinson's 06/11/2015 Scheduling Order 53 shall remain in effect. Signed by Judge Tanya S. Chutkan on 7/9/15. (DJS) (Entered: 07/09/2015) |
| 09/09/2015 | 55 | | STIPULATION re Order *JOINT STIPULATION AND [PROPOSED] ORDER EXTENDING COMPLETION DATE OF DEPOSITION OF PLAINTIFFS' EXPERT DR. PHILLIPS TO SEPTEMBER 22, 2015* by PUBLIC.RESOURCE.ORG, INC.. (Becker, Matthew) (Entered: 09/09/2015) |
| 09/10/2015 | | | MINUTE ORDER: The court has reviewed the Joint Stipulation And Proposed Order To Extend The Date On Which Expert Deposition May Be Taken (Document No. 55 ) filed by the parties on September 9, 2015. Counsel for the parties are hereby reminded that the applicable local and federal rules require that requests for action by the court be made by motion. Accordingly, if it remains the intention of the parties to request an extension of any deadline, counsel shall do so by motion. Signed by Magistrate Judge Deborah A. Robinson on 9/10/2015. (lcdar1, ) (Entered: 09/10/2015) |
| 09/10/2015 | 56 | | Joint MOTION for Extension of Time to *Extend the Date on Which Expert Deposition May Be Taken and Proposed Order* by PUBLIC.RESOURCE.ORG, INC. (Becker, Matthew) (Entered: 09/10/2015) |
| 09/10/2015 | 57 | | Consent MOTION for Order *Request for Telephonic Status Conference* by PUBLIC.RESOURCE.ORG, INC. (Becker, Matthew) (Entered: 09/10/2015) |
| 09/11/2015 | | | MINUTE ORDER: Motion for Extension of Time 56 and Consent Motion for Telephonic Status Conference 57 are hereby GRANTED. It is further ORDERED that the Status Conference now scheduled for September 15, 2015, is hereby CONTINUED to September 29, 2015 at 4:00 PM. Signed by Magistrate Judge Deborah A. Robinson on 9/11/2015. (lcdar1, ) (Entered: 09/11/2015) |
| 09/11/2015 | | | Set/Reset Hearings: Status Conference is hereby set for 9/29/2015 at 04:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. (lcdar1, ) (Entered: 09/11/2015) |
| 09/29/2015 | | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Post–Discovery Status Conference conducted by telephone on 9/29/2015. All parties agree that Discovery is closed and that there are no disputes. Plaintiffs' Counsel: Kathleen Cooney–Porter and Jonathan Hudis; Defendant's Counsel: Matthew Becker and David Halperin. Court Reporter FTR Gold – Ctrm. 4. (FTR Time Frame: 4:11:00–4:16:10). (mr) (Entered: 09/29/2015) |
| 10/27/2015 | | | MINUTE ORDER. A status conference will be held in both this case and American Society for Testing and Materials v. Public.Resource.Org, Inc., Civil Action No. 1:13–cv–01215–TSC on Wednesday, November 4, 2015 at 10:15am. The court intends to set schedules for briefing summary judgment |

| | | |
|---|---|---|
| | | motions in both cases at the status conference. The parties to this case are hereby directed to jointly file their proposed schedules for summary judgment briefing, accompanied by proposed orders, by Friday, October 30, 2015. Signed by Judge Tanya S. Chutkan on 10/27/15. (lctsc2) (Entered: 10/27/2015) |
| 10/28/2015 | | Set/Reset Deadlines/Hearings: Proposed Briefing Schedule due by 10/30/2015. Scheduling Conference set for 11/4/2015 at 10:15 AM in Courtroom 2 before Judge Tanya S. Chutkan. (zsm) (Entered: 10/28/2015) |
| 10/30/2015 | 58 | PROPOSED BRIEFING SCHEDULE *and Joint Report of the Parties, submitted* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # 1 Exhibit A – Plaintiffs' Proposed Order, # 2 Exhibit B – Defendant's Proposed Order)(Hudis, Jonathan) (Entered: 10/30/2015) |
| 11/04/2015 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference held on 11/4/2015. Order to issue. (Court Reporter Bryan Wayne.) (zsm) (Entered: 11/04/2015) |
| 11/04/2015 | | MINUTE ORDER setting briefing schedule: Plaintiffs' Motion for Summary Judgment due by December 21, 2015; Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and COMBINED Cross–Motion for Summary Judgment due by January 21, 2016; Plaintiffs' Reply in Support of their Motion for Summary Judgment and COMBINED Opposition to Defendant's Cross–Motion for Summary Judgment due by February 18, 2016; Defendant's Reply in Support of its Cross–Motion for Summary Judgment due by March 3, 2016; Amicus briefs due by February 11, 2016. Signed by Judge Tanya S. Chutkan on 11/4/15. (lctsc2) (Entered: 11/04/2015) |
| 11/04/2015 | | Set/Reset Deadlines/Hearings: Summary Judgment motions due by 12/21/2015. Response to Motion for Summary Judgment due by 1/21/2016. Reply to Motion for Summary Judgment due by 2/18/2016. Brief due by 2/11/2016. Replies due by 3/3/2016. VACATED PURSUANT TO MINUTE ORDER FILED ON 11/5/2015.....Motion Hearing set for 3/22/2016 at 9:30 AM in Courtroom 2 before Judge Tanya S. Chutkan. (zsm) Modified on 11/6/2015 (tth). (Entered: 11/04/2015) |
| 11/05/2015 | | MINUTE ORDER: Due to an unexpected scheduling conflict, the motion hearing previously set for 3/22/2016 is hereby VACATED. A new date will be set at a later time. Signed by Judge Tanya S. Chutkan on 11/5/15. (DJS) (Entered: 11/05/2015) |
| 11/14/2015 | 59 | TRANSCRIPT OF 11/04/15 STATUS HEARING before Judge Tanya S. Chutkan, held on November 4,2015. Page Numbers: 1–21. Date of Issuance: 11/14/15. Court Reporter: Bryan A. Wayne; telephone number: 202–354–3186. Transcripts may be ordered by submitting the Transcript Order Form.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 12/5/2015. Redacted Transcript Deadline set for 12/15/2015. Release of Transcript Restriction set for 2/12/2016.(Wayne, Bryan) (Entered: 11/14/2015)

| 12/21/2015 | 60 | MOTION for Summary Judgment *Filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Statement of Facts Points of Authority, # 2 Statement of Facts Statement of Undisputed Facts, # 3 Declaration Declaration of Jonathan Hudis, # 4 Exhibit Ex. A, # 5 Exhibit Ex. B, # 6 Exhibit Ex. C, # 7 Exhibit Ex. D, # 8 Exhibit Ex. E, # 9 Exhibit Ex. F, # 10 Exhibit Ex. G, # 11 Exhibit Ex. H, # 12 Exhibit Ex. I, # 13 Exhibit Ex. J, # 14 Exhibit Ex. K, # 15 Exhibit Ex. L, # 16 Exhibit Ex. M, # 17 Exhibit Ex. N, # 18 Exhibit Ex. O, # 19 Exhibit Ex. P, # 20 Exhibit Ex. Q, # 21 Exhibit Ex. R, # 22 Exhibit Ex. S, # 23 Exhibit Ex. T, # 24 Exhibit Ex. U, # 25 Exhibit Ex. V–1, # 26 Exhibit Ex. V–2, # 27 Exhibit Ex. W, # 28 Exhibit Ex. X, # 29 Exhibit Ex. Y, # 30 Exhibit Ex. Z, # 31 Exhibit Ex. AA, # 32 Exhibit Ex. BB, # 33 Exhibit Ex. CC, # 34 Exhibit Ex. DD, # 35 Exhibit Ex. EE, # 36 Exhibit Ex. FF–1, # 37 Exhibit Ex. FF–2, # 38 Exhibit Ex. FF–3, # 39 Exhibit Ex. FF–4, # 40 Exhibit Ex. FF–5, # 41 Exhibit Ex. FF–6, # 42 Exhibit Ex. GG, # 43 Exhibit Ex. HH, # 44 Exhibit Ex. II, # 45 Exhibit Ex. JJ, # 46 Exhibit Ex. KK, # 47 Exhibit Ex. LL, # 48 Exhibit Ex. MM, # 49 Declaration Declaration of Marianne Ernesto, # 50 Exhibit Ex. NN, # 51 Exhibit Ex. OO, # 52 Exhibit Ex. PP, # 53 Exhibit Ex. QQ, # 54 Exhibit Ex. RR, # 55 Exhibit Ex. SS, # 56 Exhibit Ex. TT, # 57 Exhibit Ex. UU, # 58 Exhibit Ex. VV, # 59 Exhibit Ex. WW, # 60 Exhibit Ex. XX, # 61 Exhibit Ex. YY, # 62 Exhibit Ex. ZZ, # 63 Exhibit Ex. AAA, # 64 Exhibit Ex. BBB, # 65 Exhibit Ex. CCC, # 66 Exhibit Ex. DDD, # 67 Exhibit Ex. EEE, # 68 Exhibit Ex. FFF, # 69 Exhibit Ex. GGG, # 70 Exhibit Ex. HHH, # 71 Exhibit Ex. III, # 72 Exhibit Ex. JJJ, # 73 Declaration Declaration of Lauress Wise, # 74 Exhibit Ex. KKK, # 75 Exhibit Ex. LLL, # 76 Declaration Declaration of Wayne Camara, # 77 Exhibit Ex. MMM, # 78 Declaration Declaration of Felice Levine, # 79 Exhibit Ex. NNN, # 80 Exhibit Ex. OOO (Public Version), # 81 Exhibit Ex. PPP, # 82 Exhibit Ex. QQQ, # 83 Exhibit Ex. RRR, # 84 Exhibit Ex. SSS, # 85 Exhibit Ex. TTT–1, # 86 Exhibit Ex. TTT–2, # 87 Exhibit Ex. UUU, # 88 Declaration Declaration of Kurt Geisinger, # 89 Declaration Declaration of Dianne Schneider, # 90 Text of Proposed Order Proposed Order, # 91 Certificate of Service Certificate of Service)(Hudis, Jonathan). Added MOTION for Permanent Injunction on 12/22/2015 (td). (Entered: 12/21/2015) |
| 12/21/2015 | 61 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit |

| | | |
|---|---|---|
| | | OOO – sought to be sealed, # 2 Memorandum in Support, # 3 Text of Proposed Order, # 4 Certificate of Service)(Hudis, Jonathan) (Entered: 12/21/2015) |
| 01/04/2016 | | MINUTE ORDER: Granting 61 Plaintiff's Sealed Motion for Leave to File Document Under Seal. Exhibit OOO to the Declaration of Felice J. Levine in Support of Plaintiffs' Motion for Summary Judgment and a Permanent Injunction 60 shall be filed under seal. Exhibit OOO contains Plaintiffs' revenue and expenses associated with the preparation, publication, and advertising of the "Standards for Educational and Psychological Testing" (1999 ed.)(the 1999 Standards). In this action, Plaintiffs assert that Defendant has infringed their copyright in the 1999 Standards by digitally copying the work and publishing it online. The court finds that there is a significant interest in preserving the confidentiality of Exhibit OOO and that there is no compelling interest for public disclosure of Exhibit OOO at this time. Signed by Judge Tanya S. Chutkan on 1/4/16. (Entered: 01/04/2016) |
| 01/04/2016 | 62 | SEALED DOCUMENT (Exhibit OOO) filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. re 60 MOTION for Summary Judgment *Filed* MOTION for Permanent Injunction filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., Order on Sealed Motion for Leave to File Document Under Seal,,,. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 01/05/2016) |
| 01/13/2016 | 63 | Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Sebastian E. Kaplan, :Firm– Fenwick & West LLP, :Address– 555 California Street, 12th Fl., San Francisco, CA 94104. Phone No. – (415) 875–2300. Fax No. – (415) 281–1350 Filing fee $ 100, receipt number 0090–4377619. Fee Status: Fee Paid. by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Declaration of Sebastian Kaplan, # 2 Text of Proposed Order)(Stoltz, Mitchell) (Entered: 01/13/2016) |
| 01/19/2016 | 64 | NOTICE of Appearance by Jonathan P. Labukas on behalf of AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Labukas, Jonathan) (Entered: 01/19/2016) |
| 01/21/2016 | 65 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.. Attorney Kathleen Cooney–Porter terminated. (Cooney–Porter, Kathleen) (Entered: 01/21/2016) |
| 01/21/2016 | 66 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support of Defendant–Counterclaimant Public.Resource.Org's Motion to Strike, # 3 Declaration of Matthew Becker in Support of Motion to Strike, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 6, # 7 Exhibit 7)(Bridges, Andrew) (Entered: 01/21/2016) |
| 01/21/2016 | 67 | |

MOTION to Strike 60 the declaration of Kurt P. Geisinger by
PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Memorandum in Support
of Defendant–Counterclaimant Public.Resource.Orgs Motion to Strike
[PUBLIC], # 2 Declaration of Matthew Becker [PUBLIC], # 3 Exhibit 1 (Filed
Under Seal), # 4 Exhibit 2 (Filed Under Seal), # 5 Exhibit 3, # 6 Exhibit 4, # 7
Exhibit 5, # 8 Exhibit 6 (Filed Under Seal), # 9 Exhibit 7 (Filed Under Seal), #
10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12,
# 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Text of
Proposed Order, # 20 Certificate of Service)(Bridges, Andrew) Modified on
1/21/2016 linkage and text(td). (Entered: 01/21/2016)

| 01/21/2016 | 68 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order Granting Public.Resource.Org's Motion to File Under Seal, # 2 [SEALED] Memorandum of Points and Authorities In Support of Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 3 [SEALED] Statement of Material Facts, # 4 [SEALED] Statement of Disputed Facts, # 5 [SEALED] Objections to Plaintiffs' Evidence, # 6 [Sealed] Exhibit 2, # 7 [Sealed] Exhibit 3, # 8 [Sealed] Exhibit 4, # 9 [Sealed] Exhibit 5, # 10 [Sealed] Exhibit 6, # 11 [Sealed] Exhibit 8, # 12 [Sealed] Exhibit 11, # 13 [Sealed] Exhibit 12, # 14 [Sealed] Exhibit 13, # 15 [Sealed] Exhibit 14, # 16 [Sealed] Exhibit 15, # 17 [Sealed] Exhibit 17, # 18 [Sealed] Exhibit 18, # 19 [Sealed] Exhibit 19, # 20 [Sealed] Exhibit 20, # 21 [Sealed] Exhibit 21, # 22 [Sealed] Exhibit 22, # 23 [Sealed] Exhibit 23, # 24 [Sealed] Exhibit 24, # 25 [Sealed] Exhibit 25, # 26 [Sealed] Exhibit 26, # 27 [Sealed] Exhibit 27, # 28 [Sealed] Exhibit 28, # 29 [Sealed] Exhibit 29, # 30 [Sealed] Exhibit 30, # 31 [Sealed] Exhibit 32, # 32 [Sealed] Exhibit 33, # 33 [Sealed] Exhibit 34, # 34 [Sealed] Exhibit 38, # 35 [Sealed] Exhibit 41, # 36 [Sealed] Exhibit 42, # 37 [Sealed] Exhibit 43, # 38 [Sealed] Exhibit 50, # 39 [Sealed] Exhibit 64, # 40 Certificate of Service)(Bridges, Andrew) (Entered: 01/21/2016) |
| 01/21/2016 | 69 | MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction* by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Memorandum in Support of Public.Resource.Org's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 2 Statement of Material Facts, # 3 Statement of Disputed Facts, # 4 Objections to Evidence, # 5 Declaration of Carl Malamud, # 6 Declaration of Matthew Becker, # 7 Request for Judicial Notice, # 8 Text of Proposed Order Granting Public.Resource.Org's Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment and Permanent Injunction)(Bridges, Andrew) (Entered: 01/22/2016) |
| 01/21/2016 | 71 | Memorandum in opposition to re 60 MOTION for Summary Judgment *Filed MOTION for Permanent Injunction* filed by PUBLIC.RESOURCE.ORG, INC..(See docket entry no. 69 to view document.) (td) (Entered: 01/22/2016) |
| 01/22/2016 | 70 | LARGE ADDITIONAL ATTACHMENT(S) *Index of Consolidated Exhibits In Support of Public.Resource.Org's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction* by PUBLIC.RESOURCE.ORG, INC. 69 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and* |

