ORAL ARGUMENT NOT YET SCHEDULED

No. 17-7035 (consolidated with No. 17-7039)
—————————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
—————————————————

AMERICAN SOCIETY FOR TESTING AND MATERIALS;
NATIONAL FIRE PROTECTION ASSOCIATION, INC.; AND
AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR
CONDITIONING ENGINEERS, INC.,
*Plaintiffs-Appellees*,

v.

PUBLIC.RESOURCE.ORG, INC.,
*Defendant-Appellant*.

—————————————————

On Appeal from the U.S. District Court for the District of Columbia
(Honorable Tanya S. Chutkan)
—————————————————

## BRIEF OF AMICI CURIAE PUBLIC CITIZEN, INC., CENTER FOR
## SCIENCE IN THE PUBLIC INTEREST, CONSUMERS UNION,
## NATIONAL EMPLOYENT LAW PROJECT, AND U.S. PUBLIC
## INTEREST RESEARCH GROUP, INC., IN SUPPORT OF
## DEFENDANT-APPELLANT AND REVERSAL

—————————————————

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

September 25, 2017

Counsel for Amici Curiae
Public Citizen, Inc., et al.

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.     Parties and Amici

All parties appearing before the district court and in this Court are listed in the Defendant-Appellant's brief. All amici who appeared before the district court are listed in the Defendant-Appellant's brief. Public Citizen, Inc., Center for Science in the Public Interest, Consumers Union, National Employment Law Project, and United States Public Interest Research Group, Inc., appear in this Court with the consent of all parties as amici curiae in support of Defendant-Appellant.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, counsel certifies that amici Public Citizen, Inc., Center for Science in the Public Interest, Consumers Union, National Employment Law Project, and United States Public Interest Research Group, Inc., are non-profit organizations. They have no parent corporations and no publicly traded company has an ownership interest in them. The general purpose of the amici organizations is to advocate for the public interest on a range of issues, including health, safety, and the environment. More detailed information about each organization is set forth in the addendum to this brief.

## B.     Rulings Under Review

References to the rulings at issue appear in the Defendant-Appellant's Brief.

## C.    Related Cases

This case is consolidated with Case No. 17-7039, *American Educational Research Association, et al. v. Public.Resource.Org, Inc*. Counsel for amici curiae are not aware of any other related cases as that phrase is defined in Circuit Rule 28(a)(1)(C).

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum

## CIRCUIT RULE 29(d) STATEMENT OF COUNSEL

Amici curiae Public Citizen, Inc., et al. are filing a separate brief from the other amici curiae in support of Defendant-Appellant because they have a different perspective than the other amici and are interested in addressing different issues. Public Citizen, et al., are non-profit organizations that advocate on a wide range of public policy issues, including health, safety, and the environment. Their brief focuses on the need for members of the public to access the content of regulations addressing health, safety, and the environment, and the practical results of barriers to accessing such content. Because they are interested in addressing different issues than the other amici, they cannot join in the other amici's briefs.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ...................................................................................i

CIRCUIT RULE 29(d) STATEMENT OF COUNSEL ........................................ iii

TABLE OF AUTHORITIES ................................................................... v

GLOSSARY......................................................................................... viii

INTERESTS OF AMICI CURIAE............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

ARGUMENT ......................................................................................4

I.      The Public Should Be Able To Fully Access Regulations Affecting
        Health, Safety, and the Environment...............................................4

II.     Limits on Access to Incorporated-by-Reference Standards Hinder the
        Public's Ability To Participate in Rulemaking and Advocacy and To
        Hold Those Who Violate the Law Accountable...........................................12

III.    The E-FOIA Amendments of 1996 Show that a Standard Should Only
        Be Deemed To Be "Reasonably Available" if It Is Available Online. .........16

CONCLUSION ....................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012)................................................................14

*MCI Telecommunications Corp. v. FCC*,
  57 F.3d 1136 (D.C. Cir. 1995).................................................. 12-13

*Motor Vehicle Manufacturers Association of the United States, Inc. v.
  State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) ............13

## STATUTES AND LEGISLATIVE MATERIALS

Administrative Procedure Act
    5 U.S.C. § 553(b) .................................................................12
    5 U.S.C. § 553(c) .................................................................12
    5 U.S.C. § 553(e) .................................................................13
    5 U.S.C. § 702 .....................................................................13
    5 U.S.C. § 706(2)(A) .............................................................13

*Electronic Freedom of Information Act Amendments of 1996,
    Pub. L. No. 104-231, 110 Stat. 3048 (Oct. 2, 1996) ...............................17, 18

