ORAL ARGUMENT NOT YET SCHEDULED

Appeal No. 17-7035
(Consolidated with 17-7039)

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

American Society for Testing and Materials, et al.,

American Educational Research, et al.,

*Appellees,*

v.

Public. Resource.Org, Inc.,

*Appellant.*

---

On Appeal from the United States District Court
for the District of Columbia Hon. Tanya S. Chutkan
1:13-cv-1215-TSC
1:14-cv-0857-TSC

---

## BRIEF OF *AMICI CURIAE* MEMBERS OF CONGRESS
## IN SUPPORT OF DEFENDANT-APPELLANT AND FOR REVERSAL

---

Christopher T. Bavitz
Kendra K. Albert
Cyberlaw Clinic
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
(617) 384-9125
clinic@cyber.harvard.edu

Counsel for *Amici Curiae*

Catherine R. Gellis, Esq.
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849
cathy@cgcounsel.com

Local Counsel in the United States
Court of Appeals for the District of
Columbia Circuit

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amici curiae* certify as following:

**(A) Parties and Amici.** Besides the following, all parties, intervenors, and *amici* appearing before the district court and in this court are listed in the Brief for Defendant-Appellant filed August 28, 2017 and any amicus briefs filed prior to this one:

> Zoe Lofgren

> Darrell Issa

**(B) Rulings Under Review.** References to the rulings at issue appear in the Brief for Defendant-Appellant filed August 28, 2017.

**(C) Related Cases**. To the knowledge of counsel, other than any cases listed in the Brief for Defendant-Appellant filed August 28, 2017, the case on review was not previously before this Court or any other court, and there are no other related cases currently pending in this Court or in any other court.

# TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW AND RELATED CASES** .................................................................................I

**TABLE OF CONTENTS** .............................................................. II

**TABLE OF AUTHORITIES** ........................................................IV

**GLOSSARY OF ABBREVIATIONS** ..........................................VII

**STATUTES AND REGULATIONS** ..........................................VIII

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE**.........................................................IX

**STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS XI**

**INTRODUCTION**.............................................................................1

**ARGUMENT** ....................................................................................2

    **I.**    **Restricting access to the law potentially violates due process and is antithetical to democratic governance.**........................................**2**
        A.   Restricting public access to the law raises due process concerns..3
        B.   Ensuring the right to due process outweighs any copyright interests in the law. .............................................................................6

    **II.**   **Even if this court were to find that law may be subject to copyright, publication of the law would be an inherently fair use.** ..........**8**
        A.   Public Resource is a non-profit organization whose use of the material at issue creates a valuable public benefit. .............................9
        B.   The factual nature of standards and model codes favors a finding of fair use....................................................................................11
        C.   Public Resource's publication of the complete texts was necessary to convey the law, and thus supports a finding of fair use..................12
        D.   Public Resource's activities do not impair SDOs' incentives to create model codes and standards. ....................................................13

**III.   Failing to recognize copyright limitations for laws burdens lawmakers, raises public safety concerns, and particularly disadvantages the poor and the disabled.....................................15**

   A.  Prioritizing the copyright interests of SDOs over free and fair access to the laws undermines the legislative process. .......................15

   B.  Restricting public access to the law raises public safety concerns and particularly burdens the poor and the disabled............................17

**CONCLUSION**....................................................................................**21**

**CERTIFICATE OF COMPLIANCE** .................................................**22**

**CERTIFICATE OF SERVICE** ........................................................**23**

# TABLE OF AUTHORITIES

## CASES

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008) ................................................................................................... 19

*Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 925 (2d Cir. 1994) ... 11

*Banks & Bros v. West Pub'g Co.*, 27 F. 50 (C.C.D. Minn. 1886) ................. 8

*Banks v. Manchester*, 128 U.S. 244 (1888) ............................................ 6, 7

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) ...................................................................................... 12

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) ........................................... 9

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730 (1st Cir. 1980) ..................................................................................... 7, 16

*Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 265 (Wash. Ct. App. 2005) ...................................................................................... 17

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994).... 8, 9, 11, 12, 14

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 145 (2d Cir. 1998) ...................................................................................... 9