*Permanent Injunction* filed by PUBLIC.RESOURCE.ORG, INC..
(Attachments: # 1 Exhibit 1, # 2 Exhibit 2 [Sealed], # 3 Exhibit 3 [Sealed], # 4 Exhibit 4 [Sealed], # 5 Exhibit 5 [Sealed], # 6 Exhibit 6 [Sealed], # 7 Exhibit 7, # 8 Exhibit 8 [Sealed], # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11 [Sealed], # 12 Exhibit 12 [Sealed], # 13 Exhibit 13 [Sealed], # 14 Exhibit 14 [Sealed], # 15 Exhibit 15 [Sealed], # 16 Exhibit 17 [Sealed], # 17 Exhibit 18 [Sealed], # 18 Exhibit 19 [Sealed], # 19 Exhibit 20 [Sealed], # 20 Exhibit 21 [Sealed], # 21 Exhibit 22 [Sealed], # 22 Exhibit 23 [Sealed], # 23 Exhibit 24 [Sealed], # 24 Exhibit 25 [Sealed], # 25 Exhibit 26 [Sealed], # 26 Exhibit 27 [Sealed], # 27 Exhibit 28 [Sealed], # 28 Exhibit 29 [Sealed], # 29 Exhibit 30 [Sealed], # 30 Exhibit 31, # 31 Exhibit 32 [Sealed], # 32 Exhibit 33 [Sealed], # 33 Exhibit 34 [Sealed], # 34 Exhibit 35, # 35 Exhibit 36, # 36 Exhibit 37, # 37 Exhibit 38 [Sealed], # 38 Exhibit 39, # 39 Exhibit 40, # 40 Exhibit 41 [Sealed], # 41 Exhibit 42 [Sealed], # 42 Exhibit 43 [Sealed], # 43 Exhibit 44, # 44 Exhibit 45, # 45 Exhibit 46, # 46 Exhibit 47, # 47 Exhibit 48, # 48 Exhibit 49, # 49 Exhibit 50 [Sealed], # 50 Exhibit 51, # 51 Exhibit 52, # 52 Exhibit 53, # 53 Exhibit 54, # 54 Exhibit 55, # 55 Exhibit 56, # 56 Exhibit 57, # 57 Exhibit 58, # 58 Exhibit 59, # 59 Exhibit 60, # 60 Exhibit 61, # 61 Exhibit 62, # 62 Exhibit 63, # 63 Exhibit 64 [Sealed], # 64 Exhibit 65, # 65 Exhibit 66, # 66 Exhibit 67, # 67 Exhibit 68, # 68 Exhibit 69, # 69 Exhibit 70, # 70 Exhibit 71, # 71 Exhibit 72, # 72 Exhibit 73, # 73 Exhibit 74)(Bridges, Andrew) (Entered: 01/22/2016)

| 01/25/2016 | 72 | | Consent MOTION for Extension of Time to File Response/Reply as to 67 MOTION to Strike 66 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) *filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(Hudis, Jonathan) (Entered: 01/25/2016) |
|---|---|---|---|
| 01/28/2016 | 73 | | Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Nikia L. Gray, :Firm– Quarles & Brady LLP, :Address– 1700 K Street, NW, Ste 825. Phone No. – 202–372–9600. Fax No. – 202–372–9599 Filing fee $ 100, receipt number 0090–4392805. Fee Status: Fee Paid. by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Declaration of Nikia L. Gray, # 2 Text of Proposed Order for Admission of Nikia L. Gray Pro Hac Vice, # 3 Certificate of Service)(Hudis, Jonathan) (Entered: 01/28/2016) |
| 01/29/2016 | | | MINUTE ORDER: Granting 73 Motion for Leave to Appear Pro Hac Vice. Attorney Nikia L. Gray is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs American Educational Research Association, Inc., American Psychological Association, Inc., and National Council on Measurement in Education, Inc. Signed by Judge Tanya S. Chutkan on 1/26/16. (DJS) (Entered: 01/29/2016) |
| 01/29/2016 | | | MINUTE ORDER: Granting 72 Plaintiffs' Consent Motion for Extension of Time. Plaintiffs shall respond to Defendant's motion to strike the Declaration of Kurt P. Geisinger 67 by February 18, 2016. Defendant's reply due March 3, 2016. Signed by Judge Tanya S. Chutkan on 1/29/16. (DJS) (Entered: |

| | | | |
|---|---|---|---|
| | | | 01/29/2016) |
| 02/04/2016 | | | MINUTE ORDER granting 66 Sealed Motion for Leave to File Document Under Seal; granting 68 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Tanya S. Chutkan on 2/4/16. (zsm) (Entered: 02/04/2016) |
| 02/04/2016 | 74 | | SEALED DOCUMENT filed by PUBLIC.RESOURCE.ORG, INC.. re Order on Sealed Motion for Leave to File Document Under Seal,. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/04/2016) |
| 02/04/2016 | 75 | | SEALED DOCUMENT filed by PUBLIC.RESOURCE.ORG, INC.. re Order on Sealed Motion for Leave to File Document Under Seal,. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/04/2016) |
| 02/08/2016 | | | MINUTE ORDER: Granting 63 Motion for Leave to Appear Pro Hac Vice. Attorney Sebastian E. Kaplan is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. Signed by Judge Tanya S. Chutkan on 2/8/16. (DJS) (Entered: 02/08/2016) |
| 02/11/2016 | 76 | | NOTICE of Appearance by Bruce D. Brown on behalf of The Reporters Committee for Freedom of the Press (Brown, Bruce) (Main Document 76 replaced on 2/11/2016) (td). (Entered: 02/11/2016) |
| 02/11/2016 | 77 | | Consent MOTION for Leave to File *Amicus Curiae Brief* by The Reporters Committee for Freedom of the Press (Attachments: # 1 Proposed Amicus Curiae Brief, # 2 Text of Proposed Order)(Brown, Bruce) (Entered: 02/11/2016) |
| 02/11/2016 | 78 | | Unopposed MOTION for Leave to File *Amicus Brief* by Law Scholars (Attachments: # 1 Exhibit BRIEF OF LAW SCHOLARS AS AMICI CURIAE IN SUPPORT OF DEFENDANTCOUNTERCLAIMANT, # 2 Text of Proposed Order)(Gellis, Catherine) (Entered: 02/11/2016) |
| 02/11/2016 | 79 | | NOTICE of Appearance by Charles Duan on behalf of PUBLIC KNOWLEDGE (Duan, Charles) (Entered: 02/11/2016) |
| 02/11/2016 | 80 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by PUBLIC KNOWLEDGE (Duan, Charles) (Entered: 02/11/2016) |
| 02/11/2016 | 81 | | MOTION for Leave to File *Amicus Curiae Brief* by PUBLIC KNOWLEDGE (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Duan, Charles) (Entered: 02/11/2016) |
| 02/11/2016 | 82 | | NOTICE of Appearance by Jeffrey T. Pearlman on behalf of SINA BAHRAM (Pearlman, Jeffrey) (Entered: 02/11/2016) |
| 02/11/2016 | 83 | | Unopposed MOTION for Leave to File *Brief of Amicus Curiae in Support of Defendant* by SINA BAHRAM (Attachments: # 1 Exhibit Proposed Amicus Curiae Brief of Sina Bahram in Support of Defendant, # 2 Text of Proposed Order)(Pearlman, Jeffrey) (Entered: 02/11/2016) |
| 02/12/2016 | 84 | | MOTION for Leave to File *Corrected Declarations* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON |

| | | |
|---|---|---|
| | | MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Exhibit 1– Declaration of Marianne Ernesto, # 2 Exhibit 2– Declaration of Wayne Camara, # 3 Exhibit 3– Declaration of Felice J. Levine, # 4 Text of Proposed Order, # 5 Certificate of Service)(Hudis, Jonathan) (Entered: 02/12/2016) |
| 02/16/2016 | | MINUTE ORDER: Granting 77 Motion By Reporters Committee for Freedom of the Press for leave to file Amicus brief in support of Defendant's Motion for Summary Judgment; Granting 78 Motion By Law Scholars for leave to file Amicus brief in support of Defendant's Motion for Summary Judgment; Granting 81 Motion by Public Knowledge for leave to file Amicus brief in support of Defendant's Motion for Summary Judgment; Granting 83 Motion by Sina Bahram for Leave to file Amicus brief in support of Defendant's Motion for Summary Judgment. Signed by Judge Tanya S. Chutkan on 2/16/16. (DJS) (Entered: 02/16/2016) |
| 02/16/2016 | | MINUTE ORDER: Granting 84 Plaintiffs' Consent Motion for Leave to File corrected Declarations. The Declarations of Marianne Ernesto, Wayne Camara, and Felice Levine (ECF Nos. 60–49, 60–76, and 60–78) filed in Support of Plaintiffs' Motion for Summary Judgment and a Permanent Injunction 60 are hereby accepted for filing without the necessity of further filing or serving any copy. Signed by Judge Tanya S. Chutkan on 2/16/16. (DJS) (Entered: 02/16/2016) |
| 02/16/2016 | 85 | AMICUS BRIEF by REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS. (td) Modified date filed on 2/17/2016 (td). (Entered: 02/17/2016) |
| 02/16/2016 | 86 | AMICUS BRIEF by Law Scholars. (td) (Entered: 02/17/2016) |
| 02/16/2016 | 87 | AMICUS BRIEF by PUBLIC KNOWLEDGE. (td) (Entered: 02/17/2016) |
| 02/16/2016 | 88 | AMICUS BRIEF by SINA BAHRAM. (td) (Entered: 02/17/2016) |
| 02/18/2016 | 89 | REPLY to opposition to motion re 69 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction*, 60 MOTION for Summary Judgment *Filed* MOTION for Permanent Injunction *(Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Summary Judgment and Permanent Injunction and Opposition to Defendant's Motion for Summary Judgment)* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # 1 Plaintiffs' Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment, # 2 Plaintiffs' Reply to Defendants' Statement of Disputed Facts, # 3 Plaintiffs' Response to Defendant's Objections to Plaintiffs' Evidence, # 4 Declaration of Nikia L. Gray, # 5 Exhibit VVV, # 6 Exhibit WWW, # 7 Exhibit XXX, # 8 Exhibit YYY, # 9 Exhibit ZZZ, # 10 Exhibit AAAA, # 11 Exhibit BBBB, # 12 Exhibit CCCC, # 13 Exhibit DDDD, # 14 Exhibit EEEE, # 15 Exhibit FFFF, # 16 Exhibit GGGG, # 17 Exhibit HHHH, # 18 Exhibit IIII, # 19 Exhibit JJJJ, # 20 Exhibit KKKK, # 21 Exhibit LLLL, # 22 Exhibit MMMM, # 23 Exhibit NNNN, # 24 Exhibit OOOO, # 25 Exhibit PPPP, # 26 Exhibit QQQQ, # 27 Exhibit RRRR, # 28 Exhibit SSSS, # 29 Exhibit TTTT, # 30 Exhibit UUUU, # 31 Exhibit VVVV, # 32 Exhibit WWWW, # 33 Exhibit XXXX, # 34 Exhibit YYYY, # 35 Exhibit ZZZZ, # 36 Exhibit AAAAA, # 37 Exhibit BBBBB, # 38 Exhibit CCCCC, # 39 Exhibit DDDDD, # 40 Exhibit |

| | | |
|---|---|---|
| | | EEEEE, # <u>41</u> Exhibit FFFFF, # <u>42</u> Exhibit GGGGG, # <u>43</u> Exhibit HHHHH, # <u>44</u> Exhibit IIIII, # <u>45</u> Exhibit JJJJJ, # <u>46</u> Exhibit KKKKK, # <u>47</u> Exhibit LLLLL, # <u>48</u> Exhibit MMMMM, # <u>49</u> Exhibit NNNNN, # <u>50</u> Exhibit OOOOO, # <u>51</u> Exhibit PPPPP, # <u>52</u> Exhibit QQQQQ, # <u>53</u> Exhibit RRRRR, # <u>54</u> Exhibit SSSSS, # <u>55</u> Exhibit TTTTT, # <u>56</u> Exhibit UUUUU, # <u>57</u> Exhibit VVVVV, # <u>58</u> Exhibit WWWWW, # <u>59</u> Exhibit XXXXX, # <u>60</u> Exhibit YYYYY, # <u>61</u> Exhibit ZZZZZ, # <u>62</u> Exhibit AAAAAA, # <u>63</u> Declaration of Wayne Camara, # <u>64</u> Plaintiffs' Objections to Defendant's Evidence, # <u>65</u> Certificate of Service)(Hudis, Jonathan) (Entered: 02/18/2016) |
| 02/18/2016 | <u>90</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Plaintiffs' Statement of Genuine, Disputed Issues of Material Facts, # <u>3</u> Plaintiffs' Reply to Defendant's Statement of Disputed Facts, # <u>4</u> Plaintiffs' Response to Defendants' Objections to Plaintiffs' Evidence, # <u>5</u> Exhibit VVVVV – Expert Report of S.E. Phillips, Ph.D., J.D., # <u>6</u> Exhibit XXXXX – Deposition Transcript of Wayne J. Camara, # <u>7</u> Exhibit YYYYY – Deposition Transcript of Dianne L. Schneider, # <u>8</u> Exhibit AAAAAA – Deposition Transcript of Marianne Ernesto, # <u>9</u> Plaintiffs' Opposition to Defendant's Motion to Strike the Declaration of Kurt F. Geisinger (sealed version), # <u>10</u> Exhibit 1– Deposition Transcript of Kurt F. Geisinger, # <u>11</u> Text of Proposed Order, # <u>12</u> Certificate of Service)(Hudis, Jonathan) (Entered: 02/18/2016) |
| 02/18/2016 | <u>91</u> | RESPONSE re <u>67</u> MOTION to Strike <u>66</u> SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) *(Plaintiffs' Opposition to Defendant's Motion to Strike the Declaration of Kurt F. Geisinger)* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # <u>1</u> Declaration of Jonathan Hudis, # <u>2</u> Exhibit 1, # <u>3</u> Certificate of Service)(Hudis, Jonathan) (Entered: 02/18/2016) |
| 02/18/2016 | | MINUTE ORDER granting <u>90</u> Sealed Motion for Leave to File Document Under Seal. Signed by Judge Tanya S. Chutkan on 2/18/16. (zsm) (Entered: 02/18/2016) |
| 02/18/2016 | <u>92</u> | SEALED DOCUMENT filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. re Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/19/2016) |
| 02/18/2016 | <u>93</u> | SEALED REPLY TO OPPOSITION filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. re <u>60</u> MOTION for Summary Judgment *Filed* MOTION for Permanent Injunction (ztd) (Entered: 02/19/2016) |

| 02/18/2016 | 94 | SEALED DOCUMENT filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit VVVVV, # 2 Exhibit XXXXX, # 3 Exhibit YYYYY, # 4 Exhibit AAAAAA)(ztd) (Entered: 02/19/2016) |
|---|---|---|
| 02/18/2016 | 95 | SEALED OPPOSITION filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. re 67 MOTION to Strike 66 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit)(ztd) (Entered: 02/19/2016) |
| 03/03/2016 | 96 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit [Filed Under Seal] Reply In Support of Defendant Public Resource's Motion to Strike the Declaration of Kurt F. Geisinger [90–12], # 2 Text of Proposed Order Granting Motion to File Under Seal, # 3 Certificate of Service Re Motion to File Under Seal)(Bridges, Andrew) (Entered: 03/03/2016) |
| 03/03/2016 | 97 | REPLY to opposition to motion re 67 MOTION to Strike 66 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) *[REDACTED] REPLY IN SUPPORT OF PUBLIC RESOURCE'S MOTION TO STRIKE THE DECLARATION KURT F. GEISINGER [90–12]* filed by PUBLIC.RESOURCE.ORG, INC.. (Bridges, Andrew) (Entered: 03/03/2016) |
| 03/03/2016 | 98 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 [Filed Under Seal] Reply In Support of Defendant Public Resource's Motion for Summary Judgment, # 2 [Filed Under Seal] Declaration of Matthew Becker In Support of Defendant's Reply to Its Motion for Summary Judgment, # 3 [Filed Under Seal] Objections to Plaintiffs' Supplemental Evidence, # 4 Exhibit 75 [Sealed], # 5 Exhibit 76 [Sealed], # 6 Exhibit 77 [Sealed], # 7 Exhibit 78 [Sealed], # 8 Exhibit 79 [Sealed], # 9 Exhibit 80 [Sealed], # 10 Text of Proposed Order Granting Motion to File Under Seal, # 11 Certificate of Service Re Motion to File Under Seal)(Bridges, Andrew) (Entered: 03/03/2016) |
| 03/03/2016 | 99 | REPLY to opposition to motion re 69 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction* filed by PUBLIC.RESOURCE.ORG, INC.. (Attachments: # 1 [Public Redacted] Reply Declaration of Matthew Becker In Further Support of Defendant's Motion for Summary Judgment, # 2 [Public Redacted] Defendant's Objections to Plaintiffs' Supplemental Evidence, # 3 Supplemental Request for Judicial Notice, # 4 [Public Redacted] Objections to Plaintiffs' Supplemental Evidence, # 5 Exhibit 75 [Sealed Placeholder], # 6 Exhibit 76 [Sealed Placeholder], # 7 Exhibit 77 [Sealed Placeholder], # 8 Exhibit 78 [Sealed Placeholder], # 9 Exhibit 79 [Sealed Placeholder], # 10 Exhibit 80 [Sealed |