FOIA Improvement Act of 2016,
    Pub. L. No. 114-185, 130 Stat. 538 (June 30, 2016)....................................19

*Freedom of Information Act,
    5 U.S.C. § 552 ....................................................................19
    5 U.S.C. § 552(a)(1) ...................................................1, 2, 3, 6, 17
    5 U.S.C. § 552(a)(2) ...................................................3, 17
    5 U.S.C. § 552(a)(2) (1995) ........................................................18

H.R. Rep. No. 795, 104th Cong., 2d Sess. (1996)...........................................17, 18

H.R. Rep. No. 1497, 89th Cong., 2d Sess. (1966) ...........................................2

\* *Authorities upon which we chiefly rely are marked with asterisks.*

S. Rep. No. 813, 89th Cong., 1st Sess. (1965)........................................................2

## REGULATORY MATERIAL

10 C.F.R. § 851.23(a)(9)-(14) ......................................................................5

16 C.F.R. § 1227.2 ...................................................................................5, 7

16 C.F.R. § 1250.2 ...................................................................................10

42 C.F.R. § 482.41(b)(1)(i) .......................................................................4

42 C.F.R. § 482.41(e)................................................................................6

Nuclear Regulatory Commission, *Incorporation by Reference of American Society of Mechanical Engineers Codes and Code Cases*, 82 Fed. Reg. 32934 (July 18, 2017) ....................................................7, 8, 11

Office of the Federal Register, National Archives and Records Administration, *Incorporation by Reference*, 79 Fed. Reg. 66267 (Nov. 7, 2014)..................................................................................19

## OTHER AUTHORITIES

American Society of Mechanical Engineers, www.asme.org ...................................8

American Society for Testing and Materials, *Privacy Policy Statement*, https://www.astm.org/IMAGES03/prpolicy.pdf .......................................9, 10

Antonin Scalia, *The Rule of Law As a Law of Rules*, 56 U. Chi. L. Rev. 1175 (1989) ............................................................ 11-12

Comments of Ioana Rusu, Consumers Union (June 1, 2012), *available at* https://www.regulations.gov/document?D=NARA-12-0002-0140 ........15, 16

Comments of Jacob Speidel, Senior Citizens Law Project, Vermont Legal Aid, Inc. (June 1, 2012), *available at* https://www.regulations.gov/document?D=NARA-12-0002-0154 ..............14

Comments of George Slover, Consumers Union, and Rachel Weintraub,
      Consumer Federation of America (May 12, 2014), *available at*
      https://www.regulations.gov/document?D=OMB-2014-0001-0040 ............16

Comments of Rachel Weintraub, Consumer Federation of America
      (June 1, 2012), *available at*
      https://www.regulations.gov/document?D=NARA-12-0002-0131 ..............16

Federal Bureau of Investigation, *FBI Records: The Vault*,
      https://vault.fbi.gov/reading-room-index ......................................................19

National Archives and Records Administration,
      *Code of Federal Regulations Incorporation by Reference*,
      https://www.archives.gov/federal-register/cfr/ibr-locations.html ..................6

National Archives and Records Administration, *Electronic Reading Room*,
      https://www.archives.gov/foia/electronic-reading-room..............................19

National Archives and Records Administration, *Federal Register*,
      https://www.federalregister.gov ....................................................................2

National Fire Protection Association, *Catalog*,
      http://catalog.nfpa.org/NFPA-101-Life-Safety-Code-P1220.
      aspx?icid= D729 ...........................................................................................7

Nina A. Mendelson, *Private Control over Access to the Law:*
      *The Perplexing Federal Regulatory Use of Private Standards*,
      112 Mich. L. Rev. 737 (2014) ....................................................................15

United States Department of Justice, Office of Information and Privacy,
      *FOIA Update: Congress Enacts FOIA Amendments*, Vol. XVII,
      No. 4 (1996), https://www.justice.gov/oip/blog/foia-update-congress-
      enacts-foia-amendments ...............................................................................19

United States Department of Justice, Office of Information Policy,
      *Guidance on Submitting Certification of Agency Compliance with FOIA's*
      *Reading Room Requirements*, https://www.justice.gov/oip/blog/foia-post-
      2008-guidance-submitting-certification-agency-compliance-foias-reading-
      room ........................................................................................................17, 19

# GLOSSARY

| | |
|---|---|
| ASME | American Society of Mechanical Engineers |
| ASTM | American Society for Testing and Materials |
| E-FOIA | Electronic Freedom of Information Act |
| FOIA | Freedom of Information Act |
| NARA | National Archives and Records Administration |
| NRC | Nuclear Regulatory Commission |

## INTERESTS OF AMICI CURIAE[1]

Amici curiae are non-profit organizations that work on a wide range of public policy issues, including health, safety, and the environment. Amici believe that the ability to access and disseminate standards incorporated by reference into regulations strengthens the public's capacity to understand the law, analyze issues, engage in rulemaking processes, work for solutions to public policy challenges, and hold those who violate the law accountable.