*Crowell v. McCaffrey*, 386 N.E.2d 1256, 1261-1262 (Mass. 1979) ............. 18

*Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) ............. 6

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985) ........................................................................................ 11, 12

*Johnson v. United States*, 135 S. Ct. 2551, 2561-2563 (2015) ...................... 5

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983) .......................................... 5

*Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957) ....... 5

*Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-CV-30023-MGM, 2016 WL 3561622 (D. Mass. Feb. 9, 2016) ...................................................... 19

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) ...................................................................................... 20

*Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565, 575 (D. Vt. 2015) ...................................................................................... 19

*Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) ....... 12

*Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ...................................................................................... 10

*Satellite Broad. Co. v. F.C.C.*, 824 F.2d 1, 3 (D.C. Cir. 1987) ..................... 6

*Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F. Supp. 5, 10 (D.D.C. 1993) ...................................................................................... 12

*Time Inc v. Bernard Geis Assocs*, 293 F. Supp. 130 (S.D.N.Y. 1968) ......... 10

*United States v. Lanier*, 520 U.S. 259 (1997) ............................................. 5

*United States v. Paramount Pictures*, 334 U.S. 131 (1948) ......................... 13

*Universal City Studios, Inc. v. Sony Corp. of Am.*, 464 U.S 417 (1984) ........ 9

*Universal City Studios, Inc. v. Sony Corp. of Am.*, 480 F. Supp. 429 (C.D. Cal. 1979) ............................................................................. 9, 14

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791 (5th Cir. 2002) .. 7, 14, 15

*Wheaton v. Peters*, 33 U.S. 591 (1834) ......................................... 15

*Williams & Wilkins Co. v. United States*, 487 F.2d 1345 (Ct. Cl. 1973) ..... 13

## REGULATIONS

21 C.F.R. § 172.167(b) (2016) ...................................................... 4

49 C.F.R. § 192.113 (2015) .......................................................... 4

## STATUTES

17 U.S.C. § 105 ...................................................................... 15

17 U.S.C. § 107 ....................................................................... 9

17 U.S.C. § 201 ...................................................................... 16

42 U.S.C. § 12182 ................................................................... 19

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV ............................................................... 3

U.S. Const. art. I, § 8, cl. 8 ........................................................... 9

U.S. Const., amend. V ................................................................. 3

## OTHER AUTHORITIES

*All Published Symposia Papers & STPs*, ASTM ........................................ 16

*Books and Other Products*, ANSI .................................................... 17

*Building Laws and Regulations*, DC.gov Department of Consumer and Regulatory Affairs (last visited Sep. 23, 2017) ........................................ 18

*Code of Federal Regulations Incorporation by Reference*, Office of the Federal Register (last visited Sep. 22, 2017) ............................................. 2

Criminal Complaint, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017) .................................................................. 4

Declaration in Support of Probable Cause, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017) ................................................... 4

H.R. Rep. No. 60-2222 (1909). .................................................................. 13

H.R. Rep. No. 94-1476 (1976) .......................................................... 8, 9, 10

*NFPA 70 Purchase Options,* National Fire Protection Association (last
    visited Sep. 23, 2017) .................................................................. 16, 17, 18

Nina A. Mendelson, *Taking Public Access to the Law Seriously: The
    Problem of Private Control over the Availability of Federal Standards*, 45
    Envtl. L. Rep. News & Analysis 10776 (2015) ......................................... 4

S. Rep. No. 94-473 (1975) .......................................................................... 10

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ADA | Americans with Disabilities Act |
| AERA | American Educational Research Association (Plaintiff) |
| APA | American Psychological Association (Plaintiff) |
| ASHRAE | American Society of Heating, Refrigeration, and Air Conditioning Engineers (Plaintiff) |
| ASTM | American Society of Testing and Materials (Plaintiff) |
| CFR | Code of Federal Regulations |
| NCME | National Council for Measurement in Education (Plaintiff) |
| NEC | National Electrical Code (of NFPA) |
| NFPA | National Fire Protection Association (Plaintiff) |
| SDO(s) | standards development organization(s) |

## STATUTES AND REGULATIONS

All applicable statutes, etc. are contained in the Brief for Defendant-

Appellant filed August 28th, 2017.