| | | |
|---|---|---|
| | | Placeholder], # 11 Exhibit 81, # 12 Exhibit 82, # 13 Exhibit 83)(Bridges, Andrew) (Entered: 03/03/2016) |
| 03/04/2016 | | Minute ORDER granting 98 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Tanya S. Chutkan on 3/4/16. (zsm) (Entered: 03/07/2016) |
| 03/04/2016 | 100 | SEALED REPLY TO OPPOSITION filed by PUBLIC.RESOURCE.ORG, INC. re 69 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction*, 98 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (ztd) (Entered: 03/07/2016) |
| 03/08/2016 | 101 | NOTICE *of Intent to File Oppositions to Defendant's Motions, filed* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. re 99 Reply to opposition to Motion,,, (Hudis, Jonathan) (Entered: 03/08/2016) |
| 03/15/2016 | 102 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order Granting Defendant's Unopposed Motion for Leave to File Under Seal, # 2 Exhibit 5 [Sealed Version] of Corrected Memorandum of Points and Authorities In Support of Defendant's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, # 3 Exhibit 6 [Sealed Version] of Corrected Statement of Material Facts In Support of Defendant Public Resource's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 4 Exhibit 7 [Sealed Version] of Corrected Statement of Disputed Facts in Opposition to Plaintiffs' Motion for Summary Judgment, # 5 Certificate of Service Re Motion to Seal)(Becker, Matthew) (Entered: 03/15/2016) |
| 03/15/2016 | 103 | Unopposed MOTION for Leave to File *Corrected Documents* by PUBLIC.RESOURCE.ORG, INC. (Attachments: # 1 Text of Proposed Order Granting Defendant's Unopposed Motion for Leave to File Corrected Documents, # 2 Exhibit 1 [Redacted Version] of Memorandum of Points and Authorities In Support of Defendant Public Resource's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 3 Exhibit 2 [Redacted Version] of Statement of Material Facts In Support of Defendant Public Resource's Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 4 Exhibit 3 [Redacted Version] of Statement of Disputed Facts In Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction, # 5 Exhibit 4 Table of Corrections)(Becker, Matthew) (Entered: 03/15/2016) |
| 03/17/2016 | | MINUTE ORDER granting 103 Motion for Leave to File. Signed by Judge Tanya S. Chutkan on 3/17/16. (zsm) (Entered: 03/17/2016) |
| 03/17/2016 | 104 | SEALED DOCUMENT filed by PUBLIC.RESOURCE.ORG, INC.. re Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 03/17/2016) |

| 03/17/2016 | 105 | REDACTED DOCUMENT– to 69 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction*, Order on Motion for Leave to File by PUBLIC.RESOURCE.ORG, INC. (td) (Entered: 03/17/2016) |
|---|---|---|
| 03/21/2016 | 106 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 to Declaration of Jonathan Hudis, # 3 Plaintiffs' Objections to Defendant's Evidence in Support of its Reply Memorandum, # 4 Text of Proposed Order, # 5 Certificate of Service)(Hudis, Jonathan) (Entered: 03/21/2016) |
| 03/21/2016 | 107 | Memorandum in opposition to re 98 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Attachments: # 1 Declaration of Jonathan Hudis, # 2 Certificate of Service)(Hudis, Jonathan) (Entered: 03/21/2016) |
| 03/21/2016 | 108 | RESPONSE re 98 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) *Plaintiffs' Responses to Defendant's Objections to Plaintiffs' Supplemental Evidence* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Hudis, Jonathan) (Entered: 03/21/2016) |
| 03/21/2016 | 109 | RESPONSE re 98 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) *Plaintiffs' Objections to Defendant−Counterclaimant Public.Resource.Org, Inc.'s Evidence In Support of Defendant−Counterclaimant's Reply Memorandum in Support of Its Motion for Summary Judgment* filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.. (Hudis, Jonathan) (Entered: 03/21/2016) |
| 03/21/2016 | 110 | SEALED DOCUMENT filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.. re 99 Reply to opposition to Motion,,, filed by PUBLIC.RESOURCE.ORG, INC.. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit)(ztd) (Entered: 03/22/2016) |
| 03/22/2016 | | MINUTE ORDER granting 106 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Tanya S. Chutkan on 3/22/16. (zsm) (Entered: 03/22/2016) |

| | | |
|---|---|---|
| 03/31/2016 | 111 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PUBLIC.RESOURCE.ORG, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Defendant Public Resource's Reply to Its Objections and Responses to Plaintiffs' Objections, # 2 Certificate of Service Re Motion to Seal Defendant Public Resource's Reply to Its Objections and Responses to Plaintiffs' Objections, # 3 [Filed Under Seal] Defendant Public.Resource.Org, Inc.'s Reply to Its Objections and Motions to Strike Plaintiffs' Supplemental Evidence, # 4 [Filed Under Seal] Responses to Plaintiffs' Objections to Defendant's Evidence in Support of Its Reply Memorandum In Support of Its Motion for Summary Judgment)(Becker, Matthew) (Entered: 03/31/2016) |
| 03/31/2016 | 112 | REPLY to opposition to motion re 106 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (This document is SEALED and only available to aut *[Redacted Version] Defendant Public.Resource.Org, Inc.'s Reply to Its Objections and Motions to Strike Plaintiffs' Supplemental Evidence* filed by PUBLIC.RESOURCE.ORG, INC.. (Attachments: # 1 Declaration of Matthew Becker In Support of Defendant Public Resource's Reply to Its Objections and Motions to Strike Plaintiffs' Supplemental Evidence)(Becker, Matthew) (Entered: 03/31/2016) |
| 03/31/2016 | 113 | RESPONSE re 106 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (This document is SEALED and only available to aut *[Redacted Version] Defendant Public.Resource.Org, Inc.'s Responses to Plaintiffs' Objections to Defendant's Evidence In Support of Its Reply Memorandum In Support of Its Motion for Summary Judgment* filed by PUBLIC.RESOURCE.ORG, INC.. (Becker, Matthew) (Entered: 03/31/2016) |
| 05/26/2016 | 114 | NOTICE of Change of Address by Jonathan Hudis (Hudis, Jonathan) (Entered: 05/26/2016) |
| 06/03/2016 | | MINUTE ORDER. Motion Hearing on all pending motions set for 9/12/2016 at 9:30 AM in Courtroom 2 before Judge Tanya S. Chutkan. Signed by Judge Tanya S. Chutkan on 6/3/16. (lctsc2) (Entered: 06/03/2016) |
| 06/03/2016 | | Set/Reset Hearings: Motion Hearing set for 9/12/2016 at 9:30 AM in Courtroom 2 before Judge Tanya S. Chutkan. (zsm) (Entered: 06/03/2016) |
| 09/09/2016 | | MINUTE ORDER: The motions hearing previously scheduled for 9:30 a.m. on 9/12/2016 has been rescheduled to begin at 9:00 a.m. in Courtroom 2. Signed by Judge Tanya S. Chutkan on 9/9/2016. (lctsc2) (Entered: 09/09/2016) |
| 09/09/2016 | | Set/Reset Hearings: Motion Hearing set for 9/12/2016 at 9:00 AM in Courtroom 2 before Judge Tanya S. Chutkan. (zsm) (Entered: 09/09/2016) |
| 09/12/2016 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 9/12/2016 re 69 MOTION for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Permanent |

| | | | |
|---|---|---|---|
| | | | Injunction filed by PUBLIC.RESOURCE.ORG, INC., 60 MOTION for Summary Judgment Filed MOTION for Permanent Injunction filed by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. Motions taken under advisement. (Court Reporter Bryan Wayne.) (zsm) (Entered: 09/12/2016) |
| 09/21/2016 | 115 | | ORDER denying 67 Defendant's Motion to Strike Expert Declaration. Signed by Judge Tanya S. Chutkan on 9/21/2016. (lctsc2) (Entered: 09/21/2016) |
| 10/13/2016 | 116 | | TRANSCRIPT OF 9/12/16 MOTIONS HEARING, before Judge Tanya S. Chutkan, held on September 12, 2016. Page Numbers: 1–142. Date of Issuance: 10/13/16. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, t he transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/3/2016. Redacted Transcript Deadline set for 11/13/2016. Release of Transcript Restriction set for 1/11/2017.(Wayne, Bryan) (Entered: 10/13/2016) |
| 02/02/2017 | 117 | 36 | MEMORANDUM AND OPINION re 60 Plaintiffs' motion for summary judgment and 69 Defendant's cross–motion for summary judgment. Signed by Judge Tanya S. Chutkan on 2/2/2017. (lctsc2) (Entered: 02/02/2017) |
| 02/02/2017 | 118 | 91 | ORDER granting in part and denying in part 60 Plaintiffs' motion for summary judgment; denying 69 Defendant's cross–motion for summary judgment; denying as moot 96 Sealed Motion for Leave to File Document Under Seal; denying as moot 111 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Tanya S. Chutkan on 2/2/2017. (lctsc2) (Entered: 02/02/2017) |
| 02/10/2017 | 119 | | MOTION to Clarify*Order [Dkt No 118] and, in Alternative, for Continuance* by AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order, # 3 Certificate of Service)(Hudis, Jonathan) (Entered: 02/10/2017) |
| 02/13/2017 | | | MINUTE ORDER: 119 Plaintiffs' Motion is GRANTED to the extent that Plaintiffs are not required to abide by the deadline for requesting attorney fees under Federal Rule 54(d). The parties are hereby ORDERED to file a joint status report by 3/3/2017 (1) updating the court as to Defendant's compliance |

| | | | |
|---|---|---|---|
| | | | with 118 the court's order to remove the standards from its website and (2) providing a jointly proposed schedule for moving forward with this litigation. Signed by Judge Tanya S. Chutkan on 2/13/2017. (lctsc2) (Entered: 02/13/2017) |
| 02/14/2017 | | | Set/Reset Deadlines: Joint Status Report due by 3/3/2017. (jth) (Entered: 02/14/2017) |
| 02/17/2017 | 120 | 33 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 118 Order on Motion for Summary Judgment,, Order on Motion for Permanent Injunction,,,, Order on Sealed Motion for Leave to File Document Under Seal,,, 117 Memorandum & Opinion by PUBLIC.RESOURCE.ORG, INC.. Filing fee $ 505, receipt number 0090–4848021. Fee Status: Fee Paid. Parties have been notified. (Bridges, Andrew) (Entered: 02/17/2017) |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.; | Case No. 1:14-CV-00857-TSC-DAR |
| AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.; and | **NOTICE OF APPEAL BY DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.** |
| NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., | Action Filed:   May 23, 2014 |
| Plaintiffs/Counter-Defendants, | |
| v. | |
| PUBLIC.RESOURCE.ORG, INC. | |
| Defendant/Counterclaimant. | |

Pursuant to 28 U.S.C. § 1292(a)(1), Defendant and Counterclaimant Public.Resource.Org, Inc. hereby gives notice of its appeal to the United States Court of Appeals for the District of Columbia Circuit from the order of February 2, 2017, Dkt. no. 118, permanently enjoining Public.Resource.Org and granting in part Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction, pursuant to this Court's decision in the memorandum opinion of the same date, Dkt. no. 117.

Dated: February 17, 2017           Respectfully submitted,

*/s/   Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges@fenwick.com
Sebastian E. Kaplan (admitted *pro hac vice*)
skaplan@fenwick.com
Matthew Becker (admitted *pro hac vice*)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    (415) 875-2300
Facsimile:     (415) 281-1350

Corynne McSherry (admitted *pro hac vice*)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:    (415) 436-9333
Facsimile:     (415) 436-9993

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

*Attorneys for Defendant-Counterclaimant*
Public.Resource.Org, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the Court for

the District of Columbia and served on all counsel of record via the CM/ECF system on

February 17, 2017.

*/s/ Andrew P. Bridges*
Andrew P. Bridges

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Case No. 13-cv-1215 (TSC) |
| v. | )<br>) |
| PUBLIC.RESOURCE.ORG, INC., | )<br>) |
| Defendant. | )<br>) |
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC. *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 14-cv-0857 (TSC) |
| PUBLIC.RESOURCE.ORG, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

Before the court are motions and cross-motions for summary judgment in two related cases. Because there is significant factual and legal overlap between the two cases, the court issues this consolidated opinion to be filed in both cases.

Plaintiffs American Society for Testing and Materials ("ASTM"), National Fire Protection Association, Inc. ("NFPA"), and American Society of Heating, Refrigerating, and Air-Conditioning Engineers ("ASHRAE") (collectively "ASTM Plaintiffs") brought suit against Defendant Public.Resource.org, Inc. ("Public Resource") under the Copyright Act (17 U.S.C. § 101 *et seq.*) and the Lanham Act (15 U.S.C. § 1051 *et seq.*), alleging copyright infringement and trademark infringement. Plaintiffs American Educational Research Association, Inc.

1

("AERA"), American Psychological Association, Inc. ("APA"), and National Council on

Measurement in Education, Inc. ("NCME") (collectively "AERA Plaintiffs") also brought

copyright infringement claims against Public Resource under the Copyright Act. Plaintiffs[1] in

both cases seek permanent injunctions barring Defendant from continued display of their works.

     Plaintiffs moved for summary judgment, and Defendant filed cross-motions for summary

judgment in both cases. The court held a combined oral argument on September 12, 2016 to

consider the motions. Upon consideration of the parties' filings, the numerous amicus briefs,

and the arguments presented at the motions hearing, and for the reasons stated herein, the ASTM

Plaintiffs' motion for summary judgment is GRANTED and Defendant's cross-motion is

DENIED. The AERA Plaintiffs' motion for summary judgment is GRANTED IN PART AND

DENIED IN PART, and Defendant's cross-motion is DENIED.

## I.    FACTUAL BACKGROUND

### A.   The Parties

#### 1.   ASTM Plaintiffs

     ASTM Plaintiffs are not-for-profit organizations that develop private sector codes and

standards in order to advance public safety, ensure compatibility across products and services,

facilitate training, and spur innovation. (*See* ASTM Pls. Statement of Material Facts ("PSMF")

¶¶ 9, 13, 14, 86, 87, 129, 130 (ASTM ECF No. 118-2)).[2] These standards include technical

works, product specifications, installation methods, methods for manufacturing or testing

materials, safety practices, and other best practices or guidelines. (*Id.* ¶ 1). ASTM has

---

[1] For simplicity, the court's use of "Plaintiffs" refers collectively to the ASTM Plaintiffs and
AERA Plaintiffs.

[2] All initial citations to the record in this Opinion will include the docket number as "ASTM
ECF" or "AERA ECF."

developed over 12,000 standards that are used in a wide range of fields, including consumer

products, iron and steel products, rubber, paints, plastics, textiles, medical services and devices,

electronics, construction, energy, water, and petroleum products, and are the combined efforts of

over 23,000 technical members, representing producers, users, consumers, government, and

academia.  (*Id.* ¶¶ 13, 28, 41).  NFPA has developed over 300 standards in the areas of fire,

electrical, and building safety, with the goal of reducing the risk of death, injury, and property

and economic loss due to fire, electrical, and related hazards.  (*Id.* ¶¶ 86, 87, 92).  NFPA's most

well-known standard is the National Electrical Code, first published in 1897 and most recently in

2014.  (*Id.* ¶¶ 93–94).  Finally, ASHRAE has published over 100 standards for a variety of

construction-related fields, including energy efficiency, indoor air quality, refrigeration, and

sustainability.  (*Id.* ¶ 130).

### 2.    AERA Plaintiffs

AERA Plaintiffs are not-for-profit organizations that collaboratively develop the

Standards for Educational and Psychological Testing, including the 1999 edition at issue in this

case ("the 1999 Standards").  (AERA PSMF ¶¶ 1, 5, 13 (AERA ECF No. 60-2)).  AERA is a

national scientific society whose mission is "to advance knowledge about education, to

encourage scholarly inquiry related to education, and to promote the use of research to improve

education."  (*Id.* ¶ 2).  APA is the world's largest association of psychologists, and its mission is

"to advance the creation, communication, and application of psychological knowledge."  (*Id.*

¶ 3).  Finally, NCME is a professional organization "for individuals involved in assessment,

evaluation, testing, and other aspects of educational measurement."  (*Id.* ¶ 4).

### 3.    Public Resource

Defendant Public Resource is a not-for-profit entity devoted to publicly disseminating

3

legal information. (ASTM DSMF ¶¶ 1–2 (ASTM ECF No. 120-3); AERA DSMF ¶¶ 1–2 (AERA ECF No. 68-3)). Its mission is "make the law and other government materials more widely available so that people, businesses, and organizations can easily read and discuss [the] laws and the operations of government." (ASTM DSMF ¶ 2; AERA DSMF ¶ 2). Public Resource has posted government-authored materials on its website, including judicial opinions, Internal Revenue Service records, patent filings, and safety regulations. (ASTM DSMF ¶¶ 3–4; AERA DSMF ¶¶ 3–4). It does not charge fees to view or download the materials on its website. (ASTM DSMF ¶ 5; AERA DSMF ¶ 5).