Amici regularly engage in policy analysis, participate in rulemaking proceedings, and advocate for policy solutions, and thus are well qualified to assist the Court in understanding the ways in which restrictions on accessing and disseminating portions of regulations hinder public participation in democratic processes designed to solve policy problems. A fuller description of each of the amici organizations is included in an addendum to this brief. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(1), requires agencies to publish substantive rules in the Federal Register. This publication

---

[1] This brief was not authored in whole or in part by counsel for a party. No person or entity other than amici curiae or their counsel made a monetary contribution to the preparation or submission of this brief.

requirement is intended "for the guidance of the public," and is so important that, if the agency fails to publish a rule, no person may be "adversely affected by" it, unless the person has "actual and timely notice" of its terms. *Id.*

At the same time that Congress wanted the public to have access to agency rules, it was concerned about the "bulky . . . size of the Register." S. Rep. No. 813, 89th Cong., 1st Sess. (1965). To "help reduce the bulk," it allowed some material that was already reasonably available to be incorporated by reference into the Federal Register. H.R. Rep. No. 1497, 89th Cong., 2d Sess. (1966). Such material is "deemed published in the Federal Register." 5 U.S.C. § 552(a)(1).

This case concerns standards incorporated by reference into final rules in the Federal Register. These standards are part of regulations with the force and effect of law, and they are deemed to have been published in the Federal Register, which is disseminated freely online.[2] Nonetheless, the district court barred defendant Public.Resource.Org, a non-profit organization devoted to making laws and other governmental material more widely available to the public, from making the standards available on its website. Regulations that incorporate standards by reference, however, often regulate in important areas related to health, safety, and the environment. Members of the public must be able to fully access these

---

[2] *See* National Archives and Records Administration (NARA), *Federal Register*, https://www.federalregister.gov.

regulations—including the portions that are incorporated by reference—to understand rules that affect their lives and, where necessary, advocate for revised rules. Limitations on the public's ability to access and disseminate material that is incorporated by reference into regulations impede the public's ability to participate in rulemaking proceedings, engage in discussion of regulatory requirements, challenge illegal regulations, and hold those who violate regulations accountable for their actions.

Moreover, by law, material is only allowed to be incorporated by reference if it is already "reasonably available to the class of persons affected thereby." 5 U.S.C. § 552(a)(1). The Electronic Freedom of Information Act (E-FOIA) Amendments of 1996, which require documents that agencies must make affirmatively available to the public to be made available by "electronic means," *id*. § 552(a)(2), demonstrate that, in this digital age, "reasonably available" is best read to mean available online without restrictions, as the Federal Register itself is available. This Court should reverse the order below preventing Public.Resource.Org from providing the public with access to material that already should have been fully accessible online.

**ARGUMENT**

## I. The Public Should Be Able To Fully Access Regulations Affecting Health, Safety, and the Environment.

Government regulations affect the public's health, safety, and welfare on a daily basis. They impact the safety of the food Americans eat, the cleanliness of their air and water, and the safety of their job sites. They affect whether toys are free of toxic substances, whether cars are built to survive crashes, whether nuclear power plants are prepared for disaster, whether planes are airworthy, and whether medical equipment is properly tested.

Despite the importance of regulations to the daily lives of Americans, the full content of regulations is often not published in either the Federal Register or the Code of Federal Regulations. Instead, part of the regulation is a standard that is incorporated by reference.

For example, the Centers for Medicaid and Medicare Services has incorporated the 2012 edition of the Life Safety Code, a compilation of fire safety requirements published by the National Fire Protection Association, in regulations that apply to hospitals and other health-care facilities, such as long-term care facilities and inpatient hospices. *See*, *e.g.*, 42 C.F.R. § 482.41(b)(1)(i). Although the regulations inform hospital patients, facility residents, and other members of the public who care about health-care facility safety that the Life Safety Code applies, they do not provide information on what the Code requires.

4

Similarly, the Consumer Product Safety Commission requires baby carriages and strollers to comply with the applicable provisions of American Society for Testing and Materials (ASTM) F833–15, "Standard Consumer Safety Specification for Carriages and Strollers." *See* 16 C.F.R. § 1227.2. Although the regulation informs parents and other members of the public who care about child safety that the standard for strollers and carriages exists, it does not provide any information about the requirements of that standard.