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

Congresswoman Zoe Lofgren has represented California's Nineteenth District in the 115th Congress since 1994. She currently serves on the House Committee on the Judiciary; the Committee on Science, Space, and Technology; and the Committee on House Administration, where she works closely on issues related to copyright, patent reform, net neutrality, and other digital rights issues, as well as being an advocate for government transparency generally.

Congressman Darrell Issa represents California's Forty Ninth District in the U.S. House of Representatives and has served in Congress since 2001. He currently serves on the House Committee on Oversight and Government Reform; the Committee on Foreign Affairs; and the Committee on the Judiciary, where he chairs the Subcommittee on Courts, Intellectual Property, and the Internet. Congressman Issa is a fierce defender of government transparency. Previously, he chaired the Oversight and Government Reform Committee and was the House sponsor of the Digital

Accountability and Transparency Act of 2014, which was signed into law by President Obama.

Pursuant to Federal Rule of Appellate Procedure 29(a), *amici* certify that all parties in this case have consented to the filing of this brief.

Pursuant to District of Columbia Circuit Rule 29(d), *amici* certify that this separate amicus brief is necessary and non-duplicative with any other brief that may be submitted. This case is about whether and how the people may access the law that governs them.  As the progenitors of that law, the view of members of Congress is thus critical and unique.

## STATEMENT OF AUTHORSHIP AND FINANCIAL
## CONTRIBUTIONS

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici curiae* certify that no party or party's counsel authored this brief in whole or in part, that no party or party's counsel provided any money that was intended to fund the preparation or submission of this brief, and no party or person—other than the *amici curiae*, or their counsel—contributed money that was intended to fund the preparation or submission of this brief.

**INTRODUCTION**

This is a case about whether a private party may be held liable for publishing the law of the land. Appellees in this case—the American Society for Testing and Materials ("ASTM"), the National Fire Protection Association, Inc. ("NFPA"), the American Society of Heating, Refrigeration, and Air Conditioning Engineers ("ASHRAE"), the American Educational Research Association, Inc. ("AERA"), the American Psychological Association, Inc. ("APA"), and the National Council on Measurement in Education, Inc.  ("NCME")—are standards development organizations ("SDOs") that create standards and model codes. Standards and codes developed by SDOs are adopted or incorporated by reference by legislatures and regulatory bodies (often at the urging of the SDOs themselves) and are thus given the binding force of law in a broad variety of fields ranging from education, to psychological testing, to public safety.

Appellant Public.Resource.org ("Public Resource") is a non-profit, public interest organization whose mission is to improve public access to government records and the law. To accomplish this mission, Public Resource acquires copies of such records—including legal decisions, tax filings, statutes, and regulations—and publishes them online, free of charge.

Appellees allege that Public Resource's activities constitute copyright infringement.

From the moment a privately developed standard or code is incorporated into public law, all citizens of the relevant jurisdiction are under an obligation to follow it to the letter. *See Code of Federal Regulations Incorporation by Reference*, Office of the Federal Register (last visited Sep. 22, 2017).[1] Against that backdrop, extending copyright protection to model codes and standards incorporated into law will lead to extraordinary and untenable results, privileging the purported copyright rights of SDOs over the rights of members of the public to due process and access to the laws that bind them. A ruling in favor of Public Resource, on the other hand, would be consistent with both precedent and public policy, safeguarding public access to the law and the integrity of the lawmaking process. For these reasons, the *amici* who submit this brief ("Amici") respectfully request that this Court reverse the judgments of the lower courts in favor of Appellees.

## ARGUMENT

**I.    Restricting access to the law potentially violates due process and is antithetical to democratic governance.**

---

[1] https://www.archives.gov/federal-register/cfr/ibr-locations.html

For the law to govern and protect the people, the people must know what the law is. By offering an electronic platform for the publication of legal codes and standards, Public Resource helps the public by providing access to laws that might otherwise be functionally inaccessible. Without this access, the consequences are significant. First, those who inadvertently violate inaccessible regulations may be blindsided by civil and criminal penalties for violations they did not know to avoid. Second, those whose health and welfare depends on others' compliance with these regulations may suffer damage to their life, liberty, and property, as a result of both others' ignorance of the law and their own inability to access the law in order to pursue enforcement. This Court should not endorse a copyright regime that allows private SDOs to limit access to the legal rules that govern and protect the public.