**B. Incorporation by Reference of Industry Standards**

In the United States, a complex public-private partnership has developed over the last century in which private industry groups or associations, rather than government agencies, typically develop standards, guidelines, and procedures that set the best practices in a particular industry.[3] Applicable standards are used by entities and individuals in order to self-regulate and conform to the best practices of that industry. Professor Peter Strauss has noted that "manufacturing and markets are greatly aided, and consumers offered protection, by the application of uniform industrial standards created independent of law, as means of assuring quality, compatibility, and other highly desired market characteristics." Peter L. Strauss, *Private Standards Organizations and Public Law*, 22 Wm. & Mary Bill Rts. J. 497, 499 (2013).

[3] *See* U.S. Office of Management and Budget, Revised Circular No. A-119, https://obamawhitehouse.archives.gov/sites/default/files/omb/inforeg/revised_circular_a-119_as_of_1_22.pdf ("OMB Revised Circular") at 1 (Jan. 27, 2016) ("The vibrancy and effectiveness of the U.S. standards system in enabling innovation depends on continued private sector leadership and engagement. Our approach—reliance on private sector leadership, supplemented by Federal government contributions to discrete standardization processes as outlined in OMB Circular A-119—remains the primary strategy for government engagement in standards development.").

Standards are typically developed by standards developing organizations ("SDOs"), like Plaintiffs, who work to develop "voluntary consensus standards," such as those here. Voluntary consensus standards are the ultimate product of many volunteers and association members from numerous sectors bringing together technical expertise. They are "developed using procedures whose breadth of reach and interactive characteristics resemble governmental rulemaking, with adoption requiring an elaborate process of development, reaching a monitored consensus among those responsible within the SDO." *Id.* at 501. ASTM Plaintiffs develop their standards using technical committees with representatives from industry, government, consumers, and technical experts. (ASTM PSMF ¶¶ 7, 28, 29, 109, 114, 135). These committees conduct open proceedings, consider comments and suggestions, and provide for appeals, and through subcommittees, draft new standards, which the full committees vote on. (*Id.* ¶¶ 31–37, 109, 136, 139). The AERA Plaintiffs developed the 1999 Standards through a Joint Committee which considered input from the public in a notice-and-comment process. (AERA PSMF ¶¶ 13–16).

Pursuant to 5 U.S.C. § 552, federal agencies may incorporate voluntary consensus standards—as well as, for example, state regulations, government-authored documents, and product service manuals—into federal regulations by reference. *See* Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36 Harv. J.L. & Pub. Pol'y 131, 145–47 (2013) (providing a general overview of the federal government's incorporation of materials by reference). The federal government's practice of incorporation by reference of voluntary consensus standards is intended to achieve several goals, including eliminating the cost to the federal government of developing its own standards, encouraging long-term growth for U.S. enterprises, promoting efficiency, competition, and trade, and furthering the reliance upon private sector expertise. *See* OMB Revised Circular, *supra*, at 14.

5

Section 552(a)(1) provides that "a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published[, but] . . . matter *reasonably available to the class of persons affected thereby* is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register." 5 U.S.C. § 552(a)(1) (emphasis added). The Office of the Federal Register ("OFR") adopted regulations pursuant to § 552(a)(1) in 1982 and issued revised regulations in 2014. *See* Approval Procedures for Incorporation by Reference, 47 Fed. Reg. 34,107 (Aug. 6, 1982) (codified at 1 C.F.R. § 51.1 *et seq.*); 79 Fed. Reg. 66,267 (Nov. 7, 2014). These regulations specify that a "publication is eligible for incorporation by reference" if it is "published data, criteria, standards, specifications, techniques, illustrations, or similar material; and [d]oes not detract from the usefulness of the Federal Register publication system." 1 C.F.R. § 51.7(a)(2). To determine whether the material is "reasonably available" as required by the statute, OFR will consider "[t]he completeness and ease of handling of the publication" and "[w]hether it is bound, numbered, and organized, as applicable." *Id.* § 51.7(a)(3). All the standards at issue in this case have been incorporated by reference into federal law. (ASTM DSMF ¶ 22; 34 C.F.R. § 668.146 (incorporating AERA Plaintiffs' 1999 Standards).

Standards that are incorporated by reference are available in person at the OFR in Washington, DC and/or with the incorporating agency. *See* 1 C.F.R. § 51.3(b)(4). Federal regulations that incorporate standards by reference typically direct interested individuals or entities to location(s) where they may view the incorporated documents in person. For example, the Environmental Protection Agency's ("EPA") regulation, 40 C.F.R. § 60.17(a), which incorporates numerous standards at issue here, states that:

> Certain material is incorporated by reference into this part with the approval of the Director of the Federal Register under 5 U.S.C. § 552(a) and 1 CFR part 51. . . .

6

> All approved material is available for inspection at the EPA Docket Center, Public Reading Room, EPA WJC West, Room 3334, 1301 Constitution Ave. NW, Washington, DC, telephone number 202-566-1744, and is available from the sources listed below. It is also available for inspection at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call (202) 741-6030 or go to http://www.archives.gov/ federal_register/code_of_federal_regulations/ibr_locations.html.

The EPA regulation further specifies that, for example, the 206 ASTM standards incorporated by reference by the EPA (some of which are involved in this suit) are "available for purchase from ASTM International, 100 Barr Harbor Drive, P.O. Box CB700, West Conshohocken, Pennsylvania 19428-2959, (800) 262-1373, http://www.astm.org." 40 C.F.R. § 60.17(h). The U.S. Department of Education incorporated the AERA Plaintiffs' 1999 Standards by reference at 34 C.F.R. § 668.146(b)(6), which states that the standards are:

> on file at the Department of Education, Federal Student Aid, room 113E2, 830 First Street, NE, Washington, DC 20002, phone (202) 377-4026, and at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call 1-866-272-6272, or to go: http://www.archives.gov/ federal-register/code-of-federal-regulations/ibr-locations.html. The document may also be obtained from the American Educational Research Association.

ASTM Plaintiffs sell PDF and hard copy versions of their standards, including those that have been incorporated by reference into law. (ASTM PSMF ¶¶ 57, 99, 157). The prices for the standards in this case range from $25 to $200. (*Id.* ¶¶ 58, 99, 158). The ASTM Plaintiffs also maintain "reading rooms" on their websites that allow interested parties to view Plaintiffs' standards that have been incorporated by reference. (*Id.* ¶¶ 63–64, 100, 161). The standards in these reading rooms are "read-only," meaning they appear as images that may not be printed or downloaded. (*Id.*). AERA Plaintiffs sell hardcopy versions of the 1999 Standards, but do not sell digital or PDF versions. (AERA PSMF ¶¶ 30, 33). The prices for the 1999 Standards have ranged from $25.95 to $49.95 per copy, and they were sold continuously from 2000 through 2014, except for a nearly two-year period. (*Id.* ¶¶ 34–35).

7

## C.    Plaintiffs' Claims in This Action

### 1.    ASTM et al. v. Public Resource

This case involves 257 of ASTM Plaintiffs' standards that have been incorporated by reference into federal law.  (*See* ASTM Compl. Ex. A–C; ASTM DSMF ¶ 22).  Defendant admits that it purchased hard copies of each of the standards at issue, scanned them into PDF files, added a cover sheet, and posted them online.  (ASTM DSMF ¶¶ 173–74, 177–78; ASTM PSMF ¶¶ 182–87).  Defendant re-typed some of ASTM Plaintiffs' standards and posted them online, with text in Hypertext Markup Language (HTML) format and graphics and figures in Mathematics Markup Language and Scalable Vector Graphics formats.  (ASTM DSMF ¶¶ 83, 175).  The copies posted on Defendant's website all bore ASTM Plaintiffs' trademarks.  (ASTM PSMF ¶ 210).  Defendant also uploaded the ASTM Plaintiffs' standards to the Internet Archive, a separate independent website.  (*Id.* ¶ 185).

The ASTM Plaintiffs allege that their standards are original works protected from copyright infringement, and brought claims of copyright infringement, contributory copyright infringement, trademark infringement, unfair competition and false designation, and trademark infringement under common law.  (ASTM Compl. ¶¶ 142–95).  Defendant counter-sued, seeking a declaratory judgment that its conduct does not violate copyright law or trademark law.  (ASTM Ans. ¶¶ 174–205).  Both sides have filed motions for summary judgment.

### 2.    AERA et al. v. Public Resource

This case involves the 1999 Standards, which AERA Plaintiffs have sold since 2000.  (AERA PSMF ¶¶ 34–35).  In May 2012, Public Resource purchased a paper copy of the 1999 Standards, disassembled it, scanned the pages, created a PDF file, attached a cover sheet, and, without authorization from the AERA Plaintiffs, posted the PDF file to Public Resource's

8

website and the Internet Archive.  (AERA DSMF ¶ 28; AERA PSMF ¶¶ 69–80).  Public

Resource posted a read-only version of the 1999 Standards to its website, unlike many of the

ASTM Plaintiffs' standards, which had undergone optical character recognition ("OCR")

processing to be text-searchable.  (*Id.* ¶ 73).  OCR processing uses a machine to recognize letters

and words in a PDF and translate them into letters or words that can be searched and used by

text-to-speech software for individuals who are blind or visually impaired. (*Id.* ¶¶ 73–75).

Plaintiffs allege that the 1999 Standards are protected original works, and they brought

suit claiming copyright infringement and contributory copyright infringement.  (AERA Compl.

¶¶ 50–63).  Defendant counter-sued seeking a declaratory judgment that its conduct does not

violate copyright law or trademark law.  (AERA Ans. ¶¶ 116–37).  Both sides have moved for

summary judgment.

## II.    LEGAL STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact.") (emphasis in original); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir.

2006).  Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim

or defense."  Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

"A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law;

9

factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment

determination.  An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'"  *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S.

at 248) (citation omitted).  The party seeking summary judgment "bears the heavy burden of

establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers

Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

        In considering a motion for summary judgment, "[t]he evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in his favor."  *Liberty Lobby*, 477 U.S.

at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) ("We

view the evidence in the light most favorable to the nonmoving party and draw all inferences in

its favor.").  The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials, and must be supported by affidavits, declarations, or other

competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See*

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-movant "is

required to provide evidence that would permit a reasonable jury to find [in his favor]."

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## III.    ANALYSIS

### A.    Copyright Infringement

        Under the Copyright Act, copyright in a work vests initially in the author(s) of that work.

17 U.S.C. § 201(a).  Ownership can be transferred in whole or in part, and the exclusive rights of

copyright ownership may also be transferred.  *Id.* § 201(d).  An owner of a valid copyright has

the "exclusive right" to reproduce, distribute, or display the copyrighted works as well as prepare

derivative works based upon it.  *Id.* § 106(1)–(3), (5).  Anyone who violates the exclusive rights

10

of the copyright owner "is an infringer of the copyright or right of the author, as the case may

be." *Id.* § 501(a). The legal or beneficial owner of that exclusive right may then "institute an

action for any infringement." *Id.* § 501(b). In order to succeed on their copyright infringement

claims, the Plaintiffs must prove both "'(1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original.'" *Stenograph, LLC v. Bossard Assoc., Inc.*,

144 F.3d 96, 99 (D.C. Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

340, 361 (1991)).

### 1. *Feist* Prong 1: Ownership of a Valid Copyright

#### a. Ownership

The court must first decide the threshold issue of whether Plaintiffs own the copyrights in

part or outright such that they have standing to challenge Defendant's alleged infringement. The

Copyright Act provides that possession of a certificate of registration from the U.S. Copyright

Office "made before or within five years after first publication of the work shall constitute prima

facie evidence," creating a rebuttable presumption of ownership of a valid copyright. 17 U.S.C.

§ 410(c); *see also MOB Music Publ'g. v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197,

202 (D.D.C. 2010). If the copyright was registered more than five years after the work was

published, then the "evidentiary weight to be accorded . . . shall be within the discretion of the

court." 17 U.S.C. § 410(c).

When a party offers as prima facie evidence a registration certificate for a compilation of

individual works that it authored, rather than the registration for a specific individual work, a

court may consider this to be similar prima facie evidence of ownership, creating the same

rebuttable presumption. *See Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003),

*abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Morris v. Business*

11

*Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001), *abrogated on other grounds by Muchnick*, 559

U.S. 154 (2010).  Moreover, the registration certificate is sufficient prima facie evidence for the

individual works within the compilation if the compilation is deemed to be a "single work."

Federal regulations provide that "all copyrightable elements that are otherwise recognizable as

self-contained works, that are included in a single unit of publication, and in which the copyright

claimant is the same" constitute a "single work," such that they are validly registered under a

single registration certificate  37 C.F.R. § 202.3(b)(4)(A); *Kay Berry, Inc. v. Taylor Gifts, Inc.*,

4221 F.3d 199, 205–06 (3d Cir. 2005); *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471,

483 (S.D.N.Y. 2008).

      Once a copyright holder has proffered this prima facie evidence, the alleged infringer

"challenging the validity of the copyright has the burden to prove the contrary."  *Hamil Am., Inc.*

*v. GFI, Inc.*, 193 F.3d 92, 98 (2d Cir. 1999); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630

F.3d 1255, 1257 (9th Cir. 2011) (infringer "has the burden of rebutting the facts set forth in the

copyright certificate").  The defendant-infringer might argue that the plaintiff-copyright holder

had some defect in the record-keeping submitted to establish ownership.  However, this "skips a

step," as the defendant must first "set forth facts that rebut the presumption of validity to which

[the plaintiff's] copyright is entitled" before attacking the sufficiency of a plaintiff's evidence of

ownership.  *United Fabrics*, 630 F.3d at 1257.  The infringer must use "*other evidence* in the

record [to] cast[] doubt on" the validity of the ownership.  *Fonar Corp. v. Domenick*, 105 F.3d

99, 104 (2d Cir. 1997) (emphasis in original).  The court in *Fonar* noted that defendant-infringers

have overcome the presumption of validity with evidence that the work has been copied from the

public domain and evidence that the work was non-copyrightable.  *Id.* (citing *Folio Impressions,*

*Inc. v. Byer Cal.*, 937 F.2d 759, 763–64 (2d Cir. 1991); *Carol Barnhart, Inc. v. Economy Cover*

12

*Corp.*, 773 F.2d 411, 414 (2d Cir. 1985)).  Parties challenging the validity of copyright

registrations must therefore do more than simply point out potential errors in the certificate.  *See*

2 Nimmer on Copyright § 7.20(b)(1) ("a misstatement . . . in the registration application, if

unaccompanied by fraud, should neither invalidate the copyright nor render the registration

certificate incapable of supporting an infringement action").

     The ASTM Plaintiffs produced copyright certificates for each of the nine standards at

issue, and each of these certificates list the ASTM Plaintiffs as the authors of the works.[4]  The

AERA Plaintiffs also produced the copyright certificates for the 1999 Standards, listing the

AERA Plaintiffs as authors.[5]  Two of ASTM's standards—D86-07 and D975-07—were

registered more than five years after they were published.  The court accords these the same

evidentiary weight as if they had been registered within five years.  *See* 17 U.S.C. § 410(c) (court

has discretion over evidentiary weight).  Moreover, the court finds that the registration certificate

for the 1999 Book of Standards sufficiently establishes prima facie evidence of ASTM's

ownership of D396-98 and D1217-93(98).  Therefore, the ASTM Plaintiffs and AERA Plaintiffs

have established their ownership of the works at issue with prima facie evidence.

---

[4]  The nine copyright registrations are provided in the record here:

- ASTM:  Ex. 1 to O'Brien Decl. (ASTM D86-07) (ASTM ECF No. 118-7, p. 13); Ex. 2 to O'Brien Decl. (ASTM D975-07) (ASTM ECF No. 118-7, p. 16); Ex. 4 to O'Brien Decl. (1999 Annual Book of ASTM Standards) (ASTM ECF No. 118-7, p. 23); Ex. 3 to O'Brien Decl. (listing ASTM D396-98 and ASTM D1217-93(98) as standards included in the 1999 Annual Book of ASTM Standards) (ASTM ECF No. 118-7, pp. 20–21).

- NFPA:  Ex. A to Berry Decl. (National Electrical Code, 2011 ed.) (ASTM ECF No. 118-3, p. 6); Ex. B to Berry Decl. (2014 ed.) (ASTM ECF No. 118-3, p. 8).

- ASHRAE:  Ex. 3 to Reiniche Decl. (Standard 90.1, 2004 ed.) (ASTM ECF No. 118-10, page 16); Ex. 4 to Reiniche Decl. (2007 ed.) (ASTM ECF No. 118-10, page 19); Ex. 5 to Reiniche Decl. (2010 ed.) (ASTM ECF No. 118-10, page 22).

[5]  Ex. RRR to Levine Decl. (original copyright registration) (AERA ECF No. 60-83); Ex. SSS to Levine Decl. (2014 corrected registration) (AERA ECF No. 60-84).