Likewise, the Department of Energy requires contractors performing work at a Department site to comply, where applicable, with: American Conference of Governmental Industrial Hygienists, "Threshold Limit Values for Chemical Substances and Physical Agents and Biological Exposure Indices" (2005); American National Standards Institute Z88.2, "American National Standard for Respiratory Protection" (1992); American National Standards Institute Z136.1, "Safe Use of Lasers" (2000); American National Standards Institute Z49.1, "Safety in Welding, Cutting and Allied Processes," sections 4.3 and E4.3 (1999); National Fire Protection Association 70, "National Electrical Code" (2005); and National Fire Protection Association 70E, "Standard for Electrical Safety in the Workplace" (2004). *See* 10 C.F.R. § 851.23(a)(9)-(14). Although the regulation informs workers and other members of the public that these standards apply at Department of Energy sites, it does not provide any information on what the standards require.

5

Because these regulations, and many others, incorporate standards by reference, interested members of the public cannot understand the law by reading the U.S. Code and the Code of Federal Regulations. Instead, they must go on a scavenger hunt to track down the content of the relevant regulations. Although incorporated-by-reference standards are supposed to be "reasonably available," 5 U.S.C. § 552(a)(1), tracking them down is not always an easy task. And even where they can be found, they are often in a form that severely impedes the public's ability to understand and use them effectively.

For example, agencies make standards that are incorporated by reference available for inspection at the agency's office and at the National Archives and Records Administration (NARA). *See*, *e.g.*, 42 C.F.R. § 482.41(e). Although this availability allows some members of the public to view the governing standards, it is not useful for most Americans, who live hundreds or thousands of miles outside the Washington, DC area. Moreover, the agencies make the standards available for "inspect[ion]," not necessarily for copying. *Id*. Indeed, NARA's website states in bold that its Office of the Federal Register "does not distribute [incorporated by reference] materials," and specifies that "copies are available for public inspection" and only "limited photo-copying."[3] Incorporated-by-reference standards, however,

---

[3] NARA, *Code of Federal Regulations Incorporation by Reference*, https://www.archives.gov/federal-register/cfr/ibr-locations.html.

can be both complicated and long. For example, the National Fire Protection Association's website lists recent versions of the Life Safety Code—the 2012 version of which is incorporated into fire safety regulations that apply to health-care facilities—as approximately 520 pages long.[4] It is difficult to imagine being able to fully understand and remember the specifications in a 520-page document based solely on reading it, without bringing home a copy to use as a reference. Moreover, members of the public may need to confer with an expert to fully understand the standard and, thus, may need a copy for that purpose.

Agencies also generally refer the public to the standards development organizations to obtain the incorporated-by-reference materials. *See*, *e.g.*, 16 C.F.R. § 1227.2. These organizations likewise place impediments on the public's ability to access the standards. Most notably, these private organizations generally charge fees for copies of the standards—fees that can be prohibitive for members of the public who want to understand the law. For example, on July 18, 2017, the Nuclear Regulatory Commission (NRC) amended its regulations to incorporate by reference certain American Society of Mechanical Engineers (ASME) codes and other materials that "provide rules for safety governing the design, fabrication, and inspection of nuclear power plant components." NRC, *Incorporation by Reference*

---

[4] *See* National Fire Protection Association, *Catalog*, http://catalog.nfpa.org/NFPA-101-Life-Safety-Code-P1220.aspx?icid= D729.

*of American Society of Mechanical Engineers Codes and Code Cases*, 82 Fed. Reg. 32934, 32975 (July 18, 2017). The agency stated that the materials were "available for inspection to all interested parties, by appointment, at the NRC Technical Library" in Rockville, Maryland, and that "[i]nterested parties may purchase a copy of the materials from ASME . . . [or] through third-party subscription services." *Id*. The agency acknowledged, however, that the cost to purchase all of the documents was approximately $9,000. *Id*. Accordingly, a person who cares about nuclear safety and wants to understand the standards governing the design and inspection of nuclear power plant components would need to spend $9,000 to obtain a copy of the standards incorporated by reference in the July 18, 2017 final rule—that is, to access part of the governing law on nuclear power plant safety.[5] Even smaller fees can be prohibitive for some people, and,

---

[5] Recognizing that, "[f]or the class of interested parties constituting members of the general public who wish to gain access to the materials to be incorporated by reference in order to participate in the rulemaking, . . . the $9,000 cost may be so high that the materials could be regarded as not reasonably available for purposes of commenting on this rulemaking," the NRC sent a letter to ASME asking it to "consider enhancing public access to these materials during the public comment period." *Id*. Accordingly, "[d]uring the public comment period . . . ASME made the materials publicly-available in read-only format at the ASME Web site http://go.asme.org/NRC." *Id.* Now that the comment period has ended, however, that link redirects to ASME's main page, www.asme.org, rather than to the standards, even though the standards provide part of the content of agency regulations with the force and effect of law.

given that the Code of Federal Regulations incorporates thousands of standards by reference, the fees can quickly add up.