### A.   Restricting public access to the law raises due process concerns.

As members of Congress, our job is to draft and enact laws that govern the United States. But mere passage of legislation is not enough; due process requires more. The Fifth and Fourteenth Amendments dictate that no person is to be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; U.S. Const. amend. XIV. There can be no due process when people cannot remain informed of the laws by which they are

bound. And they cannot remain informed when the law itself is not sufficiently communicated to the people it governs.

Many privately drafted standards concern product safety and operative engineering requirements. *See* Nina A. Mendelson, *Taking Public Access to the Law Seriously: The Problem of Private Control over the Availability of Federal Standards*, 45 Envtl. L. Rep. News & Analysis 10776 (2015); *see, e.g.*, 21 C.F.R. § 172.167(b) (2016) (specifications listed in the Food Chemicals Codex incorporated by reference to govern quality of hydrogen peroxide as a food additive.); 49 C.F.R. § 192.113 (2015) (regulations on gas pipe components incorporating standards drafted by Appellee ASTM). Laws and regulations that impact public infrastructure and health are, unsurprisingly, often enforced via threat of criminal liability to ensure compliance. *See, e.g.*, Criminal Complaint, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017)[2]; Declaration in Support of Probable Cause, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017)[3] (requesting the imposition of criminal penalties upon a warehouse leaseholder who failed to follow fire safety standards set out by the Oakland

---

[2] Available at https://cbssanfran.files.wordpress.com/2017/06/almena-and-harris-complaint.pdf.

[3] Available at https://www.scribd.com/document/350446988/Ghost-Ship-fire-criminal-charges.

4

Municipal Code and California Fire Safety code after a warehouse fire). But, if the texts of such laws and regulations are largely inaccessible, there may be profound due process problems with subjecting the inadvertently-ignorant violator to criminal prosecution.

The Supreme Court has shown reluctance to impose criminal liability without providing an accused with either sufficient notice, *see Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957) ("Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act") or fair warning of the law, *see United States v. Lanier*, 520 U.S. 259 (1997) (defining "fair warning" in criminal cases to denote the requirement of clear and unambiguous statutory language dictating punishable behavior); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"); *Johnson v. United States*, 135 S. Ct. 2551, 2561-2563 (2015) (holding that imposing an increased sentence under a vague clause violated due process rights).

Federal courts have also strictly upheld due process notice requirements particular to the regulatory process. *See Gen. Elec. Co. v. U.S.*

*E.P.A.*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) ("[W]e must ask whether the

regulated party received, or should have received, notice of the agency's

interpretation in the most obvious way of all: by reading the regulations.");

*see also Satellite Broad. Co. v. F.C.C.*, 824 F.2d 1, 3 (D.C. Cir. 1987)

("Traditional concepts of due process incorporated into administrative law

preclude an agency from penalizing a private party for violating a rule

without first providing adequate notice of the substance of the rule."). A

citizen's ability to take notice of a law or regulation depends on that citizen's

ability to access the text of such law or regulation. Allowing a private

organization, through the mechanism of copyright, to determine whether a

citizen may be granted access creates an untenable situation. Organizations

like Public Resource must be able to share the text of legal codes and

standards in order for the requirements of due process to be met.

### B. Ensuring the right to due process outweighs any copyright interests in the law.

Federal courts have a long tradition of requiring the text of binding

law to be widely accessible to the public. *See, e.g.*, *Banks v. Manchester*,

128 U.S. 244, 253 (1888) ("[T]he law . . . is free for publication to all,

whether it is a declaration of unwritten law, or an interpretation of a

constitution or a statute."). Because copyright interferes with public access,

courts have often denied copyright protection to texts ranging from judge-

written opinions to model building codes, rejecting these attempts to limit on the people's access to law. *See, e.g.*, *Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980) ("But if access to the law is limited, then the people will or may be unable to learn of its requirements and may be thereby deprived of the notice to which due process entitles them."); *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 799 (5th Cir. 2002) ("[I]t is difficult to reconcile the public's right to know the law with the statutory right of a copyright holder to exclude his work from any publication or dissemination.").