13

The burden to offer evidence disproving ownership thus shifts in both cases to Defendant. *See Zanzibar*, 698 F. Supp. 2d at 202; *Roeslin v. District of Columbia*, 921 F. Supp. 793, 797 (D.D.C. 1995) (finding that because the copyright registration listed plaintiff as the author, the "burden is thus on the defendant to establish" that plaintiff was not the author). To rebut the presumption of validity, in both cases Defendant pointed to the fact that the certificates state that the standards were "works for hire"—i.e., that Plaintiffs acquired authorship and ownership rights because their employees or anyone who signed a work-for-hire agreement wrote the standards—and the certificates further state that Plaintiffs are the authors of the "entire text[s]," when Plaintiffs have said that the standards are drafted by hundreds or thousands of volunteer contributors. Defendant contends that the certificates must list all of these hundreds or thousands of authors in order to be accurate, and that the failure to do so is a material error which strips Plaintiffs of the presumption of ownership. However, Defendant offers scant support for this argument.

Moreover, Defendant failed to meet its initial burden, since it did not adduce any additional evidence *disproving* Plaintiffs' authorship. Instead, Defendant points to weaknesses in the additional evidence that Plaintiffs proffered to establish their ownership, including questioning whether every one of the hundreds of Plaintiffs' members who contributed to the standards at issue signed an agreement with appropriate language transferring or assigning copyright ownership to Plaintiffs. Because Plaintiffs may have standing to bring this infringement suit even as part owners of the copyrights, it is not clear why Defendant asserts that Plaintiffs must prove outright ownership of their copyrights. Beyond showing that Plaintiffs' recordkeeping could perhaps be more thorough, Defendant has not identified any evidence that either the ASTM Plaintiffs or AERA Plaintiffs do not own the copyrights of the standards, in

14

whole or in part.  The court therefore concludes that the ASTM Plaintiffs and AERA Plaintiffs

are the owners of the copyrights at issue and have standing to bring their claims.[6]

> b.    Valid Copyrights

Defendant also argues that Plaintiffs do not own "valid" copyrights under *Feist* because

the standards either were never copyrightable or lost their copyright protection upon

incorporation by reference into federal regulations.  Defendant argues that the standards cannot

be copyrighted because: (1) they are methods or systems, which are not entitled to protection

under 17 U.S.C. § 102(b); (2) the standards are in the public domain as "the law"; and (3)  the

merger and *scènes à faire* doctrines preclude a finding of infringement.

> *(i).    Methods or Systems under Copyright Act § 102(b)*

Section 102(b) of the Copyright Act specifies eight types of works that are not protected

by copyright:  "In no case does copyright protection for an original work of authorship extend to

any idea, procedure, process, system, method of operation, concept, principle, or discovery,

regardless of the form in which it is described, explained, illustrated, or embodied in such work."

17 U.S.C. § 102(b).  Though these eight types of works are not further defined in the statute, the

legislative history accompanying the Copyright Act of 1976 offers some starting guidance:

"Section 102(b) in no way enlarges or contracts the scope of copyright protection under the

present law.  Its purpose is to restate, in the context of the new single Federal system of

copyright, that the basic dichotomy between expression and idea remains unchanged."  H.R.

---

[6] Defendant did not dispute that "ASTM has copyright registrations that cover each of the
standards at issue in this litigation" except as to one standard, ASTM D323-58(68).  (*See* Def.
Statement of Disputed Facts ¶ 70 (ASTM ECF No. 121-3)).  Therefore, unless Defendant
presents evidence disproving ownership, the court is likely to conclude, based on these copyright
registrations, that the ASTM Plaintiffs are the owners of the remaining standards at issue in this
litigation, with the exception of D323-58(68).  As to this standard, ASTM will need to present
additional evidence establishing ownership.

15

Rep. No. 94-1476, at 57, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5670 (Sept. 3, 1976); S. Rep.

No. 94-473 (Nov. 20, 1975); *see also* 1-2A Nimmer on Copyright § 2A.06(a)(1) (summarizing

legislative history).  The "basic dichotomy" refers to the well-established principle that ideas

cannot be copyrighted, but expression of those ideas can be.  *See* 1-2A Nimmer on Copyright

§ 2A.06(a)(2)(b) (a work "is to be denied protection only if that protection would be tantamount

to protecting an excluded category (e.g., idea or method of operation) without regard to the fact

that the excluded subject matter is expressed or embodied in expression").

      This section of the Copyright Act codifies the Supreme Court's 1879 decision in *Baker v.*

*Selden*, 101 U.S. 99 (1897), which denied copyright protection for systems, methods, processes,

and ideas.  *Baker* evaluated a copyright claim by the author of a manual describing "a peculiar

system of book-keeping" against a defendant who published a similar guide to book-keeping

using "a similar plan so far as results are concerned[,] but mak[ing] a different arrangement of

the columns, and us[ing] different headings."  *Id.* at 100.  The Court defined the question as

"whether the exclusive property in a system of book-keeping can be claimed, under the law or

copyright, by means of a book in which that system is explained."  *Id.* at 101.  In answering this

question, the Court offered as an example that "[t]he copyright of a work on mathematical

science cannot give to the author an exclusive right to the methods of operation which he

propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer

from using them whenever occasion requires."  *Id.* at 103.  This distinction between the actual

method or system described by a work, which cannot be copyrighted, and the written words

describing it, which can, is fundamental to understanding the Copyright Act's modern limitations

to copyright protection in § 102(b).

      Defendant primarily argues that the Plaintiffs' standards are completely devoid of

16

creative expression and are merely recitations of processes or procedures that a person or entity

would follow. Part of this argument appears to rest only on the fact that the names of the ASTM

Plaintiffs' standards, and their descriptions or advertisements, include the words "method" and

"procedure." *See, e.g.*, ASTM D86-07 Standard Test Method for Distillation of Petroleum

Products at Atmospheric Pressure, Ex. 6 to Decl. of Thomas O'Brien ("O'Brien Decl.") (ASTM

ECF No. 118-7 at 107)); ASTM D1217-93(98) Standard Test Method for Density and Relative

Density (Specific Gravity) of Liquids by Bingham Pycnometer, Ex. 9 to O'Brien Decl. (ASTM

ECF No. 118-7 at 136). Additionally, the AERA Plaintiffs' Rule 30(b)(6) representative noted

that the 1999 Standards "describe procedures, statistical procedures, research procedures . . . how

to design a test, how to collect evidence of validity, [and] how to calculate the reliability of

tests." (Def. Br. at 32 (citing AERA DSMF ¶ 77)). However, simply calling a work a

"procedure" or a "method" does not revoke its copyright protection under the Copyright Act.

This argument misunderstands or ignores the expression/idea dichotomy rooted in *Baker* and

codified in § 102(b).

Defendant also emphasizes that because the Plaintiffs' standards are highly technical,

complex, and precise, and because testimony shows that the ASTM Plaintiffs attempt to create

the "best" standards, then the standards are "dictated by utility" or just "discovered facts," and

lack any creative expressive content. However, the court rejects the argument that voluntary

consensus standards, such as those here, are analogous to a list of ingredients or basic

instructions in a recipe, or a series of yoga poses, as in the cases cited by Defendant. Not only is

there a vast gulf between the simplicity of an ingredient list and the complexity of the standards,

17

but, more importantly, the standards plainly contain expressive content.[7]  As one example,
ASTM D1217-93 lists under the heading "Significance and Use":  "Although [the standard] is no
longer employed extensively for the purpose, this test method is useful whenever accurate
densities of pure hydrocarbons or petroleum fractions with boiling points between 90 and 110°C
are required."  (ASTM ECF No. 118-7 at 136).

The standards in these cases contain expression that is certainly technical but that still
bears markings of creativity.  As the Supreme Court instructed in *Feist*, "the requisite level of
creativity is extremely low; even a slight amount will suffice.  The vast majority of works make
the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or
obvious' it might be."  499 U.S. at 345 (quoting 1 M. Nimmer & D. Nimmer, Copyright
§ 1.08(C)(1) (1990)).  Moreover, as Defendant conceded, there are many possible forms of
expression through which the technical material in the standards could be conveyed, and the
volunteer and association members who collectively author the standards "debate wording in the
standards."  (Def. Br. at 32 (ASTM ECF No. 121)).  Thus, however "humble" or "obvious"
Defendant finds the Plaintiffs' creative choices, the standards still bear at least the "extremely
low" amount of creativity required by the Supreme Court.  Moreover, the undisputed record
evidence also shows that other parties have written different standards on the same exact subject
matter as ASTM Plaintiffs' standards, undermining the argument that the standards are so
technical and precise there can be only one possible expression.  (ASTM PSMF ¶¶ 38, 133).

Importantly, *Baker* and § 102(b) bar Plaintiffs from attempting to copyright the system or

---

[7]  Defendant does not request that this court scour the over 1,000 pages of the nine of ASTM
Plaintiffs' standards provided to the court or the over 200 pages of the 1999 Standards, and the
court was not provided with copies of the remaining standards.  The court declines to engage in
such an exercise here.

18

method *itself*, not the written work explaining or describing that method. Here, the copyright

protections held by the Plaintiffs do not prevent any person or entity from using or applying the

procedures described in the standards, only from copying their written descriptions of those

standards. Defendant presented no evidence that the Plaintiffs have sought to block an entity or

person from *using* the procedures described in the standards. In fact, use of the procedures

described is the *entire purpose* of such voluntary consensus standards. The court therefore

concludes that § 102(b) of the Copyright Act does not preclude these standards from being

copyrighted.

### (ii). *Loss of Copyright Upon Entering the Public Domain*

#### A.    Federal Law Does Not Bar Copyrightability

At the heart of Defendant's defense is the argument that Plaintiffs' standards lost their

copyright protections the instant they were incorporated by reference into federal regulations.

There are weighty policy arguments on both sides of this issue, including the need to preserve a

vital and complicated public-private partnership between the government and SDOs, and the

need for an informed citizenry to have a full understanding of how to comply with the nation's

legal requirements. However, this suit is not about access to the law in a broad sense, but instead

about the validity of copyrights for these standards under current federal law. Copyright

protection is a creature of statute, and as such is the result of careful policy considerations by

Congress. In the view of this court, Congress has already passed on the question of revoking

copyright protection for standards that have been incorporated by reference into regulations, and

any further consideration of the issue must be left to Congress for amendment.

Section 105 of the Copyright Act states that "[c]opyright protection under this title is not

available for any work of the United States Government." 17 U.S.C. § 105. The Act defines a

19

"work of the United States Government" as "a work prepared by an officer or employee of the United States Government as part of that person's official duties." *Id.* § 101. These are the only government-related works that outright lack copyright under the law. For other types of works, such as those commissioned by the government or created under government contract by private parties, Congress chose to make case-by-case decisions and leave the determination of whether private copyright should exist to the federal agency that commissioned or contracted for the work. The House Report accompanying the Copyright Act states:

> The bill deliberately avoids making any sort of outright, unqualified prohibition against copyright in works prepared under Government contract or grant. There may well be cases where it would be in the public interest to deny copyright in the writings generated by Government research contracts and the like; it can be assumed that, where a Government agency commissions a work for its own use merely as an alternative to having one of its own employees prepare the work, the right to secure a private copyright would be withheld. However, there are almost certainly many other cases where the denial of copyright protection would be unfair or would hamper the production and publication of important works. Where, under the particular circumstances, Congress or the agency involved finds that the need to have a work freely available outweighs the need of the private author to secure copyright, the problem can be dealt with by specific legislation, agency regulations, or contractual restrictions.

H.R. Rep. No. 94-1476, at 5672 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5672.

Defendant argues that Sections 102(b) (no protection for systems or methods) and 105 (no protection for Government-authored works) should be read together to indicate that Congress intended that there be no copyright protections for incorporated standards because, like judicial opinions—which the Supreme Court nearly two hundred years ago determined could not be copyrighted—the standards, once incorporated, are "legal facts" which cannot be copyrighted. *See Wheaton v. Peters*, 33 U.S. 591, 668 (1834) (writing that the Court was "unanimously of the opinion that no reporter has or can have any copyright in the written opinions delivered by this Court"); *Banks v. Manchester*, 128 U.S. 244, 253 (1888) ("The whole work done by the judges

20

constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is

free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a

constitution or a statute."). While these cases form the bedrock for the long-standing principle

that works authored by government officials or employees cannot be copyrighted, the cases

involved works by actual government officials—i.e., judges—acting in their official capacity,

unlike here. That was the principle codified in § 105 of the Copyright Act and restated in the

U.S. Copyright Office's Compendium of Copyright Office Practices § 313.6(c)(2) (3d ed. 2014),

which states: "As a matter of longstanding public policy, the U.S. Copyright Office will not

register a government edict that has been issued by any state, local, or territorial government,

including legislative enactments, judicial decisions, administrative rulings, public ordinances, or

similar types of official legal materials."

Congress was well aware of the potential copyright issue posed by materials incorporated

by reference when it crafted Section 105 in 1976. Ten years earlier, Congress had extended to

federal agencies the authority to incorporate private works by reference into federal regulations.

*See* Pub. L. No. 90-23, § 552, 81 Stat. 54 (1967) (codified at 5 U.S.C. § 552) (providing that

"matter reasonably available to the class of persons affected thereby is deemed published in the

Federal Register when incorporated by reference therein with the approval of the Director of the

Federal Register"). However, in the Copyright Act of 1976, Congress made no mention of these

incorporated works in § 105 (no copyright for "any work of the United States Government") or

any other section. As the House Report quoted above indicates, Congress already carefully

weighed the competing policy goals of making incorporated works publicly available while also

preserving the incentives and protections granted by copyright, and it weighed in favor of

preserving the copyright system. *See* H.R. Rep. No. 94-1476, at 60 (1976) (stating that under

21

§ 105 "use by the Government of a private work would not affect its copyright protection in any way"); *see also M.B. Schnapper v. Foley*, 667 F.2d 102, 109 (D.C. Cir. 1981) (analyzing Copyright Act and holding that "we are reluctant to cabin the discretion of government agencies to arrange ownership and publication rights with private contractors absent some reasonable showing of a congressional desire to do so").

However, recognizing the importance of public access to works incorporated by reference into federal regulations, Congress still requires that such works be "reasonably available." 5 U.S.C. § 552(a)(1). Under current federal regulations issued by the Office of the Federal Register in 1982, a privately authored work may be incorporated by reference into an agency's regulation if it is "reasonably available," including availability in hard copy at the OFR and/or the incorporating agency. 1 C.F.R. § 51.7(a)(3). Thirteen years later, Congress passed the National Technology Transfer and Advancement Act of 1995 ("NTTAA") which directed all federal agencies to use privately developed technical voluntary consensus standards. *See* Pub. L. No. 104-113, 110 Stat. 775 (1996). Thus, Congress initially authorized agencies to incorporate works by reference, then excluded these incorporated works from § 105 of the Copyright Act, and, nearly twenty years later, specifically directed agencies to incorporate private works by reference. From 1966 through the present, Congress has remained silent on the question of whether privately authored standards and other works would lose copyright protection upon incorporation by reference. If Congress intended to revoke the copyrights of such standards when it passed the NTTAA, or any time before or since, it surely would have done so expressly. *See Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not . . . hide elephants in mouseholes."); *United States v. Fausto*, 484 U.S. 439, 453 (1988)

22

("[It] can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change."). Instead, Congress has chosen to maintain the scheme it created in 1966: that such standards must simply be made reasonably available. *See* 5 U.S.C. § 552(a)(1).

Moreover, Congress has similarly determined that online access to the nation's laws and regulations need not be provided for no cost. In establishing "a system of online access to the Congressional Record [and] the Federal Register," Congress authorized the Superintendent of Documents, under the direction of the Director of the Government Publishing Office, to "charge reasonable fees for use of the directory and the system of access." 44 U.S.C. §§ 4101–02. While citing this statute and noting that the Superintendent has chosen not to charge fees for online access, OFR in its 2013 proposed rulemaking stated that Congress had not made a policy determination that online access to the law must be provided free of charge. *See* Incorporation by Reference, 78 Fed. Reg. 60,784, 60,785 (Oct. 2, 2013). Similarly, OFR recently determined that "reasonably available" under § 552(a)(1) did not mean availability for no cost on the Internet. *See id.* (considering proposed amendments to OFR's regulations on incorporation by reference and specifically addressing and rejecting the argument that standards incorporated by reference should be posted online for free in order to be reasonably available).