In addition to offering standards for sale, some standards development organizations make standards that are incorporated by reference available on their websites. Even when they do this, however, they place barriers in the way of the public's ability to access, understand, and use the standards. For example, ASTM maintains a reading room on its website for its standards that have been incorporated by reference. To access the reading room, members of the public must create an account with ASTM and provide their email addresses. *See* D. Ct. Doc. 122-8 at 157. ASTM's privacy policy, located on a different page, states that, "[i]f you give us your e-mail address, you are giving us permission to reply to or send information to that e-mail address," including "marketing and promotional communications."[6] After an individual creates an account, he or she is directed to a longer registration form that asks for, among other things, the person's address and phone number. *See* D. Ct. Doc. 122-8 at 159. According to the privacy policy, "[i]f you supply us with your postal address on-line you may receive periodic postal mailings from us or related third parties with information on new products and

---

[6] ASTM, *Privacy Policy Statement*, https://www.astm.org/IMAGES03/ prpolicy.pdf, at 1, 2.

services or upcoming events."[7] Registrants must take affirmative steps if they want to opt out of any of these solicitations.[8] Thus, if members of the public want to access online ASTM standards that are incorporated by reference in agency regulations and thereby understand the law that governs, for example, toy safety, *see* 16 C.F.R. § 1250.2, they must provide personal information to a private organization—one with which they may disagree—and either open themselves up to receiving unwanted solicitations or take affirmative steps to opt out.

Moreover, after a person has registered, he or she must accept a license agreement to see the incorporated-by-reference standards. That agreement informs the reader that "[b]y accessing any ASTM Document you are entering into a contract, . . . and agree to be bound by its terms." D. Ct. Doc. 122-8 at 163. The agreement includes provisions stating, for example, that the standards are protected by copyright under both U.S. and international law. *Id*. The agreement also includes a disclaimer of warranty and liability limiting ASTM's liability "based on any cause of action" to $100, and a provision stating that the agreement is to be construed under the laws that Pennsylvania applies to agreements wholly entered into and performed in Pennsylvania, that any legal action relating to the agreement is to be brought in Pennsylvania, that each party submits to personal jurisdiction in

---

[7] ASTM, *Privacy Policy Statement*, https://www.astm.org/IMAGES03/prpolicy.pdf, at 2.

[8] *Id*.

10

Pennsylvania, and that each party waives any objections to venue in Pennsylvania. *Id.* at 164. Thus, to access online the ASTM standards are that are incorporated by reference in agency regulations—that is, to read the contents of the law—members of the public must enter into a binding contract with a private organization and waive legal rights with respect to that entity.

Finally, even if someone is willing to enter into ASTM's license agreement, the versions of incorporated-by-reference standards that ASTM posts online are "designed to be viewed online only," with "no 'print,' 'save,' or 'cut and paste' options." *Id.* at 163. Thus, a member of the public cannot print a copy to highlight, take notes on, tab, use as a reference, share with an expert, or take to a store or job site away from a computer or other electronic device.

In sum, although standards that are incorporated by reference contain "legally binding . . . requirements" in important areas related to health, safety, and the environment, 82 Fed. Reg. at 32935, they are often difficult for the public to access effectively. The copies in government offices are available only for inspection and are not useful for people outside the Washington, DC area, and access to standards in the hands of private organizations can be costly or require waiving legal rights. In the words of Justice Scalia, however, "[r]udimentary justice requires that those subject to the law must have the means of knowing what it prescribes." Antonin Scalia, *The Rule of Law As a Law of Rules*, 56 U. Chi. L.

Rev. 1175, 1179 (1989). The public should be able to access fully the content of regulations, including the standards incorporated by reference into such regulations. Accordingly, Public.Resource.Org should not be prevented from making federal standards available to the public.

## II.    Limits on Access to Incorporated-by-Reference Standards Hinder the Public's Ability To Participate in Rulemaking and Advocacy and To Hold Those Who Violate the Law Accountable.