Traditionally, the law has lacked copyright protection because there is a duty of the legislature and judiciary to make "the authentic exposition and interpretation of the law, which [is] binding every citizen...free for publication to all." *Banks v. Manchester*, 128 U.S. 244, 253 (1888). There is "judicial consensus" that the law belongs in the public domain because basic democratic principles of fairness and public policy demand the people should have access to the laws they must follow. *See id.*; *see also supra* Section I.A. Indeed, "it is a maxim of universal application that every man is presumed to know the law, and it would seem inherent that freedom of access to the laws, or the official interpretation of those laws, should be co-extensive with the sweep of the maxim." *Banks & Bros v. West Pub'g Co.*,

27 F. 50, 57 (C.C.D. Minn. 1886). It is reasonable for citizens to assume that when government entities incorporate privately developed codes and standards in statutes, regulations, and ordinances, the text thereof has lost any copyright protection it might have once had that could limit the people's free access to it.

## II.  Even if this court were to find that law may be subject to copyright, publication of the law would be an inherently fair use.

If the Court decides to recognize a copyright interest for SDOs in codes and standards that persists even after such codes and standards are incorporated by reference in laws or regulations, and if the Court is does not believe that due process concerns outweigh the SDOs' private, pecuniary interests, the Court should hold that Public Resource's activities constitute fair use. "From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts . . . '." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const. art. I, § 8, cl. 8.) Fair use is "one of the most important and well-established limitations on the exclusive right of copyright owners." H.R. Rep. No. 94-1476, at 65 (1976). Originally judicial doctrine, Congress provided statutory guidance for finding fair use according to the following factors:

8

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Although the factors weigh heavily in judicial decision-making, the list is not exhaustive, and no one factor is decisive. *See Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 145 (2d Cir. 1998); *see also* H.R. Rep. No . 94-1476, at 65. Rather, each factor is to be considered and weighed together, "in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. In this case, all four factors weigh strongly in favor of Public Resource and support a finding that its activities are fair.

### A.   Public Resource is a non-profit organization whose use of the material at issue creates a valuable public benefit.

Copyright law was developed to ensure the public enjoys the fruits of our country's scientific and cultural achievements. U.S. Const. art. I, § 8, cl. 8.; *see also Universal City Studios, Inc. v. Sony Corp. of Am.*, 464 U.S 417, 429 (1984). The more a use "benefits the broader public interest," the more likely it is to be fair. *Blanch v. Koons*, 467 F.3d 244, 253 (2d Cir. 2006).

And non-profit, non-commercial activity also tends to create a presumption of fair use. *See Sony*, 464 U.S. at 451.

Courts have repeatedly held that increasing public access to information constitutes a public benefit. In *Time Inc. v. Bernard Geis Assocs.*, a district court held that reproducing stills from a historically important video was for the public benefit because there is a societal interest in the people having the "fullest information available." 293 F. Supp. 130, 146 (S.D.N.Y. 1968); *see also Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (publishing corporate emails about voting machines was in the public interest). Meanwhile in *Sony*, the Supreme Court found that the ability to record television programs benefitted the public because it extended access to television. 464 U.S. at 454. Similarly, because Public Resource's activities expand the public's access to the laws that govern them, it has also created a public benefit. That, combined with the fact that Public Resource is a non-profit organization and its activities are non-commercial, supports a finding that the first fair use factor weighs strongly in its favor.[4]

---

[4] That Public Resource provides the valuable service of making the law accessible to the blind is also significant. Congress has previously suggested that making copies of works for the blind to use is fair use. *See* S. Rep. No. 94-473, at 66 (1975); H.R. Rep. No. 94-1476, at 73 (1976). When it publishes laws, Public Resource uses files that have been modified to allow