Importantly, there is no evidence that the ASTM Plaintiffs' standards or the AERA Plaintiffs' standards are unavailable to the public. In fact, the undisputed record evidence shows that the standards are required to be available in physical form from OFR (*see* 1 C.F.R. § 51.3(b)(4)); are available for purchase from the AERA Plaintiffs in hard copy (AERA PSMF ¶ 34) and from the ASTM Plaintiffs in hard copy and PDFs (*see* ASTM PSMF ¶ 57, 99, 157); and are accessible in read-only format for free in ASTM Plaintiffs' online reading rooms (*see*

23

ASTM PSMF ¶ 64, 100, 161). While Defendant argues that the public requires *greater* access to the standards—in particular, free online access in formats other than read-only—that is a policy judgment best left to Congress. The arguments raised by the parties and by amici highlight important considerations regarding unrestricted access to the texts of laws, regulations, and incorporated materials, as well as the strong need to protect the economic incentives for the further creation of new standards through revenues from the sale of existing standards. This is the policy balancing that Congress is presumed to have already engaged in, and any further changes to the law in light of new technological developments and resulting changes in public expectations of access to information are best addressed by Congress, rather than this court.

### B.    Due Process Concerns Do Not Bar Copyrightability

Defendant further argues that even if the Copyright Act does not bar copyright protection for incorporated standards, individuals have a due process right to access the text of "the law," including the standards at issue here. Four Circuit Courts have considered similar arguments regarding copyrighted works incorporated by reference into state and federal regulations. *See Bldg. Officials & Code Admins. v. Code Tech., Inc.*, 628 F.2d 730 (1st Cir. 1980) ("*BOCA*") (declining to rule on the question); *CCC Info. Servs., Inc. v. McLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994) (upholding copyright in work incorporated by reference); *Cnty. of Suffolk, N.Y. v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001) (same); *Practice Mgmt. Info. Corp. v. Reports, Inc.*, 121 F.3d 516, 518 (9th Cir. 1997) (same); *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (en banc) (holding that incorporation by reference revoked the copyright owner's copyright protection). The court will briefly describe each of these Circuit decisions.

The question of whether a privately-authored, copyrighted work might lose its copyright

24

protection after being referenced in a law was first discussed by the First Circuit in *BOCA*. That case involved a nonprofit, BOCA, which authored and copyrighted a model code called the "Basic Building Code." *See* 628 F.3d at 731-32. Massachusetts adopted a building code based in substantial part on the BOCA Basic Building Code, called the Commonwealth of Massachusetts State Building Code. *Id.* at 732. BOCA sold a printed version of the Massachusetts State Building Code for $22 a copy, and the state referred any persons interested in obtaining a copy of the code for their own use to BOCA. *Id.* The defendant, Code Tech., Inc., published its own copy of the Massachusetts State Building Code and sold it for $35 per volume. *Id.* In the subsequent copyright infringement suit, the district court granted BOCA's request for a preliminary injunction, and the First Circuit reversed, though it reserved judgment on the merits of whether the building code was validly copyrighted. Instead, it noted that "[t]he citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Id.* at 734.

The Second Circuit considered similar issues in two cases. First, in *CCC*, the court considered whether copyright protection for a compilation called the Red Book, which listed used car valuations, was revoked after it was referenced by states as one of several references for car valuation. *See* 44 F.3d at 74. The court rejected the argument that referenced works enter the public domain, stating: "We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright. While there are indeed policy considerations that support [defendant's public domain] argument, they are opposed by countervailing considerations." *Id.* The court then analogized to a state education system assigning copyrighted books as a mandatory part of a school curriculum and noted that under the

25

public domain logic, these books might lose copyright protection. *Id.*

Second, in *County of Suffolk*, the Second Circuit considered the copyrightability of a county's tax maps. The court looked to *Banks*, in which the Supreme Court held that judicial opinions were not copyrightable, and determined that *Banks* established two premises: (1) that judges' opinions cannot be copyrighted because judges receive their salaries from the public treasury and do not have the economic incentives that copyrights are designed to protect; and (2) there are due process considerations because the "whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." 261 F.3d at 193–94 (citing *Banks v. Manchester*, 128 U.S. 244, 253 (1888)). Building on these premises, the Second Circuit articulated two factors that should guide courts' analysis in these situations: first, "whether the entity or individual who created the work needs an economic incentive to create or has a proprietary interest in creating the work"; and second, "whether the public needs notice of this particular work to have notice of the law." *Id.* at 194 (citing *Practice Management*, 121 F.3d at 518–19; *BOCA*, 628 F.2d at 734–35). With regard to this second factor, the court primarily considered the severity of criminal or civil sanctions associated with failure to adhere to the maps at issue. Finding no serious penalties, it focused on the fact that citizens had "fair warning" of the tax maps from their reference in the tax statute, and there was "no allegation that any individual required to pay the applicable property tax ha[d] any difficulty in obtaining access to either the law or the relevant tax map." *Id.* at 195. Therefore, the maps were entitled to copyright protection.

Like the Second Circuit, the Ninth Circuit in *Practice Management* also decided to preserve the copyright protections in the American Medical Association's ("AMA") publication of medical codes and descriptions which had been incorporated by reference by the U.S. Health

26

Care Financing Administration ("HCFA").  Under the HCFA's regulation, parties seeking health insurance reimbursement for Medicare were required to use the codes created and copyrighted by the AMA.  *See* 121 F.3d at 518.  The Ninth Circuit similarly looked to *Banks* and focused on its premise that there is a due process interest in free access to the law.  Like the Second Circuit, the court considered this due process interest and ultimately rejected revoking the AMA's copyright because "[t]here [was] no evidence that anyone wishing to use the [copyrighted codes] ha[d] any difficulty obtaining access to it."  *Id.* at 519.

Finally, counter to the opinions of other circuits, the Fifth Circuit sitting *en banc* in *Veeck* focused more heavily on the first *Banks* premise regarding economic incentives and held that copyright protection is revoked when a model code is adopted as law by a municipality, stating that "as law, the model codes enter the public domain and are not subject to the copyright holder's exclusive prerogatives."  293 F.3d at 793.  However, the court carefully distinguished its decision from the facts in the aforementioned cases.  It wrote:

> [T]he limits of this holding must be explained.  Several national standards-writing organizations joined [defendant] as amici out of fear that their copyrights may be vitiated simply by the common practice of governmental entities' incorporating their standards in laws and regulations.  This case does not involve references to extrinsic standards.  Instead, it concerns the wholesale adoption of a model code promoted by its author, [defendant], precisely for use as legislation.  Caselaw that derives from official incorporation of extrinsic standards is distinguishable in reasoning and result. . . .  If a statute refers to the Red Book or to specific school books, the law requires citizens to consult or use a copyrighted work in the process of fulfilling their obligations.  The copyrighted works do not 'become law' merely because a statute refers to them. . . .  Equally important, the referenced works or standards in *CCC* and *Practice Management* were created by private groups for reasons other than incorporation into law.  To the extent incentives are relevant to the existence of copyright protection, the authors in these cases deserve incentives. . . .  In the case of a model code, on the other hand, the text of the model serves no other purpose than to become law.

*Id.* at 803–05.  The cases before the court, involving some of the same amici referenced in *Veeck*, do not involve model codes adopted verbatim in their entirety into legislation.  Instead, the

27

standards incorporated by reference provide guidelines and procedures that individuals or entities must use or reference in the fulfillment of their legal obligations under federal regulations.

Applying the first premise of *Banks* to the facts here, Defendant argues that Plaintiffs do not require economic incentives to create their standards because they actively lobby and advocate for their standards to be incorporated by reference into regulations, including investing funds on lobbying to that effect. Therefore, Defendant argues, the court should find that Plaintiffs create standards for no purpose other than adoption into law, as the *Veeck* court determined regarding the model code in that case. Here however, the facts indicate that Plaintiffs create standards for a wide range of industries, that the majority of their standards are not incorporated into regulations, and that even those that have been incorporated by reference have undergone updates and revisions to reflect modern use, despite the regulations incorporating past versions. Plaintiffs and supporting amici highlight that without copyright protection for all of their standards, they will face significant difficulty raising the necessary revenue to continue producing high-quality voluntary consensus standards. In its Notice of Proposed Rulemaking, OFR relied on this same argument to ultimately reject a proposal to require free online access to standards in its "reasonably available" determination. 78 Fed. Reg. at 60,785 ("If we required that all materials IBR'd into the CFR be available for free, that requirement would compromise the ability of regulators to rely on voluntary consensus standards, possibly requiring them to create their own standards, which is contrary to the NTTAA and the OMB Circular A-119.").

As for the second premise of *Banks*, this court finds that, as in the cases before the Second and Ninth Circuits, there is no evidence here that anyone has been denied access to the standards by the ASTM Plaintiffs or AERA Plaintiffs. Instead, Defendant simply argues that the

28

public should be granted more expansive access.

Therefore, considering the *Banks* holdings and given the existing statutory, regulatory, and judicial framework, this court finds that Plaintiffs' standards have not entered the public domain upon their incorporation by reference into federal regulations and do not lose their copyright protection. This conclusion does not dismiss or diminish the valid public policy concern that citizens benefit from greater access to statutes, regulations, and all materials they must reference in fulfilling their legal obligations. The ability to know, understand, and communicate the law as a broad concept is of paramount importance to the continued success of our democracy. However, changes to the statutory or regulatory framework that reconsider the balancing of interests underlying modern copyright law and incorporation by reference must be made by Congress, not this court.

### *(iii). Merger Doctrine*

Defendant asks the court to apply the "merger doctrine" to find that the standards cannot be copyrighted because the expressions in the standards have merged with the law to become facts. Under modern copyright law, there is a well-known dichotomy between "expression," which can generally be copyrighted, and "ideas," which cannot. 4-13 Nimmer on Copyright § 13.03. The merger doctrine has developed to consider those specific situations in which "the idea 'merges' with the expression, such that a given idea is inseparably tied to a particular expression." *Id.* at § 13.03(3). This can occur when there "are so few ways of expressing an idea [that] not even the expression is protected by copyright." *Id.* (quoting *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1143 (11th Cir. 2007)).

The parties disagree as to the proper merger doctrine analysis. Defendant argues that upon their incorporation by reference, the standards become "merged" with the "fact" that is the

29

law. Plaintiffs argue that to determine if an idea and expression have merged, the court should focus on whether there were any other ways of articulating a particular idea when the work was first published, not when it was later incorporated by reference. In essence, the parties disagree as to whether the merger doctrine is a question of copyrightability—meaning the Plaintiffs' standards might lose copyright protection upon incorporation by reference—or an affirmative defense to copyright infringement—i.e., the allegedly infringing work did not violate copyright because there was no other way to express the content of the work. Plaintiffs argue that the merger doctrine addresses only the question of copyrightability, and so the court's analysis should focus on whether, at the time the standards were authored, there were no other ways to articulate and arrange such standards. Defendant contends that the standards could not be expressed any other way after incorporation into regulations, and thus its display of the standards was not infringement.

The court declines to resolve this merger doctrine issue, since under either approach, the standards maintain copyright protection. At the time they were authored, there were certainly myriad ways to write and organize the text of the standards, and, for the reasons discussed above, the standards did not lose their copyright protections upon incorporation by reference into federal regulations. Therefore, the merger doctrine neither precludes a finding of copyrightability nor serves as a defense for Defendant.

### *(iv). Scènes à Faire Doctrine*

Finally, Defendant points to the *scènes à faire* doctrine, which similarly may be approached as a question of copyrightability or an affirmative defense. The doctrine typically applies to "incidents, characters, or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." Nimmer § 13.03(4) (quoting *Atari, Inc. v.*

30

*North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982), *cert. denied*, 459

U.S. 880 (1982)).  Nimmer offers examples such as the use of a bar room scene in a film about a

broken-hearted lover because, as the name of the doctrine suggests, these are "scenes which must

be done."  *Id.*  Defendant argues here that Plaintiffs' standards are entirely "uncopyrightable"

because they are "shaped by external factors," such as the desire to satisfy regulations and laws

and to write what Plaintiffs believe to be the most accurate and clear standards.  (Tr. of Motions

Hearing at 62:15–19 (ASTM ECF No. 173); Def. Br. at 34).  However, this doctrine is a poor fit

for Defendant's arguments.  In the court's view, there is a great deal of difference between every

detail of the phrasing, explanation, and organization across thousands of pages of standards,

which Defendant argues is *entirely* dictated by Plaintiffs' broad desires for accuracy and clarity,

and the inclusion of a generic bar room scene in a romantic drama where the audience expects it.

Defendant offers no cases to support its argument that this doctrine bars copyrightability of the

standards at issue here, and this court knows of none.  The court concludes that the *scènes à faire*

doctrine does not act as a bar to the copyrightability of Plaintiffs' standards and does not serve as

a defense for Defendant's display of the standards

      In sum, the court concludes that Plaintiffs own valid copyrights over the standards at

issue, and that the copyrights were not stripped upon the incorporation by reference into federal

regulations.

### 2.    *Feist* Prong 2: Copying an Original Work

#### a.    Overview

      Having established that both the ASTM Plaintiffs and AERA Plaintiffs own valid

copyrights in the standards at issue, the second question for the court under *Feist* is whether

Public Resource, by scanning and posting online the standards at issue "cop[ied] anything that

31

was 'original' to" the Plaintiffs. *Feist*, 499 U.S. at 361. Copying means exercising any of the exclusive rights that 17 U.S.C. § 106 vests in the owners of a copyright. *See Call of the Wild Movie, LLC v. Does*, 770 F. Supp. 2d 332, 351 (D.D.C. 2011). These rights include the rights of reproduction, distribution, display, and creation of derivative works. *See* 17 U.S.C. § 106(1)–(3), (5). There is no factual dispute that Public Resource reproduced and posted online for display or distribution the standards at issue in this case. Having rejected the application of the merger doctrine or *scènes à faire* doctrine as affirmative defenses, Defendant's only argument on this second prong is therefore that its copying and posting of the standards was "fair use."

<div align="center">

b.    Affirmative Defense of Fair Use

</div>

Under the Copyright Act, fair use of a copyrighted work "is not an infringement of copyright." 17 U.S.C. § 107. Fair use is a defense to a claim of copyright infringement in order to "fulfill copyright's very purpose, 'to promote the Progress of Science and useful Arts.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const. art. I, § 8, cl. 8). The Copyright Act provides that:

> In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include—
>> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>> (2) the nature of the copyrighted work;
>> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The statute further lists examples of uses that are "fair use," including "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." *Id.* The fair use doctrine calls for a "case-by-case analysis," and the four statutory factors are meant to provide "general guidance," weighed together "in light of the

<div align="center">

32

</div>

purposes of copyright." *Campbell*, 510 U.S. at 578–79.

### (i).    Purpose and Character of Defendant's Use of the Standards

With regard to the first factor, the statute itself offers guidance on the types of purposes that might be considered fair use: criticism, commentary, news reporting, teaching, or research. *Id.* § 107. Moreover, the Supreme Court has held that courts should focus on whether the new work "supersede[s] the objects of the creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; [the question], in other words, [is] whether and to what extent the new work is transformative." *Campbell*, 510 U.S. at 578–79 (internal quotations omitted). Given the constitutional goal of copyright—to promote the development of science and the arts—"the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.* at 579.

It is undisputed that Public Resource scanned the ASTM Plaintiffs' standards at issue from their physical hardcopies and converted them to searchable PDFs using OCR processing (ASTM Pls. SUMF ¶ 182) and reproduced some of the standards by re-typing them into HTML format. (ASTM PSMF ¶ 182; ASTM DSMF ¶ 83). Public Resource scanned the AERA Plaintiffs' 1999 Standards from the physical hard copy and converted them to a PDF file, which it then uploaded to its website for display and distribution. (AERA PSMF ¶¶ 69, 71–73; AERA DSMF ¶ 28). Defendant argues this is transformative in three ways: by providing free access to "the law"; by enabling others to use software to analyze the standards; and by enabling those with visual impairments to use text-to-speech software. The evidence does not support any of these arguments.

Defendant first argues that it has transformed Plaintiffs' standards by making identical

33

copies of them and distributing them online for no cost. In Defendant's view, this is transformative because it provides individuals with greater access to "the law." While Defendant argues that its conduct is analogous to those who make copies of copyrighted works in order to comply with legal requirements, Defendant was not actually acting to comply with a particular law—unlike, for example, an individual who makes a photocopy of the standards located at OFR for use on her building project. Instead, Defendant has placed identical copies of Plaintiffs' standards into the online marketplace with no intention to use them itself, but instead to simply offer them for free in competition with Plaintiffs' standards. While Defendant did not earn revenue directly from the display of the standards, its activity still bears "commercial" elements given that it actively engaged in distributing identical standards online in the same consumer market. While this commerciality is not by itself dispositive, it does weigh firmly against fair use. *See Campbell*, 510 U.S. at 594.

Defendant points to *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) in support of its proposition that when a copyrighted document is of great public importance then posting it online may be transformative. However, *Swatch Group* involved the recording of a private conference call about the company's earnings report involving executives and 132 analysts that Bloomberg then distributed to subscribers of its Bloomberg Professional service. *Id.* at 78–79. Given that Swatch Group instructed call participants not to record or broadcast the call, any direct knowledge of what the executives said would be limited to those analysts who participated. *Id.* The facts of *Swatch Group* do not align with those here, where the evidence demonstrates that Plaintiffs' standards are available to anyone for viewing online in ASTM Plaintiffs' reading rooms, at a public library, at the OFR or incorporating agency, or for purchase on Plaintiffs' websites. This court is unwilling to apply

34

69

any principles from *Swatch Group* or similar cases to this case, in which the standards are widely

available.