Limitations on the public's ability to access portions of regulations that are incorporated by reference have practical implications. They impede people's ability to participate in rulemaking, challenge illegal rules, advocate for change, comply with the law, and hold those who violate their rights accountable.

First, limitations on access to incorporated-by-reference standards affect the public's ability to participate in rulemaking processes. The Administrative Procedure Act requires agencies to publish a "notice of proposed rule making" in the Federal Register. 5 U.S.C. § 553(b). After the notice is provided, the public must be given "an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id*. § 553(c). This notice-and-comment rulemaking process is intended "to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies" and "to assure that the agency will have before it the facts and information relevant to a particular administrative problem." *MCI*

*Telecomms. Corp. v. FCC*, 57 F.3d 1136, 1141 (D.C. Cir. 1995) (internal quotation marks and citation omitted). If standards are incorporated by reference in proposed rules, and members of the public cannot access those standards in a manner that allows them to absorb and analyze the standards' contents, they cannot meaningfully comment on the requirements being proposed.

The need for access to incorporated-by-reference standards continues once a final rule is issued. After a regulation is enacted, a person adversely affected by it is entitled to seek judicial review and ask to have the regulation declared invalid because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §§ 702, 706(2)(A). To do so, the person needs effective access to the relevant portion of the regulation at issue and to be able to compare that segment of the regulation to the final rule's preamble to determine if the agency "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). Likewise an "interested person" needs access to the content of a regulation to exercise "the right to petition for the issuance, amendment, or repeal of a rule" guaranteed by 5 U.S.C. § 553(e). Impediments to a person's access to the content of a regulation likewise impede his or her ability to seek judicial review and exercise the right to petition.

Obstacles to accessing incorporated-by-reference standards also have practical effects outside of the rulemaking process. The most obvious effect is on people regulated by the relevant regulation, who need to understand the governing law to be able to comply with it. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (discussing "the principle that agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires" (internal quotation marks, citation, and alteration omitted)). Also affected, however, are the people the regulation is intended to benefit, who need meaningful access to applicable regulations to determine whether the people and entities affecting them are complying with the law, and to hold those people and entities accountable when they are not. In comments submitted in response to a petition to revise regulations regarding incorporation by reference, for example, the Senior Citizens Law Project of Vermont Legal Aid, Inc., described the situation of a tenant who needed to know whether her building complied with state fire codes. Although the woman had been granted in forma pauperis status in court, she needed to pay a large sum to determine whether her fire extinguisher met the code's requirements.[9]

---

[9] Comments of Jacob Speidel, Senior Citizens Law Project, Vermont Legal Aid, Inc. (June 1, 2012), *available at* https://www.regulations.gov/document?D=NARA-12-0002-0154, at 2.

Furthermore, even when people are not directly regulated by regulations, the content of those regulations may affect how they structure their daily lives. "The content . . . of regulatory standards, might prompt parents to buy—or not buy—certain toys or infant carriers; consumers to buy—or not buy—rice that contains some level of arsenic; people considering employment in an [Occupational Safety and Health Administration]-regulated paint booth to work there—or not; and residents to drink filtered or bottled water depending on the stringency of tap water standards." Nina A. Mendelson, *Private Control over Access to the Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 771 (2014). And access to the content of standards can help members of the public ensure that agency regulations are being followed. Consumers Union, the advocacy and public policy arm of Consumer Reports, noted in comments on the petition to revise the incorporation-by-reference regulations, for example, that, "Consumer Reports has, on several occasions, notified the Consumer Product Safety Commission and warned consumers about products that do not comply with existing standards, thus creating a public safety hazard."[10] "In order for non-profit

---

[10] Comments of Ioana Rusu, Consumers Union (June 1, 2012), *available at* https://www.regulations.gov/document?D=NARA-12-0002-0140, at 2.

consumer groups like ours to play this crucial role," it continued, "they need easy and free access to relevant standards."[11]

Overall, the ability to access the law affects the public's ability to participate in democratic processes. When it is difficult or expensive for the public to access the content of incorporated-by-reference standards, members of the public cannot fully understand the rules that govern them, engage in public conversation about important regulatory matters, petition agencies for the amendment of rules, lobby Congress for increased oversight or for changes in the law, or hold their officials accountable. As the non-profit organization Consumer Federation of America explained in comments to the Office of Management and Budget on incorporation by reference, "[w]ithout unfettered access to these standards, our democratic system will be severely limited."[12]

## III.   The E-FOIA Amendments of 1996 Show that a Standard Should Only Be Deemed To Be "Reasonably Available" if It Is Available Online.