**B.   The factual nature of standards and model codes favors a finding of fair use.**

"The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985). Therefore, the "scope of fair use is greater with respect to factual than nonfactual works." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 925 (2d Cir. 1994) (internal quotation marks omitted); *see also Campbell*, 510 U.S. at 586 (collecting cases that explain the lesser protections extended to factual works). Codes and standards adopted into law are primarily factual. They are what Congress, or another legislative body, has passed as law. Even if such codes and standards were to contain some amount of expressive material, the value of these codes and standards is based on the fact that their contents have been incorporated into law, and thus this factor still favors fair use. *See Am. Geophysical Union*, 60 F.3d at 925 (holding that, although copied journal articles contained a significant amount of creativity, because the primary purpose of copying was to access the facts and ideas contained within, the court was precluded from finding the articles were "within the core of the

---

text searching and access by screen-reading software. Compatibility with these software tools is necessary for the information to be accessible to the blind and is often not provided by SDOs.

copyright's protective purposes"); *see also Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F. Supp. 5, 10 (D.D.C. 1993) (finding that a trade newsletter was too factual to cut against fair use); *Harper*, 471 U.S. at 563 (use of expression that is intertwined with factual material is acceptable). The second factor thus weighs in Public Resource's favor.

**C.  Public Resource's publication of the complete texts was necessary to convey the law, and thus supports a finding of fair use.**

The primary focus of the third factor is whether the extent of copying was "reasonable in relation to the purpose of the copying." *See Campbell*, 510 U.S. at 586. Notably, courts have concluded that "copying the entirety of a work is sometimes necessary." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006); *see also Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (finding entire picture being copied was reasonable because copying less would be useless). Achieving Public Resource's purpose of providing to the people full access of the laws that govern them would be impossible without full reproduction. Access to only selected quotations from the law does not allow the people to comply with the law because adherence to the entirety of applicable laws and standards is required. Thus, because the amount Public Resource copied

was reasonable in relation to the purpose of the copying, the third factor

favors fair use.

### D.  Public Resource's activities do not impair SDOs' incentives to create model codes and standards.

The copyright system is designed "[n]ot primarily for the benefit of

the author, but primarily for the benefit of the public." H.R. Rep. No. 60-

2222, at 2227 (1909). The temporary monopoly Congress grants to authors

serves to "induce release to the public of the products of [the author's]

creative genius." *United States v. Paramount Pictures*, 334 U.S. 131, 158

(1948). Still, to serve the system's broader purpose, courts "must

occasionally subordinate the copyright holder's interest in a maximum

financial return to the greater public interest." *Williams & Wilkins Co. v.*

*United States*, 487 F.2d 1345, 1352 (Ct. Cl. 1973), aff'd, 420 U.S. 376

(1975).

Jurisprudence surrounding the fourth factor of the fair use inquiry,

which considers the effect on the market for the copyright work,

acknowledges these broad policy concerns of the US copyright regime

explicitly. As a result, not all impacts on the potential market for the

copyright work are cognizable in a fair use inquiry. Owners of copyrighted

works only have rights over potential derivative uses that they themselves

"would in general develop or license others to develop." *Campbell*, 510 U.S.

13

at 592. The laws of our nation are not a market to which the SDOs have

access, either directly or as licensors.

Furthermore, Public Resource's activity does not harm SDOs'

incentives to create standards. As the Fifth Circuit has said,

> ". . . it is difficult to imagine an area of creative endeavor in
> which the copyright incentive is needed less. Trade
> organizations have powerful reasons stemming from industry
> standardization, quality control, and self-regulation to produce
> these model codes; it is unlikely that, without copyright, they
> will cease producing them."

*Veeck*, 293 F.3d at 806 (citing 1 PAUL GOLDSTEIN, GOLDSTEIN ON

COPYRIGHT § 2.5.2, at 2:51); *see also Universal City Studios, Inc. v. Sony

Corp. of Am.*, 480 F. Supp. 429, 452 (C.D. Cal. 1979), *aff'd* in part, *rev'd* in

part, 659 F.2d 963 (9th Cir. 1981), *rev'd*, 464 U.S. 417, (1984) (finding, in a

holding ultimately affirmed by the Supreme Court, that non-commercial

copying of entire TV programs did not harm the copyright owner's market

because they "exploit their material in many [other] ways"). ASTM and

other SDOs similarly benefit from creating industry standards and model

codes. They continue to produce new standards, and they profit from

training materials. Public Resource's publication of standards incorporated

by reference into law does not interfere with any of the above listed

motivations. Thus the fourth factor weighs in favor of Public Resource.