Next, Public Resource argues that distributing the duplicate copies online is

transformative because, with regard to the ASTM Plaintiffs' standards, Public Resource first

altered their formatting through application of OCR or conversion to HTML, which enables

software analysis or the use of text-to-speech software, and for AERA Plaintiffs' standards, it

scanned the hard copy and distributed a PDF version. The court has little difficulty concluding

that these actions are not transformative. *See* 4-13 Nimmer on Copyright § 13.05(1)(b); *Nihon*

*Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 72 (2d Cir. 1999) (holding that a

translation is not a transformative, expressive work); *Soc'y of the Transfiguration Monastery,*

*Inc. v. Gregory*, 685 F. Supp. 2d 217, 227 (D. Mass. 2010), *affirmed*, 689 F.3d 29, 59-65 (1st

Cir. 2012) ("A simple repackaging of a work in a new format, whether on the Internet or on a

CD-ROM or on a flash drive, is not transformative when the result is simply a mirror image

reflected on a new mirror."); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 207, 217 (2d

Cir. 2015) (reasoning Google's scanning and posting of snippets of copyrighted books online

was fair use because it made "available information *about* Plaintiffs' books without providing

the public with a substantial substitute for matter protected by the Plaintiffs' copyright interests

in the original works or derivatives of them" and added "important value to the basic

transformative search function, which tells only whether and how often the searched term

appears in the book") (emphasis added); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 90 (2d

Cir. 2014) (text searching modification was transformative but where full work was not

displayed).

Here, Defendant does not actually perform any analysis on the standards, nor does it offer

35

the service of providing them in an accessible way to those visual impairments. Instead, Defendant has identified a series of events that must occur, involving intervening third parties and the use of one or more additional software programs, in order for there to be a potentially "transformative" use for individuals who are blind or have visual impairments. Defendant in both cases proffered the expert report of James Fruchterman, who opined on accessibility of written materials for those who are blind. In Fruchterman's AERA report, he wrote that to make a hard copy accessible for those with visual impairments, he would scan the pages, process them with OCR to convert the read-only images to searchable text, create a Microsoft Word file, and then have it proofread because OCR can create numerous errors. (Expert Rep. of James R. Fruchterman at 8 (AERA ECF No. 70-50)). Once such a version is then uploaded online, an individual who is blind or visually impaired would then need to use additional screen reader software, which "is a program that runs on a personal computer or a smartphone that reads the information on the screen aloud (using a computer-synthesized voice) to a blind person." (*Id.* at 3–4). While "most blind people themselves do not have the ability to convert books[,] [s]ome blind people have their own home scanners, and if they purchased a used copy online, would be able to scan the 1999 Standards page by page on a home scanner, which would take at least two hours of labor, and then perform optical character recognition on the title." (*Id.* at 8). In his ASTM report, Fruchterman wrote that he was able to use a screen reader program to read the text of the ASTM Plaintiffs' standards aloud on Defendant's website, but not in ASTM Plaintiffs' reading rooms. (Ex. 96 to Becker Decl., Expert Rep. of James R. Fruchterman at 5–7 (ECF No. 122-6)). Fruchterman noted that some of the PDFs on Defendant's website were read-only images, such as those on ASTM Plaintiffs' reading rooms, which had to be copied and pasted into a Microsoft Word document in order for a screen reader program to operate. (*Id.* at 16–17).

36

He also noted that individuals who are blind may "independently perform optical character recognition on image-based PDFs themselves and access the text that way, and many advanced computer users that are blind would be aware that this is possible." (*Id.* at 17). He did not opine on whether OCR could be performed on the PDFs of standards that ASTM Plaintiffs sell or whether he attempted to investigate that as part of his research.

While it appears Defendant may enable blind individuals, like all other individuals, to access the standards at no cost, they still may have to take additional steps like OCR processing or converting to a different file type, as well as using additional screen reader programs in order to access the standards. There is no evidence that this would not be possible with Plaintiffs' PDFs or by scanning Plaintiffs' hard copy standards. In Defendant's view, taking the first step or two towards making the standards entirely accessible to those with visual impairments is enough to have transformed the standards. This attempts to stretch logic, and certainly the doctrine of fair use, too far. Defendant has not offered a sufficiently new purpose to render the use transformative, and this weighs against a finding of fair use.

### (ii). Nature of the Copyrighted Standards

The Supreme Court in *Campbell* instructs that courts should analyze the nature of the copyrighted work with "recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." 510 U.S. at 586. Many cases create a spectrum between creative, fictional expression and factual expression, with the former being "more" protected. *See* 4-13 Nimmer § 13.05(A)(2). Defendant argues that Plaintiffs' standards are "factual," both because they are highly technical and because they are "the law." However, the Constitution explicitly states that copyright exists to "advance the progress of science and the useful arts." U.S. Const.

37

art. I, § 8, cl. 8. That Plaintiffs' works involve technical scientific concepts and guidelines does not push it away from the core of intended copyright protection, but actually brings it closer. Plaintiffs' standards are vital to the advancement of scientific progress in the U.S. and exactly the type of expressive work that warrants full protection under the Constitution and the Copyright Act.

### (iii).  Amount and Substantiality of the Portions Defendant Used

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), weighs overwhelmingly in Plaintiffs' favor and against a finding of fair use.  It is undisputed that Defendant copied and distributed identical versions of the Plaintiffs' standards in their entirety.  To support its actions as fair use under this third factor, Public Resource argues that it was necessary to do so because the full text of the standards were incorporated into "the law."  However true it may be that individuals wishing to read the text of standards incorporated by reference would want to read them in their entirety, this argument is unpersuasive in the fair use analysis.  Any market competitor wishing to copy a rival's work and distribute it itself could argue that it "needs" to copy the entire work, otherwise its distribution would be less successful.  Unsurprisingly, Defendant cannot point to a single case that supports its view, and the court finds that this factor also weighs strongly against a finding of fair use.

### (iv).  Effect of Defendant's Use Upon Potential Market or Value

The fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), "poses the issue of whether unrestricted and widespread conduct of the sort engaged in by the defendant would . . . result in a substantially adverse impact on the potential market for, or value of, the plaintiff's present work," 4-13 Nimmer on

38

Copyright § 13.05(A)(4); *Campbell*, 510 U.S. at 589 (quoting Nimmer).  Moreover, the analysis

"must take into account not only of harm to the original but also of harm to the market for

derivative works."  *Campbell*, 510 U.S. at 589 (quoting *Harper & Row Publishers, Inc. v. Nation

Enters.*, 471 U.S. 539, 568 (1985)).  When Defendant engages in "mere duplication for

commercial purposes," as here, a harm to the potential market for the copyrighted works may be

inferred.  *See id.* at 590–91.  Such an inference is intuitive based on the facts here where

consumers in the online marketplace are currently presented with the option to purchase a PDF

or hard copy version of Plaintiffs' standards directly from them, or may download a PDF of an

identical standard for no cost.  The only logical conclusion is that this choice negatively impacts

the potential market for Plaintiffs' standards.

     In *Campbell,* the Supreme Court noted that "[s]ince fair use is an affirmative defense, its

proponent would have difficulty carrying the burden of demonstrating fair use without favorable

evidence about relevant markets."  510 U.S. at 590.  Here, Defendant did not offer expert

evidence on the economic impact on the markets, instead pointing to testimony by Plaintiffs'

executives that they did not track or know of negative impacts thus far on their revenue from

Defendant's conduct.  This is not enough to overcome the logical presumption that such activity,

particularly if it became more widespread by others in the marketplace, would impact Plaintiffs'

revenues.  It is not Plaintiffs' burden to establish that they *have* been harmed in the market, but

Defendant's burden to affirmatively establish that such conduct could not even "potentially"

harm the Plaintiffs' market.  Defendant has not done so.

### *(v).   Overall Assessment*

     Whatever merit there may be in Defendant's goal of furthering access to documents

incorporated into regulations, there is nothing in the Copyright Act or in court precedent to

suggest that distribution of identical copies of copyrighted works for the direct purpose of undermining Plaintiffs' ability to raise revenue can ever be a fair use.  The court thus concludes that the fair use doctrine does not serve as a valid defense for Defendant's conduct.

Therefore, the court finds that the ASTM Plaintiffs' motion for summary judgment as to their copyright infringement claim is GRANTED, and the AERA Plaintiffs' motion for summary judgment as to their copyright infringement claim is also GRANTED.  Defendant's cross-motions on copyright infringement are both DENIED.

### B.  Contributory Copyright Infringement

AERA Plaintiffs additionally move for summary judgment on their contributory copyright infringement claim.[8]  Establishing proof of contributory infringement requires a party to demonstrate that the actor was "intentionally inducing or encouraging direct infringement." *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Plaintiffs[9] must show (1) direct infringement by third parties; (2) that Defendant knew that third parties were directly infringing; and (3) that Defendant substantially participated in that direct infringement.  *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126 (D.D.C. 2011).  "Merely supplying the means to accomplish an infringing activity cannot give rise to the imposition of liability for contributory copyright infringement."  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (internal quotation omitted).

---

[8]  The ASTM Plaintiffs initially brought a separate claim for contributory copyright infringement, but did not include that claim in their motion for summary judgment.  Counsel for ASTM Plaintiffs stated at oral argument that they believed the remedy for their infringement claim covered any potential remedy for their contributory copyright claim.  (Tr. of Motions Hearing at 122:1–7).

[9]  Because ASTM Plaintiffs did not move for summary judgment on their contributory copyright claim, for this section the court will use "Plaintiffs" to refer to AERA Plaintiffs.

40

To establish direct infringement by third parties, Plaintiffs must demonstrate "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *Id.* (quoting *Home & Nature, Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004)). As discussed above in section III(A), these first three elements have been satisfied. On the fourth element, Plaintiffs must show that a third party infringed its copyrights by violating their exclusive rights under 17 U.S.C. § 106, including reproduction, preparation of derivative works, distribution, or public display. *See Home & Nature*, 322 F. Supp. 2d at 267. However, Plaintiffs only present evidence that the 1999 Standards were "accessed at least 4,164 times" on Public Resource's website and that they were "accessed on the Internet Archive . . . website 1,290 times." (AERA PSMF ¶¶ 85–86). Without more, there is no basis for the court to determine that accessing a website is equivalent to copying or violating any of the exclusive rights under § 106. Plaintiffs also assert that "some" individuals "obtained" the standards, but their only evidence of this is a redacted e-mail in which an individual states "[O]ne of my students showed up for class this semester and told me that he/she didn't purchase a copy of the Standards (I require them as a text for one of my courses) because 'they are available for free on line' and they showed me the following site." (Exl. LLL to Decl. of Lauress Wise (AERA ECF No. 60-75)). Even if such a statement were ultimately determined to be admissible for the truth of the matter that the student did not purchase the Standards, it still does not establish that the student downloaded or otherwise copied the 1999 Standards from Defendant's website.[10]

---

[10] The court recognizes that acquiring evidence of downloads may be difficult. Carl Malamud, Public Resource's CEO, testified at deposition that "I don't know about downloads. It's technically impossible to determine that." (Ex. A to Hudis Decl. at 347:6–8 (AERA ECF No.

41

In their Reply Brief, Plaintiffs also point to the possibility that simply browsing a website causes a copy of the material on the website to be automatically copied to the computer's random access memory or RAM. *See CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 507 (D. Md. 2010) (analyzing copyright claim involving cache copies of websites in computer's RAM); *Ticketmaster, LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1104–05 (C.D. Cal. 2007) (same). While this may be correct, the fact remains that Plaintiffs have put forth no actual evidence that even one of the 4,164 accesses resulted in such a copying to a computer's RAM, and without such evidence, Plaintiffs cannot meet their burden on their contributory copyright claim at the summary judgment stage.

The second two factors require Plaintiffs to establish that Defendant knew that third parties were engaged in direct infringement and that it substantially participated in such infringement. Plaintiffs may demonstrate knowledge by showing that Defendant was notified of the third party direct infringement or that it "willfully blind[ed] itself to such infringing uses." *Newborn*, 391 F. Supp. 2d at 186. On this factor, Plaintiffs again fall short, relying on the fact that they asked Defendant to remove the 1999 Standards from its website and Defendant refused to do so, as well as evidence that Defendant did not track or prevent downloads of the 1999 Standards from its website. Without more, this is insufficient to establish that Defendant knew that third parties were infringing the Plaintiffs' copyrights.

Similarly, Plaintiffs have not presented sufficient evidence on the substantial participation factor. While it is undisputed that Defendant posted the 1999 Standards on its website to enable greater access for those wishing to read them, because Plaintiffs have not

---

60-4)). However, this does not relieve Plaintiffs of the burden of establishing some evidence demonstrating direct infringement by third parties.

42

established any actual third party direct infringement, there is insufficient evidence that

Defendant substantially participated in that infringement.

Therefore, the court DENIES Plaintiffs' motion for summary judgment as to its

contributory copyright claim, and also DENIES Defendant's motion for summary judgment on

this claim, as there exists questions of fact as to any third party infringement, Defendant's

knowledge, and Defendant's participation.

### C.   <u>Trademark Infringement Claims</u>

ASTM Plaintiffs additionally moved for summary judgment on their trademark

infringement, unfair competition and false designation of origin, and common law trademark

infringement claims, and Defendant cross-moved for summary judgment on these claims as

well.[11]  Trademark law is governed by the Lanham Act, 15 U.S.C. § 1051 *et seq.,* which provides

that:

> (1) Any person who shall, without the consent of the registrant . . . (a) use in
> commerce any reproduction, counterfeit, copy, or colorable imitation of a
> registered mark in connection with the sale, offering for sale, distribution, or
> advertising of any goods or services on or in connection with which such use is
> likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a
> civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).  In order to prevail on a trademark infringement claim under the Lanham

Act, Plaintiffs[12] "must show (1) that [they] own[] a valid trademark, (2) that [their] trademark is

distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of

confusion between the plaintiff[s'] mark and the alleged infringer's mark." *Globalaw Ltd. v.*

*Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006); *AARP v. Sycle*, 991 F.

---

[11]  The AERA Plaintiffs did not bring a trademark claim, and so this section applies only to
ASTM Plaintiffs.

[12]  As in the preceding section, because only ASTM Plaintiffs moved for summary judgment on
this claim, the court will refer to them here as Plaintiffs.

Supp. 2d 224, 229 (D.D.C. 2013) (same). Common law claims are analyzed under the same standard. *See AARP*, 991 F. Supp. 2d at 229 (citing *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F.Supp.2d 25, 29 (D.D.C. 2008)). In order for conduct to be considered infringing, there must be a "use in commerce." 15 U.S.C. §§ 1114(1), 1125(a)(1).

Defendant cites *Dastar Corp. v. Twentieth Century Fox Film Corp.*, to discourage the court from considering Plaintiffs' trademark claims on the principle that courts should not "misuse or over-exten[d] [] trademark and related protections into areas traditionally occupied by patent or copyright." 539 U.S. 23, 34 (2003). *Dastar* held that a plaintiff could not bring a false designation of origin trademark claim against a defendant who was distributing content that had become part of the public domain because the Lanham Act only offers protection "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. Unlike in *Dastar*, Plaintiffs here have an independent basis for claiming that Defendant infringed their trademarks, separate from their copyright infringement claims: Defendant distributed standards online bearing Plaintiffs' registered trademarks and logos, and Plaintiffs argue that this unauthorized use of their marks will confuse consumers and falsely signal that Plaintiffs are the origin of the standards distributed on Defendant's website rather than Defendant. While the remedy sought for Plaintiffs' copyright claim—an injunction barring Defendant from displaying Plaintiffs' standards online—may be broad enough to subsume a remedy for their trademark claims, the claims are based on independent arguments, and are therefore the type that *Dastar* found to be appropriate for consideration under the Lanham Act.

The court must therefore consider whether Plaintiffs own a valid, protectable trademark, whether Defendant engaged in an unauthorized use in commerce, whether there is a likelihood of

44

consumer confusion, and whether Defendant's fair use defense permits its use of the trademarks.

### 1. Valid, Protectable Trademark

Under the Lanham Act, any registration of a trademark "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1057(b). The record indicates that Plaintiffs own valid trademarks of the trademarks asserted in this case, and they have federal trademark registrations for each of the asserted marks.[13] Thus, Plaintiffs have established a prima facie showing of ownership. Defendant offers no evidence to demonstrate that Plaintiffs do not own the trademarks, and therefore the court concludes that Plaintiffs are the owners of these marks.