The question whether incorporated-by-reference standards can be posted online is not one that should ever arise, because all such standards should *already* be available online. By law, material is only allowed to be incorporated by

---

[11] *Id.*

[12] Comments of Rachel Weintraub, Consumer Federation of America (June 1, 2012), *available at* https://www.regulations.gov/document?D=NARA-12-0002-0131, at 1; *see also* Comments of George Slover, Consumers Union, and Rachel Weintraub, Consumer Federation of America (May 12, 2014), *available at* https://www.regulations.gov/document?D=OMB-2014-0001-0040, at 2.

reference if it is "reasonably available to the class of persons affected thereby." 5 U.S.C. § 552(a)(1). As the E-FOIA Amendments of 1996 demonstrate, *see* Pub. L. No. 104-231, 110 Stat. 3048 (Oct. 2, 1996), in the current digital age, material should only be considered "reasonably available" if it is available online without restrictions.

The E-FOIA Amendments were enacted in 1996 to implement Congress's determination that "[g]overnment agencies should use new technology to enhance public access to agency records and information." *Id*. § 2(a)(6). As the U.S. House of Representatives Committee on Government Reform and Oversight explained in its report on the E-FOIA Amendments, "[t]he public is increasingly using networked computers and broadly accessible data networks such as the Internet." H.R. Rep. No. 795, 104th Cong., 2d Sess. 11 (1996). "The FOIA must stay abreast of these developments in order to ensure continued public access to Government information." *Id*. at 12.

Among the provisions in the E-FOIA Amendments were amendments to the affirmative disclosure provisions of section (a)(2) of FOIA, 5 U.S.C. § 552(a)(2). That section, often called the "reading room" provision,[13] required agencies to

---

[13] *See, e.g.*, U.S. Dep't of Justice, Office of Information Policy, *Guidance on Submitting Certification of Agency Compliance with FOIA's Reading Room Requirements*, https://www.justice.gov/oip/blog/foia-post-2008-guidance-submitting-certification-agency-compliance-foias-reading-room.

make available "for public inspection and copying" documents such as "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2) (1995). The E-FOIA Amendments added a requirement that agencies make all records covered by section (a)(2) that were created after November 1, 1996, available "by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means." Pub. L. No. 104-231, § 4(7). Although the House Report accompanying the bill allowed for the possibility that records covered by section (a)(2) could be made available through CD-ROM or disc if an agency did not have "the means established to make these materials available on-line," H.R. Rep. No. 795 at 20, the Department of Justice's Office of Information and Privacy (now the Office of Information Policy) explained shortly after the statute was enacted that the new provision "embod[ies] a strong statutory preference that this new electronic availability be provided by agencies in the form of on-line access."[14] Accordingly, the

---

[14] U.S. Dep't of Justice, Office of Information and Privacy, *FOIA Update: Congress Enacts FOIA Amendments*, Vol. XVII, No. 4 (1996), https://www.justice.gov/oip/blog/foia-update-congress-enacts-foia-amendments.

Department of Justice instructed agencies to "have Internet or World Wide Web sites prepared to serve this 'electronic reading room' function" within a year.[15]

Thus, over 20 years ago, Congress recognized—in the same statute that provides for incorporation by reference, 5 U.S.C. § 552—that records that are required to be made available should be made available online. And in the years since, agencies have regularly posted records that FOIA requires to be made available in online reading rooms, without restrictions on access, downloading, or printing.[16] Although the Office of Federal Register does not require a standard to be available online to approve its incorporation by reference,[17] in this digital age, standards should not be considered "reasonably available" as required for incorporation by reference unless they, too, are posted online without restrictions.

---

[15] *Id*. In 2016, Congress further amended FOIA to make clear that all (a)(2) records must be made available in an "electronic format." FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2, 130 Stat. 538 (June 30, 2016).

[16] *See* U.S. Dep't of Justice, Office of Information and Privacy, *Guidance on Submitting Certification of Agency Compliance with FOIA's Reading Room Requirements*, https://www.justice.gov/oip/blog/foia-post-2008-guidance-submitting-certification-agency-compliance-foias-reading-room (explaining that "[a]gencies accomplish this electronic availability through the use of electronic Reading Rooms on their FOIA websites"); *see also*, *e.g.*, Federal Bureau of Investigation, *FBI Records: The Vault*, https://vault.fbi.gov/reading-room-index (Federal Bureau of Investigation online reading room); NARA, *Electronic Reading Room*, https://www.archives.gov/foia/electronic-reading-room (NARA online reading room).

[17] *See* Office of the Federal Register, NARA, *Incorporation by Reference*, 79 Fed. Reg. 66267, 66268 (Nov. 7, 2014) (declining to define reasonably available or to require all incorporated-by-reference material be available online).

Because regulatory standards should already be available online, without restrictions on downloading and printing, Public.Resource.Org should not be prohibited from making them available in that fashion.

## CONCLUSION

This Court should reverse the district court's order granting summary judgment to Plaintiffs and barring Defendant from posting incorporated-by-reference standards online.

September 25, 2017                    Respectfully submitted,

                                      /s/ Adina H. Rosenbaum
                                      Adina H. Rosenbaum
                                      Allison M. Zieve
                                      Public Citizen Litigation Group
                                      1600 20th Street NW
                                      Washington, DC 20009
                                      (202) 588-1000

                                      Counsel for Amici Curiae
                                      Public Citizen, Inc., et al.

20

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-face and volume limitations set forth in Federal Rules of Appellate Procedure 29(a)(5), 32(a)(5), 32(a)(6), and 32(a)(7)(B) as follows: The type face is fourteen-point Times New Roman font, and the word count is 5,003.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum

## CERTIFICATE OF SERVICE

I certify that on September 25, 2017, I caused the foregoing to be filed with the Clerk of the Court through the Court's ECF system, which will serve notice of the filing on all filers registered in this case.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum

## ADDENDUM

The foregoing brief is submitted on behalf of the following organizations:

**Public Citizen, Inc.,** is a non-profit, consumer-advocacy organization that appears before Congress, administrative agencies, and courts to work for enactment and enforcement of laws protecting consumers, workers, and the general public. On behalf of its members in all fifty states, Public Citizen advocates for strong protections with respect to auto safety, drug and medical device safety, workplace safety, and the environment, among other things, and it has long worked for openness and integrity in government. Public Citizen petitions federal agencies for rulemaking, comments on proposed regulations issued by federal agencies, and seeks judicial review of rules that are arbitrary, capricious, or otherwise not in accordance with law. Public Citizen often represents consumer interests in litigation, including as amicus curiae in the United States Supreme Court and the federal courts of appeals.

Founded in 1971, **Center for Science in the Public Interest** (CSPI) is a 501(c)(3) non-profit, nonpartisan organization whose mission is to advocate on behalf of the public on issues of nutrition and health. CSPI's impact has been substantial, including by way of its key role in successful campaigns to: ban artificial trans fats from the food supply; obtain an agreement to ban sugar-sweetened beverages from public schools; obtain voluntary agreements to restrict

advertising to children from major food and beverage manufacturers; and prescribe the content and legibility of important nutrition information on product labels. CSPI also represents consumers through litigation that targets false advertising of foods—making it easier for consumers to live nutritious and healthy lifestyles, and brings litigation against federal agencies on issues of unlawful regulatory action or inaction. CSPI frequently reviews and submits detailed expert comments on pending rules and guidance developed by agencies, including rules or guidance that reference or fully incorporate standards developed by third parties.

**Consumers Union** is the policy and mobilization arm of Consumer Reports. Consumers Union is an expert, independent, non-profit organization whose mission is to work for a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves. It conducts this work in the areas of product safety, food safety, financial services reform, telecommunications reform, health care reform, and other areas. Consumer Reports is the world's largest independent product-testing organization. Using its more than 50 labs, auto test center, and survey research center, the non-profit organization rates thousands of products and services annually. Founded in 1936, Consumer Reports has over 7 million subscribers to its magazine, website, and other publications.

The **National Employment Law Project** (NELP) is a non-profit legal organization with over 45 years of experience advocating for the employment and

labor rights of low-wage and unemployed workers. NELP seeks to ensure that all employees, and especially the most vulnerable ones, receive the full protection of labor and employment laws, including health and safety protections. Without clear and publicly-accessible compliance guidance and transparent protection standards, workers and their employers suffer from the uncertainty. NELP has litigated and participated as *amicus curiae* in numerous circuit, state, and U.S. Supreme Court cases addressing the importance of access to labor and employment protections for all workers.

**United States Public Interest Research Group, Inc.** (U.S. PIRG) is a non-profit advocacy organization that works for consumers and the public interest. Using the time-tested tools of investigative research, media exposés, grassroots organizing, advocacy, and litigation, U.S. PIRG stands up to powerful interests on behalf of the American public and delivers concrete results for the public's health and well-being. U.S. PIRG works on issues involving product safety, public health, campaign finance reform, higher education, tax and budget reform, and consumer protection.