14

III. **Failing to recognize copyright limitations for laws burdens lawmakers, raises public safety concerns, and particularly disadvantages the poor and the disabled.**

A. **Prioritizing the copyright interests of SDOs over free and fair access to the laws undermines the legislative process.**

Congressional representatives like *amici* depend upon the aid and input of others in drafting legislation. If those who contribute expertise or language can continue to claim copyright interests in laws that take their input into consideration, it will invite innumerable problems.

In drafting legislation, government officials generally work under the assumption that the law cannot be copyrightable. *See* 17 U.S.C. § 105. *See also Wheaton v. Peters*, 33 U.S. 591, 668 (1834) ("[T]he court are unanimously of opinion, that no reporter has or can have any copyright in the written opinions delivered by this court."). As a result, members of Congress are able to consider the contributions of constituents and other stakeholders when crafting laws, without worrying that their actions might impact a determination about the authorship of the law itself. "Even when a governmental body consciously decides to enact proposed model building codes, it does so based on various legislative considerations, the sum of which produce its version of 'the law.' In performing their function, the lawmakers represent the public will, and the public are the final 'authors' of the law." *Veeck*, 293 F.3d at 799. If SDOs were permitted to retain a

copyright interest in incorporated standards and adopted codes, however, it would open the floodgates to claims of joint authorship by all the various stakeholders who contribute to drafting laws. *See* 17 U.S.C. § 201. All those who contribute at some level to the text of a bill that becomes law may be able to assert a copyright interest in that law, leaving few, if any, statutes unaffected.

It is critical for lawmakers to continue to engage with stakeholders in the drafting process, because "law derives its authority from the consent of the public, expressed through the democratic process." *Bldg. Officials*, 628 F.2d at 734. The functioning of our democracy will be best protected by a decision that affirms the principle that law is not copyrightable.

It seems unlikely that SDOs would refuse to participate in the legislative process were they to be denied a copyright interest in the resulting law, as their membership is generally comprised of individuals and entities with a direct stake in the outcome of any law or regulation. They also often profit in ancillary ways from their contributions, such as through publishing complementary publications or providing other explanatory services. *See e.g.*, *All Published Symposia Papers & STPs*, ASTM (last visited Sep. 23, 2017) [5]; *Books and Other Products*, ANSI(last visited Sep.

---

[5] https://www.astm.org/DIGITAL_LIBRARY/STP/stptocall.htm

16

23, 2017).[6]

Because of this deleterious effect on the process of making law, the lower court's decision that individuals may maintain a copyright interest in the law cannot stand.

## B.  Restricting public access to the law raises public safety concerns and particularly burdens the poor and the disabled.

Limiting access to legal and regulatory texts not only affects those governed by laws and regulations but also the people those laws and regulations are intended to protect. Without access to the precise language of laws and regulations, affected citizens may not know if they are in harm's way and may be unable to voice concerns about others' inadequate compliance until harm is done.

The consequences of inadequate access fall particularly hard on the poor and disabled. People who rent subpar housing, for example, may require access to local building codes in order to recognize and report landlord violations of their warranty of habitability. *See, e.g.*, *Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 265 (Wash. Ct. App. 2005) (holding that the warranty of habitability was breached due to nontrivial building code violations); *Crowell v. McCaffrey*, 386 N.E.2d 1256, 1261-1262 (Mass.

---

[6] https://webstore.ansi.org/other_products.aspx

17

1979) (holding that warranty of habitability includes compliance with state building codes). Some building codes incorporate SDO-drafted standards—for example, the National Electrical Code adopted by the District of Columbia, *Building Laws and Regulations*, DC.gov Department of Consumer and Regulatory Affairs (last visited Sep. 23, 2017)[7]—and tenants seeking to address (or even merely identify) non-compliance by landlords may be directly and adversely impacted when SDOs take steps to limit their access to them.

Access is limited when a fee is charged. A requirement of payment inherently limits access to only those who can afford the toll and particularly adversely impacts the least affluent. For example, a minimum wage worker would need to expend more than an entire day's wages to purchase the 2011 National Electrical Code, which the worker would need to discern whether their housing complies with the law. *See NFPA 70 Purchase Options,* National Fire Protection Association (last visited Sep. 23, 2017). [8]

While some SDOs provide an online, read-only version of their codes and standards for temporary perusal, such read-only versions are of little or no use to blind and low vision citizens who use screen readers. Unlike

---

[7] https://dcra.dc.gov/page/construction-codes-laws-and-regulations-0.
[8] http://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards/detail?code=70&year=2011&tab=products.

Public Resource, ASTM's reading rooms are incompatible with Internet accessibility tools. Def.-App. Opening Brief at 9-10. This incompatibility runs headlong into other law Congress has passed to protect those with disabilities. Under the Americans with Disabilities Act ("ADA"), "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 . Courts have interpreted the requirement to mean "[w]here the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit," *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008). This requirement applies even where the program or benefit is online. *Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565, 575 (D. Vt. 2015) ("Now that the Internet plays such a critical role in the personal and professional lives of Americans, excluding disabled persons from access to covered entities that use it as their principal means of reaching the public would defeat the purpose of [the ADA]."); *see also Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-CV-30023-MGM, 2016 WL 3561622, at *8 (D. Mass. Feb. 9, 2016) (stating that the University had "the obligation to provide . . .  individuals with disabilities . . . accommodations

19

or modifications when necessary to ensure equal treatment in the context of the use of emerging technologies.") (citations omitted) (internal quotation marks omitted); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200–01 (D. Mass. 2012) ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.").

If the District Court's decision is allowed to stand, all SDOs must be required to post ADA-compliant material that is incorporated into law. However, SDOs having ADA-compliant sites will not cure the other defects created when copyright protections preclude knowledge of the law itself. In the case where an SDO was, at any time, non-compliant, the threat of copyright litigation would prevent anyone else, such as Public Resource, from providing ADA-compliant access; undermining the principle that all laws should be public.   It is nonsensical to assert that due process of law, which requires public access to the law itself, should be dependent on voluntary forbearance from copyright litigation by private entities. The Copyright Act should not put laws and regulations beyond the reach of the public's ability to access them.  The court should therefore find in favor of Public Resource, so it may continue to provide access to the law to all.

## CONCLUSION

Allowing SDOs to control access to the law via copyright burdens the American people, complicates the process of legislation, and may violate the due process rights of those the law regulates. Public Resource must be allowed to share the law freely and openly, so that all may read it and know their rights and responsibilities. For the foregoing reasons, the judgment of the district courts should be reversed.

Respectfully submitted,

Dated: September 25, 2017          /s/ Catherine R. Gellis

Catherine R. Gellis, Esq.
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849
cathy@cgcounsel.com

Local Counsel in the United States Court of
Appeals for the District of Columbia Circuit

Christopher T. Bavitz
Kendra K. Albert
Cyberlaw Clinic
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
(617) 384-9125
clinic@cyber.harvard.edu

Counsel for *Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the Circuit Rules. The document contains 4,728 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word, in the font Times New Roman.

Dated: September 25, 2017          /s/ Catherine R. Gellis

Catherine R. Gellis, Esq.
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849
cathy@cgcounsel.com

Local Counsel in the United States Court of Appeals for the District of Columbia Circuit

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2017, I caused the foregoing

Brief of Members of Congress as *Amici Curiae* in Support of Defendant

Appellant to be electronically filed with the Clerk of the Court using

CM/ECF, which will automatically send email notification of such filing to

all counsel of record.


Dated: September 25, 2017        /s/ Catherine R. Gellis

                                 Catherine R. Gellis, Esq.
                                 P.O. Box 2477
                                 Sausalito, CA 94966
                                 (202) 642-2849
                                 cathy@cgcounsel.com

                                 Local Counsel in the United States Court of
                                 Appeals for the District of Columbia Circuit