The trademarks must also be "valid." To establish validity, Plaintiffs must prove that the designation is inherently distinctive or that it has become distinctive by acquiring secondary meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *Globalaw*, 452 F. Supp. 2d at 26. However, Plaintiffs' trademark registrations create a rebuttable presumption of "inherent distinctiveness or secondary meaning." Restatement (Third) of Unfair Competition § 13 cmt. a (1995). Additionally, the Lanham Act provides that if the trademark has been "in continuous use for five years subsequent to registration" then the marks become "incontestable," 15 U.S.C. § 1065, meaning the registration "shall be conclusive evidence of the validity of the registered mark," including as to whether it is distinctive or has a secondary meaning, 15 U.S.C. § 1115(b); *see also* Restatement (Third) of Unfair Competition § 13 cmt. a (1995). Plaintiffs

---

[13] (PSMF ¶¶ 77 (trademark registration for "ASTM"), 78 (trademark registration for "ASTM International" and logo), 79 (trademark registration for ASTM logo), 123 (trademark registration for "National Fire Protection Association" and "NFPA"), 124 (trademark registration for NFPA logo), 126 (trademark registration for NEC logo), 149 (trademark registration for ASHRAE logo), 151 (trademark registration for additional ASHRAE logo)).

45

provided evidence that some of their trademarks have become incontestable and that they all are

distinctive.  (*See* PSMF ¶¶ 77, 78, 124, 125, 126, 150).  Defendant offered no evidence to dispute

the validity of the trademarks.  Thus, Plaintiffs have sufficiently established their ownership of

valid trademarks.

### 2.    Defendant's Unauthorized Use in Commerce

Plaintiffs must also demonstrate that Defendant used their trademarks "in commerce."  15

U.S.C. §§ 1114(1), 1125(a)(1).  Under the Lanham Act, "'[c]ommerce' means all commerce

which may be lawfully regulated by Congress."  15 U.S.C. § 1127.  Therefore, to satisfy this

requirement, Plaintiffs need not demonstrate actual use or intended use in interstate commerce.

*See United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir.

1997) (the commerce requirement "reflects Congress's intent to legislate to the limits of its

authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses

of a trademark").  Distribution on the Internet can satisfy the "use in commerce" requirement.

*See Intermatic, Inc. v. Toeppen*, 947 F. Supp. 1227, 1239 (N.D. Ill. 1996).  Thus, Defendant's

online posting of the standards bearing Plaintiffs' trademarks satisfies this requirement.

This use in commerce must further be "without the consent of the registrant."  15 U.S.C.

§ 1114(1).  It is undisputed that Plaintiffs did not authorize Defendant's use of Plaintiffs'

trademarks in commerce.  Defendant instead argues that its use was permitted under the "first

sale doctrine," which holds that a trademark owner cannot control what happens to its products

after the first sale.  However, the court finds this doctrine a poor fit here, where it is undisputed

that Defendant did not redistribute the physical copies of Plaintiffs' standards that it purchased

but rather created reproductions through scanning and re-typing, with resultant errors and

differences.  *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (noting

46

that the first sale doctrine is appropriate only when the actor "does no more than stock, display, and resell a producer's product under the producer's trademark"); *Capitol Records, LLC v. DeRigi Inc.*, 934 F. Supp. 2d 640, 655 (S.D.N.Y. 2013) (in the copyright context, the first sale doctrine was "impossible" to apply because that defense is limited to when an actor distributes the original material item, not when she distributes reproductions).

Moreover, Defendant's quality control standards in reproducing Plaintiffs' standards were outside of Plaintiffs' control and below that sufficient to deem the standards it distributed "genuine" products, meaning the first sale doctrine cannot protect Defendant's conduct. *See Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991); *El Greco Leather Prods. Co. v. Shoe World*, 806 F.2d 392, 395 (2d Cir. 1986); *see also* 4 McCarthy on Trademarks and Unfair Competition § 25.42 (4th ed.). Although Defendant argues that there are no material differences between Plaintiffs' standards and Defendant's reproductions, Plaintiffs need not show that Defendant's reproduced standards were defective, only that they were unable to exercise quality control. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009). The claim survives because "the interference with the trademark holder's legitimate steps to control quality unreasonably subjects the trademark holder to the risk of injury to the reputation of its mark." *Id.* Plaintiffs have established that Defendant's quality control standards, including "double-keying" the standards, a process involving two separate individuals typing the same material and comparing the results to determine the existence of any errors, resulted in missing or inverted pages and typographical errors in numerical values or formulas. (ASTM PSMF ¶¶ 190, 214–15). Because the standards are therefore not "genuine," the first sale doctrine does not apply, and Plaintiffs have established that Defendant used its trademarks in commerce without authorization.

47

### 3.    Likelihood of Confusion

Next, the court must assess whether there is a substantial likelihood of consumer confusion.  This hinges on whether "an appreciable number of ordinarily prudent customers are likely to be misled, or simply confused, as to the source" of the copied standards that Public Resource posted online.  *Globalaw*, 452 F. Supp. 2d at 47.

Plaintiffs argue that consumers will be confused both in thinking that Plaintiffs authorized Defendant's posting of the standards, and that Plaintiffs produced the PDF and HTML versions of the standards that Defendant posted.  *See Am Ass'n for the Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244, 258 (D.D.C. 1980) (noting that both are appropriate bases for a confusion argument).  Courts in this Circuit consider approximately seven factors in assessing the likelihood of confusion, though none is individually determinative.  *Globalaw*, 452 F. Supp. 2d at 48.  They include: (1) the strength of the Plaintiffs' marks; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) evidence of actual confusion; (5) Defendant's purpose or reciprocal good faith in adopting its own mark; (6) the quality of Defendant's product; and (7) the sophistication of the buyers.  *Id.*  Several courts in other Circuits have determined that when a defendant uses an identical mark on a similar product, consideration of all the factors is not necessary.  *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248-49 (11th Cir. 2002); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190-91 (6th Cir. 1988).

Defendant does not dispute that Plaintiffs' marks are "strong," that Defendant used marks and logos that are identical to Plaintiffs' marks and logos when it posted the Plaintiffs' standards online, and that the standards it applied the marks and logos to were identical or nearly identical to Plaintiffs'.  (PSMF ¶¶ 210–11; Def. Br. at 65).  Moreover, it is undisputed that the standards

48

distributed by Plaintiffs and by Defendant were in close proximity, since Defendant offered the

standards in the same market as Plaintiff—i.e., the Internet—as a free alternative to purchasing

the standards from Plaintiffs directly.  *See* Restatement (Third) of Unfair Competition § 21 cmt. j

(1995) ("[T]he use of similar designations on goods that are used together, or that perform the

same function, or that are of the same general class, is more likely to cause confusion than is a

use in connection with goods used for different purposes, or in different contexts, or by different

purchasers.").  It is also undisputed that Defendant intended for individuals to consider that the

standards were identical.  (PSMF ¶ 213).

Defendant argues that despite these undisputed facts, consumers would not be confused

because it posts disclaimers that it claims "adequately informed consumers" so that "no

reasonable consumer would mistake [its cover page] as part of the original document."  (Def.

Reply at 28 (referring to the PDF disclaimer at ASTM ECF No. 118-12, Ex. 16)).  Defendant

also argues that the PDF versions it posted "look like scans of physical documents," and that the

"preamble for the .html standards informs reasonable consumers that Public Resource has

provided the transcription."  (*Id.* (referring to the HTML disclaimer at ASTM ECF No. 118-13,

Ex. 26)).[14]  Here, Defendant's disclaimer on the PDF reads in full:

> In order to promote public education and public safety, equal justice for all, a
> better informed citizenry, the rule of law, world trade and world peace, this legal
> document is hereby made available on a noncommercial basis, as it is the right of
> all humans to know and speak the laws that govern them.

(ASTM ECF No. 118-12, Ex. 16).  The disclaimer on the HTML versions contains similar

---

[14] Defendant cites to *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 369 (1924), in support of its
argument that a disclaimer is sufficient to inform consumers that it has repackaged or changed
the original.  The facts of that case do not support Defendant's position, as the disclaimer in that
case stated clearly that the distributor was not connected with the producer and that the
producer's product was merely a constituent part of the distributor's new product.  *Coty*, 264
U.S. at 367.

49

language. (ASTM ECF No. 118-13, Ex. 26). These disclaimers do not mention Defendant's creation of the reproductions, Plaintiffs' lack of association or authorization, or that they are even reproductions or transcriptions, and can hardly be called disclaimers at all. Moreover, Defendant's assertion that the PDFs "look like scans" offers no assistance to a consumer looking at the standard, as they would have no way to determine whether the Plaintiffs or Defendant created the scan. While Defendant has since adopted a more thorough disclaimer that includes information about Public Resource's retyping of the HTML versions and the possibility of errors (DSMF ¶ 169), it did not begin using that disclaimer until 2015, after the start of this litigation. (Decl. of Carl Malamud ¶ 31 (ASTM ECF No. 122-8)).

The parties have presented no evidence to establish the existence or non-existence of actual consumer confusion. While such evidence is not required, without it summary judgment on consumer confusion, and trademark infringement more generally, is a difficult call. However, the facts here present nearly as black-and-white a case as possible. A consumer in the market for one of Plaintiffs' voluntary consensus standards may encounter them on Plaintiffs' websites for purchase, or on Defendant's website for free download. Because Defendant has intentionally created a copy that is meant to appear identical, including use of Plaintiffs' trademarks, then that consumer may download that standard for free from Defendant without knowing that it is not created by the Plaintiffs and may contain missing pages or typographical errors leading to inaccurate values for measurements. In short, Plaintiffs have presented enough evidence for the court to conclude that there is no genuine dispute on the factual issue of whether consumer confusion is likely.

### 4.    Defendant's Nominative Fair Use Defense

While Plaintiffs have successfully established Defendant's infringing use of their

50

trademarks, Defendant argues that its use of Plaintiffs' trademarks is "nominative fair use."

Under this defense, Defendant must demonstrate that its use of Plaintiffs' trademarks was

necessary to describe their standards; that it only used as much of the marks as was reasonably

necessary to identify the standards; and that it has not done anything to suggest sponsorship or

endorsement by the Plaintiffs or to inaccurately describe the relationship between the parties'

products. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012). Nominative

fair use by a defendant makes it "clear to consumers that the plaintiff, not the defendant, is the

source of the trademarked product or service." *Century 21 Real Estate Corp. v. Lendingtree,*

*Inc.*, 425 F.3d 211, 220 (3d Cir. 2005). Thus, if Defendant's use is nominative fair use, it would

not create "confusion about the source of [the] defendant's product." *Tiffany (NJ) Inc. v. eBay*

*Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (alteration in original). On this point, the parties argue past

each other. Defendant believes no consumer would believe that Defendant, rather than Plaintiffs,

was the source of the standards, and so its use is a fair use. Plaintiffs argue that Defendant's use

cannot be fair precisely *because* consumers would believe that Plaintiffs were the source of the

reproduced standards, which they are not. However, because the court has already determined

that consumer confusion as to the source of the trademarked standards is likely, the nominative

fair use defense is inapplicable and the court need not assess each of the *Rosetta Stone* factors

listed above.

     The court therefore finds that Defendant engaged in trademark infringement by its use of

Plaintiffs' registered trademarks, and Plaintiffs' motion for summary judgment on their

trademark claims is GRANTED and Defendant's cross-motion is DENIED.

## IV.    REMEDIES

     Both ASTM Plaintiffs and AERA Plaintiffs seek a permanent injunction barring

Defendant from distributing, displaying, or creating derivative works from their copyrighted standards and, in the case of ASTM Plaintiffs, their trademarks, which this court has authority to grant under 17 U.S.C. § 502(a) (Copyright Act) and 15 U.S.C. § 1116 (Lanham Act).  Plaintiffs must establish (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for their injury; (3) that a remedy in equity is warranted after considering the balance of hardships; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### A.   <u>Irreparable Injury</u>

The ASTM Plaintiffs assert that they will face three separate irreparable injuries if Defendant is permitted to continue distribution of Plaintiffs' standards, including substantial declines in revenue that may cause their business models to change, the loss of the exclusive rights under the Copyright Act to exclude others from distributing, reproducing, or displaying their protected works, and the loss of control of the goodwill associated with their trademarks. AERA Plaintiffs similarly assert that they will face three separate irreparable injuries if Defendant is permitted to continue distribution of Plaintiffs' standards, including loss of business opportunities, the loss of the exclusive rights under the Copyright Act to exclude others from distributing, reproducing, or displaying their protected works, and the adverse effect on Plaintiffs' efforts to create further standards.

It is well established that the threat of continuing copyright infringement justifies granting a permanent injunction.  *See Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990) ("When a [ ] plaintiff has established a threat of continuing infringement, he is entitled to an injunction."); *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 151 (D.D.C. 2011); *Breaking the Chain Found. v. Capital Educ. Support, Inc.*, 589 F. Supp. 2d 25, 30

52

(D.D.C. 2008). While a court should not automatically issue an injunction after it finds there was past copyright or trademark infringement, here Plaintiffs' alleged irreparable injury is not the past infringement but the threat of future infringement. Defendant has not provided any assurances that it would cease posting of Plaintiffs' standards—indeed, it is undisputed that during the course of this litigation, Public Resource posted online versions of the ASTM Plaintiffs' other standards not involved in this litigation. (PSMF ¶ 235). Moreover, Defendant's counsel at oral argument admitted that Defendant would post the AERA Plaintiffs' 2014 Standards if they were incorporated by reference into federal regulations in the future. (Tr. of Motions Hearing at 75:24–76:2). The court thus determines that the continued threat of infringement is sufficient to weigh in favor of an injunction.

### B.    Adequacy of Monetary Damages

Plaintiffs argue that because damages here are difficult to quantify and Defendant may be unable to pay damages, then legal remedies are inadequate. *See Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d. 30, 50 (D.D.C. 2013). The evidence shows that while the Plaintiffs' standards were accessed thousands of times on Defendant's website, Defendant does not track information that would be helpful in calculating damages, such as how many of those accesses actually led to downloads, and whether those downloads were in lieu of purchases. Moreover, Defendant did not dispute that it has "extremely limited financial resources available to pay any damages award" and that in 2014 it "generated under $100,000 in operating income and had $248,000 in total net assets." (ASTM PSMF ¶¶ 272–73). Given that the Copyright Act provides for statutory damages ranging from $750 to $30,000 for each of the standards at issue in the overall case, or even up to $150,000 per infringement if Plaintiffs were to later prove that infringement was committed willfully, Defendant's potential inability to pay is surely a factor

53

weighing towards equitable relief. *See* 17 U.S.C. § 504(c)(1)–(2).

### C.    Balance of Hardships & Public Interest

The court must weigh the likely harms faced by Plaintiffs described above with any harms faced by Defendant if an injunction is imposed. Here, Defendant's CEO Carl Malamud was asked in his ASTM deposition what financial impact an injunction barring posting of the standards would have on Public Resource, and he responded "probably none." (Malamud Dep. at 219:22–220:4 (Ex. 3 to Rubel Decl. (ASTM ECF No. 118-12))). The only harm Mr. Malamud identified was that "one hates to have wasted that [] effort" that went into posting the standards online. (*Id.*). Without evidence of any additional harms, this factor weighs strongly in favor of an injunction.

Additionally, the public must not be disserved by the issuance of an injunction. Here, the public interest is served by the policy interests that underlie the Copyright Act itself, namely the protection of financial incentives for the continued creation of valuable works, and the continued value in maintaining the public-private system in place in the U.S. to ensure continued development of technical standards.

Taken together, the court finds that injunctive relief is appropriate and that Defendant should be permanently barred from violating any of Plaintiffs' exclusive copyrights, including distributing, displaying, reproducing, or creating derivative works in the nine standards on which ASTM Plaintiffs moved for summary judgment and AERA Plaintiffs' 1999 Standards, as well as barred from any use of ASTM Plaintiffs' trademarks in connection with the posting of these standards online or elsewhere.

## V.    CONCLUSION

For the reasons set forth above, ASTM Plaintiffs' Motion is GRANTED, AERA

54

Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART, and Defendant's Cross-

Motions are DENIED.

Date:  February 2, 2017

*Tanya S. Chutkan*
_____

TANYA S. CHUTKAN
United States District Judge

55

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

)
AMERICAN EDUCATIONAL                          )
RESEARCH ASSOCIATION, INC. *et al.*,          )
                                              )
        Plaintiffs,                           )
                                              )
    v.                                        )    Case No. 14-cv-0857 (TSC)
                                              )
PUBLIC.RESOURCE.ORG, INC.,                    )
                                              )
        Defendant.                            )
                                              )

**ORDER**

Upon consideration of the parties' motions, and for the reasons set forth in the court's

Memorandum Opinion, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART and

Defendant's motion is DENIED.

It is hereby ORDERED that Defendant is permanently enjoined from all unauthorized

use, including through reproduction, display, distribution, or creation of derivative works, of the

Standards for Educational and Psychological Testing, 1999 edition.

Defendant is FURTHER ORDERED to remove all versions of this standard from its

website and any other website within its possession, custody, or control within five days.

Date:  February 2, 2017

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge